1  JAMES G. KREISSMAN, 206740
   jkreissman@stblaw.com
2  SIMONA G. STRAUSS, 203062
   sstrauss@stblaw.com
3  THOMAS D. STOUT, 241348
   tstout@stblaw.com
4  SIMPSON THACHER & BARTLETT LLP
   2550 Hanover Street
5  Palo Alto, California  94304
   Telephone: (650) 251-5000
6  Facsimile:  (650) 251-5002

7  Attorneys for Defendants Richard S. Fuld,
   Jr., Michael L. Ainslie, Roland A.
8  Hernandez, David Goldfarb, John F. Akers,
   Roger S. Berlind, Joseph M. Gregory,
9  Thomas H. Cruikshank, Marsha Johnson
   Evans, Henry Kaufman, John D. Macomber,
10 Thomas A. Russo, and Christopher M.
   O'Meara

11 *Additional counsel listed on signature page*

12

13              UNITED STATES DISTRICT COURT

14        FOR THE NORTHERN DISTRICT OF CALIFORNIA

15              SAN FRANCISCO DIVISION

16 **OPENWAVE SYSTEMS INC.,**          Case No. C 08-05683-SI

17              **Plaintiff,**          **NOTICE OF MOTION AND
                                        MOTION TO DISMISS;**
18          **v.**                      **MEMORANDUM OF POINTS AND
                                        AUTHORITIES IN SUPPORT OF
19 **RICHARD S. FULD, JR., MICHAEL L.  DIRECTOR AND OFFICER
   AINSLIE, ROLAND A. HERNANDEZ, DAVID DEFENDANTS' MOTION TO
20 GOLDFARB,  JOHN F. AKERS, ROGER S.  DISMISS OPENWAVE'S
   BERLIND, JOSEPH M. GREGORY, THOMAS  COMPLAINT PURSUANT TO FRCP
21 H. CRUIKSHANK,  MARSHA JOHNSON      12(b)(2) AND FRCP 12(b)(6) AND
   EVANS, HENRY KAUFMAN, JOHN D.       MOTION TO STRIKE PURSUANT
22 MACOMBER, THOMAS A. RUSSO,          TO FRCP 12(f)**
   **CHRISTOPHER M. O'MEARA, MICHAEL
23 GELBAND, ALEX KIRK, MELISSA CONROY  Date:      March 20, 2009
   WHITNEY, TIM FORD, and DOES 1 - 50, Time:      9:00 A.M.
24 inclusive,**                        Judge:     Honorable Susan Illston
                                        Courtroom: 10, 19th Floor
25              **Defendants.**

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................ 1

PRELIMINARY STATEMENT OF ISSUES ........................................................ 1

STATEMENT OF FACTS................................................................................... 3

ARGUMENT ...................................................................................................... 6

I.   THE NON-CALIFORNIA DEFENDANTS SHOULD BE DISMISSED
     FOR LACK OF PERSONAL JURISDICTION ....................................... 6

     A.   Openwave Bears The Burden Of Establishing That The Court May
          Exercise Personal Jurisdiction Consistent With Due Process ...... 6

     B.   Openwave Has Failed To Establish That The Court's Exercise Of
          Jurisdiction Over The Non-California Defendants Comports With
          Due Process ........................................................................... 7

          1.   Openwave Cannot Establish That the Non-California
               Defendants are Subject to General Jurisdiction in California ........... 7

          2.   Openwave Cannot Establish That the Non-California
               Defendants are Subject to Specific Jurisdiction in California........... 7

               (a)   The Non-California Defendants did not purposefully
                     avail themselves of the forum's benefits ............................. 8

               (b)   Openwave's claims did not arise from the Non-
                     California Defendants' forum-related activities................... 9

               (c)   It would be unreasonable to exercise jurisdiction over
                     the Non-California Defendants ............................................ 9

II.  OPENWAVE'S COMPLAINT MUST COMPLY WITH FRCP 9(b).................. 10

III. OPENWAVE FAILS TO STATE A CLAIM UNDER SECTION 12(a)(2)
     OF THE SECURITIES ACT ................................................................ 11

     A.   Openwave's ARS Purchases Are Not Actionable Under Section
          12(a)(2) ................................................................................ 12

          1.   Openwave Has Not Pled—and Cannot Plead—That it
               Purchased the ARS in a *Public* Offering........................................ 12

          2.   Openwave Fails to Plead it Purchased the ARS in an *Initial*
               Offering ................................................................................ 13

          3.   Openwave Has Not Pled—and Cannot Plead—That Any
               Defendants Made a False Statement in a Prospectus or
               Related Oral Communication........................................................ 14

B. Openwave Fails To Plead A Section 12(a)(2) Violation With Requisite Particularity ................................................................... 14

C. Openwave Fails To Adequately Plead That Any Director Or Officer Defendant May Be Held Liable As A Control Person ................................ 17

D. Openwave's Section 12(a)(2) Claims Are Time-Barred ............................ 20

IV. OPENWAVE FAILS TO STATE A CLAIM UNDER SECTION 25401 OR 25504. .................................................................................................... 22

A. Openwave Fails To Adequately Plead Any Violation of Section 25401 ........................................................................................ 22

B. Openwave Fails To Adequately Plead Control Person Liability ............... 22

V. OPENWAVE FAILS TO STATE A CLAIM FOR NEGLIGENT OR INTENTIONAL MISREPRESENTATION ........................................................ 23

VI. OPENWAVE FAILS TO STATE A CLAIM UNDER SECTION 25400 OR 25500. .................................................................................................... 24

A. Openwave Fails To Adequately Plead Willful Participation In Manipulative Trading By Any Director Or Officer Defendant.................. 24

B. Openwave Fails To Allege That Any Director Or Officer Defendant Sold Or Offered To Sell ARS To Openwave .............................................. 24

C. Openwave Fails to Adequately Plead Manipulative Trading..................... 25

VII. OPENWAVE FAILS TO STATE A CLAIM FOR FRAUDULENT CONCEALMENT ........................................................................................ 25

VIII. THE COURT SHOULD STRIKE OPENWAVE'S CLAIMS FOR PUNITIVE DAMAGES UNDER THE SECURITIES ACT AND THE CALIFORNIA CORPORATIONS CODE PURSUANT TO FRCP 12(f) ............. 27

CONCLUSION ................................................................................................ 28

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n,* 731 F.2d 112 (2d Cir. 1984) ................................................................................ 27

*Arthur Children's Trust v. Keim.*, 994 F.2d 1390 (9th Cir. 1993) .................................. 19

*ATSI Comm. Inc. v. Shaar Fund, LTD,* 493 F.3d 87 (2d Cir. 2007) ............................. 25

*Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955 (2007) ........................................... 3, 18

*Benzman v. Whitman,* 523 F.3d 119 (2d Cir. 2008) ...................................................... 19

*Boschetto v. Hansing,* 539 F.3d 1011 (9th Cir. 2008).................................................... 6

*Burger King v. Rudzewicz,* 471 U.S. 462 (1985) ....................................................... 8, 9

*Colt Studio Inc. v. Badpuppy Enterprise,* 75 F. Supp. 2d 1104 (C.D. Cal. 1999)........................................................................................................................ 7

*Cooper v. Pickett,* 137 F. 3d 616 (9th Cir. 1997) ........................................................ 11

*Crayton v. Super. Ct.*, 165 Cal. App. 3d 443 (1985).................................................... 26

*Deitz v. Comcast Corp.*, No. 06-06352, 2006 WL 3782902 (N.D. Cal. Dec. 21, 2006) ......................................................................................................... 11

*Destfino v. Kennedy,* No. 08-1269, 2009 WL 63566 (E.D. Cal. Jan. 8, 2009)....................................................................................................................... 15

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) ................................................... 7, 9

*Durham v. Kelly,* 810 F.2d 1500 (9th Cir. 1987) ......................................................... 23

*Evergreen Fund, Ltd. v. McCoy,* No. 00-0767, 2000 WL 1693963 (N.D. Ill. Nov. 6, 2000) ...................................................................................................... 14

*Falkowski v. Imation Corp.,* 309 F.3d 1123 (9th Cir. 2002).................................... 11, 17

*Foley v. Marquez,* No. C03-1010 SI, 2003 WL 22288160 (N.D. Cal. Oct. 1, 2003).......................................................................................................... 9

*Fujitsu-Icl Sys. Inc. v. Efmark Serv. Co.*, No. 00-0777, 2000 WL 1409760 (S.D. Cal. June 29, 2000) ...................................................... 6–7

*Gage-Wilson v. Chase Manhattan Mortgage Corp.*, No. 05 C 5801, 2006 WL 1431047 (N.D. Ill. May 17, 2006) .......................................................... 15–16

*Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561 (1995)........................................... 12, 13, 14

*Helicopteros Nacionales de Columbia, S.A., v. Hall*, 466 U.S. 408 (1984)................... 7

*Howard v. Everex Sys., Inc.*, 228 F.3d 1057 (9th Cir. 2000) ..................................................... 18, 23

*Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099 (N.D. Cal. 2007).......................................... 26

*Hudson v. Capital Mgmt. Intern., Inc.*, No. 81-1737, 1982 WL 1385
   (N.D. Cal. 1982)................................................................................................................. 18, 22

*In re Adams Golf, Inc.*, 176 F. Supp. 2d 216 (D. Del. 2001) ...................................................... 13

*In re Am. Funds*, 556 F. Supp. 2d 1100 (C.D. Cal. 2008)........................................................ 21

*In re Amgen Inc.*, 544 F. Supp. 2d 1009 (C.D. Cal. 2008)........................................................ 20

*In re Brocade Comm'ns Sys., Inc.*, No. 05-2233, 2009 WL 35235 (N.D.
   Cal. Jan. 6, 2009)................................................................................................................. 11

*In re Cosi, Inc.*, 379 F. Supp. 2d 580 (S.D.N.Y. 2005) .............................................................. 14

*In re Daou Systems, Inc.*, 411 F.3d 1006 (9th Cir. 2005) ..................................................... 10, 17

*In re Dynegy, Inc.*, 339 F. Supp. 2d 804 (S.D. Tex. 2004)........................................................ 20

*In re Gap Stores Sec. Litig.*, 79 F.R.D. 283 (N.D. Cal. 1978) ................................................ 22

*In re Glenfed, Inc.*, 60 F.3d 591 (9th Cir. 1995) ...................................................................... 19

*In re Gupta Corp.*, 900 F. Supp. 1217 (N.D. Cal. 1994)........................................................ 19

*In re Harmonic, Inc.*, 163 F. Supp. 2d 1079 (N.D. Cal. 2001) ........................................... 15, 17

*In re Infonet Servs. Corp.*, 310 F. Supp. 2d 1106 (C.D. Cal. 2003).................................... 21

*In re Levi Strauss & Co.*, 527 F. Supp. 2d 965 (N.D. Cal. 2007) ....................................... 13–14

*In re McKesson HBOC, Inc.*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000) ...................... 17–18, 21

*In re Mesa Airlines, Inc.*, No. 94-690, 1996 WL 33419894 (D.N.M. May
   31, 1996)............................................................................................................................... 17

*In re Metricom Sec. Litig.*, No. 01-4085, 2004 WL 966291 (N.D. Cal.
   Apr. 29, 2004) ................................................................................................................. 10–11, 17

*In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 845 (D. Md. 2005)........................................ 14

*In re Prestige Brands Holding, Inc.*, No. 05-6924, 2006 WL 2147719
   (S.D.N.Y. July 10, 2006)..................................................................................................... 13

*In re Qwest Commc'ns Int'l. Inc.*, 387 F. Supp. 2d 1130 (D. Colo. 2005) .................................... 20

*In re Refco, Inc.*, 503 F. Supp. 2d 611 (S.D.N.Y. 2007) .......................................................... 13

*In re Rexplore, Inc.*, 685 F. Supp. 1132 (N.D. Cal. 1988) ...................................................... 23

*In re Ross Sys.*, No. C-94-0017, 1994 WL 583114 (N.D. Cal. July 21,
   1994)................................................................................................................................. 19–20

*In re Sonicblue Inc. v. Pillsbury Winthrop*, No. 03-51775, 2008 WL
2875407 (Bankr. N.D. Cal. July 23, 2008) ............................................................. 19

*In re Stac Elecs.*, 89 F.3d 1399 (9th Cir. 1996) ........................................................... 10

*In re Sterling Foster & Co., Inc.*, 222 F. Supp. 2d 216 (E.D.N.Y. 2002) ...................................... 13

*In re Syntex Corp.*, 95 F.3d 922 (9th Cir. 1996) ......................................................... 16

*In re Valence Tech.*, No. 95-20459, 1996 WL 225010 (N.D. Cal. Apr. 30,
1996).................................................................................................................. 19

*In re WorldCom, Inc.*, 377 B.R. 77 (S.D.N.Y. 2007) ........................................................ 23

*Joseph v. Wiles*, 223 F.3d 1155 (10th Cir. 2000) ............................................. 12–13, 17

*Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*, No. C-97-4618, 1998 WL
2016634 (N.D. Cal. Sept. 14, 1998).............................................................. 11, 23, 25

*Kassover v. UBS*, No. 08–2753, 2008 WL 5331812 (S.D.N.Y. Dec. 19,
2008).................................................................................................................. 10

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) ............................................................ 7

*Kirsch v. Cuadra*, No. 05-3010, 2005 WL 2677026 (N.D. Cal. Oct. 20,
2005).................................................................................................................. 9

*Lewis v. Fresne*, 252 F.3d 352 (5th Cir. 2001)........................................................... 12

*London v. New Albertson's Inc.*, No. 08-1173, 2008 WL 4492642 (S.D.
Cal. Sept. 30, 2008) ........................................................................................ 26

*Lopes v. Vieria*, 488 F. Supp. 2d 1000 (E.D. Cal. 2007)................................................... 13

*Maganallez v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594 (N.D. Cal.
2007)......................................................................................................... 11, 15, 23

*Maldonado v. Dominguez*, 137 F.3d 1 (1st Cir. 1998)...................................................... 13

*McFarland v. Memorex Corp.*, 493 F. Supp. 631 (N.D. Cal. 1980) ............................................. 20

*McMurray v. Merck & Co., Inc.*, No. 07-1007, 2007 WL 1456042 (N.D.
Cal. May 17, 2007)........................................................................................... 16

*Menjivar v. Trophy Props. IV DE, LLC*, No. C 06-03086, 2006 WL
2884396 (N.D. Cal. Oct. 10, 2006) ...................................................................... 27

*Millas v. L.F. Rothschild, Unterberg & Towbin*, No. 81-3987, 1982 WL
1565 (N.D. Cal. Feb. 05, 1982)........................................................................... 27

*Miller v. Thane Int'l, Inc.*, 519 F.3d 879 (9th Cir. 2008) ......................................... 11–12

*Monroe v. Hyundai of Manhattan*, No. 07-8777, 2008 WL 4891223
(S.D.N.Y. Nov. 12, 2008) ................................................................................... 19

*Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531 (9th Cir. 1989) ............................... 14

*Moskowitz v. Mitcham Ind.*, No. 98-1244, 1999 WL 33606197 (S.D. Tex.
    Sept. 29, 1999) .............................................................................................................. 14

*MTC Elec. Tech. v. Leung*, 876 F. Supp. 1143 (C.D. Cal. 1995)............................... 11, 22

*Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101 (C.D. Cal. 2003)......................... 23

*Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964 (N.D. Cal. 2008) ............... 11, 25, 26

*Paracor Finance,* 96 F.3d 1151 (9th Cir. 1996) ............................................................. 23

*Pullins v. Klimley*, No. 05-082, 2008 WL 85871 (S.D. Ohio Jan. 7, 2008)................... 27

*Ross v. Altria Group, Inc.*, No. 04-1453, 2004 WL 2055712 (N.D. Cal.
    Sept. 7, 2004) ......................................................................................................... 6, 7, 8

*Rubke v. Capitol Bancorp Ltd.*, 460 F. Supp. 2d 1124 (N.D. Cal. 2006)...................... 12

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ................. 7–8

*Swartz v. KPMG*, 476 F.3d 756 (9th Cir. 2007)............................................................. 11

*Terracom v. Valley Nat'l Bank*, 49 F.3d 555 (9th Cir. 1995) ..................................... 9–10

*Textainer Equip. Mgmt. (U.S.) Ltd v. TRS Inc.*, No. 07-1519, 2007 WL
    1795695 (N.D. Cal. June 20, 2007)................................................................... 23–24

*Underhill v. Royal*, 769 F.2d 1426 (9th Cir. 1985) ....................................................... 23

*Vess v. CIBA-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) .................................. 10

*Wanetick v. Mel's of Modesto, Inc.*, 811 F. Supp. 1402 (N.D. Cal. 1992)................ 18, 20

*Weinstein v. Jain*, No. 94-1015, 1995 WL 787549 (N.D. Cal. Oct. 23,
    1995)............................................................................................................................ 14

*Wilkerson v. Butler*, 229 F.R.D. 166 (E.D. Cal. 2005)................................................. 28

*Yung v. Lee*, 432 F.3d 142 (2d Cir. 2005) ..................................................................... 12

*Zucco Partners, LLC v. Digimarc Corp.*, No. 06-35758, 2009 WL 57081
    (9th Cir. 2009).............................................................................................................. 18

## **STATE CASES**

*Apollo Capital Fund, LLC v. Roth Capital Partners*, LLC, 158 Cal. App.
    4th 226 (2007) .............................................................................................................. 22

*Bowden v. Robinson*, 67 Cal. App. 3d 705 (1977) ....................................................... 27

*California Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal. App. 4th 102 (2001) ....................... 24

*Kamen v. Lindly*, 94 Cal. App. 4th 197 (2002) ............................................................. 24

*Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115
(2007) ................................................................................................ 26

*LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997) ................................. 26, 27

*Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993) ............................................ 27

*U.S. Liab. Ins. Co. v. Haidinger-Haiyes, Inc.*, 1 Cal. 3d 586 (1970) ............................................. 26

## <u>STATUTES</u>

15 U.S.C. § 77*l* ...................................................................................... passim

15 U.S.C. § 77m .................................................................................. 20–21

15 U.S.C. § 77*o* ........................................................................................ 21

15 U.S.C. § 78t ......................................................................................... 21

Cal. Corp. Code § 25400 ........................................................................... 24

Cal. Corp. Code § 25401 ...................................................................... 22, 23

Cal. Corp. Code § 25500 ...................................................................... 24, 27

Cal. Corp. Code § 25501 ...................................................................... 23, 27

Cal. Corp. Code § 25504 ...................................................................... 22, 23

## <u>RULES</u>

Fed. R. Civ. P. 8(a) .................................................................................. 18

Fed. R. Civ. P. 9(b) ............................................................................. passim

## <u>OTHER AUTHORITIES</u>

L. Loss & J. Seligman, *Securities Regulation* (3d ed.) ................................ 13

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on March 20, 2009 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, Defendants Richard S. Fuld, Jr., Michael L. Ainslie, Roland A. Hernandez, David Goldfarb, John F. Akers, Roger S. Berlind, Joseph M. Gregory, Thomas H. Cruikshank, Marsha Johnson Evans, Henry Kaufman, John D. Macomber, Thomas A. Russo, and Christopher M. O'Meara (collectively "Director and Officer Defendants") shall and hereby do move, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and 12(f) for an order dismissing without leave to amend the complaint of Openwave Systems Inc. ("Openwave") (the "Complaint") and/or striking portions of the Complaint.[1]  This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Request for Judicial Notice ("RJN"), all the records and files in this action, and such additional matters of which the Court may take judicial notice prior to the hearing on this motion.

## PRELIMINARY STATEMENT OF ISSUES

Openwave sued fifteen current and former officers, directors and employees of Lehman Brothers Holdings Inc. ("LB Holdings") and Lehman Brothers Inc. ("LBI") (collectively "Lehman"), asserting claims for federal and state securities fraud, market manipulation, common law fraud, concealment, and negligent misrepresentation, all relating to Openwave's investment in certain auction rate securities ("ARS").  In brief, Openwave claims that Lehman advised Openwave to purchase ARS and told Openwave that ARS were low-risk, liquid investments when they were not.  The Director and Officer Defendants move to dismiss these claims.

---

[1]  Openwave voluntarily dismissed Michael Gelband and Alex Kirk prior to the removal of this action to this Court.  The remaining defendants fall into three categories: (i) Lehman directors (Defendants Ainslie, Akers, Berlind, Cruikshank, Evans, Hernandez, Kaufman, and Macomber) (collectively, "Director Defendants"), Compl. ¶ 22; (ii) Lehman officers (Defendants Fuld, Goldfarb, Gregory, O'Meara, and Russo) (collectively, "Officer Defendants"), Compl. ¶ 20; and (3) Defendants Whitney and Ford, former Lehman employees who worked on the Openwave account (collectively "Defendants Ford and Whitney").  Compl. ¶¶ 16–17.  Defendants Ainslie, Akers, Berlind, Cruikshank, Evans, Kaufman, Macomber, Goldfarb, O'Meara, and Russo (the "Non-California Defendants") also specially appear to move to dismiss Openwave's Complaint under FRCP 12(b)(2) for lack of personal jurisdiction.  *See* § I, *infra*.

1    As an initial matter, the Court should dismiss the ten Non-California Defendants for lack

2    of personal jurisdiction.  Openwave does not suggest that the Court can exercise general

3    jurisdiction over these individuals, all of whom are domiciled outside of California.  Openwave

4    also fails to allege facts showing that the Non-California Defendants are subject to specific

5    jurisdiction based on their purposeful availment of California benefits or their purposeful direction

6    of a tortious act into California.  Accordingly, exercising personal jurisdiction over the Non-

7    California Defendants would violate due process.

8    Personal jurisdiction aside, the most striking aspect of the claims against the Director and

9    Officer Defendants is their utter lack of factual support.  The Complaint fails to allege that *any* of

10   the Director and Officer Defendants made *any* statement to Openwave or took *any* action directed

11   at Openwave.  Instead, Openwave relies on boilerplate assertions that the Director and Officer

12   Defendants participated in, consented to, or approved the alleged misconduct or put into place

13   directives, policies or schemes that caused the misconduct.  These allegations fall far short of

14   Openwave's obligation to plead its claims against each defendant with particularity, as required by

15   FRCP 9(b) in cases of this type.  As a result, the Court should dismiss all direct claims against the

16   Director and Officer Defendants.

17   Openwave also seeks to hold the Director and Officer Defendants liable as control persons

18   under federal and state securities fraud statutes.  In order to succeed on such claims, Openwave

19   must demonstrate both (i) an underlying primary violation of those statutes by someone else and

20   (ii) facts showing that each Director and Officer Defendant exercised actual, day-to-day control

21   over such primary violator.  The Complaint fails on both counts.

22   First, the Complaint fails to allege a valid claim under Section 12 of the Securities Act

23   because it fails to allege with the requisite particularity that (i) Openwave purchased a publicly

24   traded security; (ii) Openwave purchased in an initial offering rather than in the aftermarket; and

25   (iii) the sale of any ARS was solicited by means of a prospectus.  Each of these shortcomings is

26   fatal to Openwave's Section 12 claims.  Openwave's Section 12 claims are also time-barred

27   because Openwave was on notice of the facts that it alleges were misrepresented to it or withheld

28   from it for over a year before the filing of the Complaint.

Moreover, Openwave cannot state a primary claim against anyone under either Section 12 of the Securities Act or Section 25401 of the California Corporations Code because it has failed to plead any misrepresentation or omission with particularity.  Ignoring the dictates of FRCP 9(b) that it plead the time, place, and manner of each misrepresentation, how each alleged representation was false or misleading, and the specific role of each defendant in the fraudulent scheme, Openwave instead alleges general categories of misrepresentations and types of communications, leaving the reader to unravel which statements were false, why they were false, when they were made, who made them, who heard them, and other required facts.  Indeed, Openwave does not even allege facts showing that anyone at Lehman made a false or misleading statement to it about the actual ARS it purchased.

Openwave's control person claims must also be dismissed because they are not adequately pled and fail to plausibly suggest a claim for relief as required by the Supreme Court in *Twombly*. Courts have rejected the type of pleading reflected in the Complaint, which seeks to hold directors or officers liable based solely on their status and fails to allege facts demonstrating that each defendant possessed actual, day-to-day control over a primary violator.  Openwave's failure to include such allegations for each Director and Officer Defendant dooms its control person claims.

Finally, Openwave seeks punitive damages on its state and federal securities fraud claims. Such damages are prohibited by law on these claims and should be stricken from the Complaint.[2]

## STATEMENT OF FACTS

**ARS Market Background**

ARS are debt instruments, such as corporate or municipal bonds, that have a long-term nominal maturity date and regularly reset their interest rate through an auction process that typically occurs every 7, 28 or 35 days.  Compl. ¶ 31.  Lehman sometimes purchased ARS from issuers and resold them to investors, and sometimes acted as a broker for investors who wished to purchase ARS from others.  Compl. ¶¶ 32, 33, 47.  From 1984 through 2007, the ARS market was liquid and functioned smoothly, with virtually no auction failures.  Compl. ¶ 38.  Sophisticated

---

[2]  Defendants expressly reserve all rights to move the Court for other appropriate relief, including, without limitation, to strike Plaintiff's jury demand and move to compel arbitration.

investors—such as Openwave—regularly invested in ARS during this time.  Compl. ¶ 31.

Beginning in August 2007, however, ARS auctions began to fail, and by early February 2008, the

market for ARS had essentially frozen.  Compl. ¶¶ 38, 48, 53.

**The SEC's Investigation of the ARS Market**

In 2006, the Securities and Exchange Commission ("SEC") investigated the ARS market,

which resulted in the announcement of a settlement and cease-and-desist order (the "SEC Order")

between the SEC and certain broker-dealers, including LBI, on May 31, 2006.  Compl. ¶ 39; RJN

Ex. A at 1.  The SEC Order disclosed, *inter alia*, that the broker-dealers sometimes placed bids in

ARS auctions for their own accounts to prevent auctions from failing.  RJN Ex. A at 6.  Although

the SEC did not object to this conduct, it required the broker-dealers to disclose their material

ARS auction practices and procedures to their customers and the general public within three

months of entry of the SEC Order.  *Id.* at 6 n.6, 11; s*ee* Compl. ¶ 39.

**Openwave's ARS Investments**

In 2002, Openwave, a large company with hundreds of millions of dollars in annual

revenue,[3] retained Lehman as its investment adviser.  Compl. ¶ 32–33.  On January 12, 2006,

Openwave's Audit Committee approved a revised investment policy (the "Investment Policy"),

which expressly approved the purchase of ARS by Openwave.  Compl. ¶ 35; RJN Ex. B at 2.

Openwave identifies its 11 ARS investments in its Complaint:

| DATE | AMOUNT | ISSUER |
|---|---|---|
| 5.4.2006 | $800,000 | Ballantyne Re PLC |
| 5.31.2006 | $100,000 | Ballantyne Re PLC |
| 12.13.2006 | $1,570,000 | Potomac Trust Capital |
| 12.28.2006 | $1,700,000 | Potomac Trust |
| 12.29.2006 | $3,500,000 | Insurance Note Capital 2006-RMI I |
| 2.5.2007 | $3,500,000 | Primus Financial |
| 2.14.2007 | $2,200,000 | Athilon Capital |
| 4.10.2007 | $1,000,000 | Ballantyne Re PLC |
| 5.15.2007 | $1,500,000 | Ballantyne Re PLC |
| 7.6.2007 | $3,400,000 | Insurance Note Capital 2003-3 0 River Lake |
| 8.1.2007 | $3,400,000 | Double Oak |

[3]  *See* RJN Ex. C at F-4 & RJN Ex. D at F-6 (Openwave's annual revenues ranged from $267-396 million in 2002-2007).

1    Compl. ¶ 43.  Openwave does not allege that it purchased any of these ARS through a public

2    offering.  Moreover, a search of the SEC's EDGAR database reveals that none of the issuers of the

3    ARS in question (the "Issuers") filed a registration statement with the SEC, which is a prerequisite

4    for any public offering, including for these ARS offerings.  Additionally, while Openwave asserts

5    that its ARS holdings have become illiquid, Compl. ¶¶ 53, 54, it does not allege that it sold any

6    ARS at a loss, that any Issuer has failed to make an interest payment or otherwise defaulted on its

7    obligations under any ARS, or that its operations have been harmed in any way by its alleged

8    inability to sell its ARS holdings.

9    **The Alleged Misrepresentations and Omissions**

10        Openwave asserts that Lehman personnel misrepresented to it that: (i) ARS were low-risk,

11   highly liquid investments that were suitable under the Investment Policy; and (ii) the market for

12   ARS was a true, liquid market.  Compl. ¶¶ 41, 71, 97.  Openwave further asserts that Lehman

13   personnel failed to tell it: (i) that Lehman was holding or repurchasing large quantities of certain

14   ARS to prevent failed auctions, (ii) the percentage of ARS that Lehman was purchasing for its

15   own account at auctions or the volume of ARS it owned, (iii) that ARS would become illiquid as

16   soon as Lehman stopped its support of the ARS market, (iv) the "true cause" of the ARS auction

17   failures, and (iv) that ARS being sold to Openwave were unsuitable under the Investment Policy.

18   Compl. ¶¶ 42, 104.

19   **Openwave's Allegations Relating to the Director and Officer Defendants**

20        Other than identifying their titles and general responsibilities, Compl. ¶¶ 3–15, the

21   Complaint contains no specific factual allegations about the Director and Officer Defendants.

22   Openwave fails to allege a single action, direction, misrepresentation or omission made by any

23   Director or Officer Defendant.  Instead, Openwave repeatedly makes the boilerplate assertion that

24   the Director and Officer Defendants "participated in, knowingly consented to, and/or approved"

25   the alleged misconduct or promulgated "directives and other policies, procedures, practices, and/or

26   schemes" that caused the misconduct.  *See, e.g.*, Compl. ¶¶ 31, 41–44.  Openwave further makes

27   the broad, general statement that each of the Director and Officer Defendants were control

28

1  persons, aiders and abettors, agents of each other, and conspirators, again without providing a

2  single factual allegation in support of these assertions.  Compl. ¶¶ 23–26.

3  **Additional Facts Relating to Personal Jurisdiction**

4  　　The Non-California Defendants are neither domiciled nor employed in California and have

5  never invoked the California judicial process by commencing litigation in this State.  *See*

6  *generally* Non-Cal. Defs.' Decls. ¶¶ 2, 3, 6.  Moreover, the Non-California Defendants have never

7  traveled to California to conduct any Openwave-related business.  *Id.* ¶ 8.  In fact, the Non-

8  California Defendants have never met or even communicated with anyone from Openwave in any

9  way.  *Id.* ¶ 7.  Finally, the Non-California Defendants do not know what representations were or

10  were not made to Openwave before it decided to purchase the ARS at issue in this action.  *Id.* ¶ 9.

11  <u>**ARGUMENT**</u>

12  **I.    THE NON-CALIFORNIA DEFENDANTS SHOULD BE DISMISSED FOR LACK**
     **OF PERSONAL JURISDICTION**

13

14  　　**A.    Openwave Bears The Burden Of Establishing That The Court May Exercise**
     　　　　**Personal Jurisdiction Consistent With Due Process**

15  　　The Court may exercise personal jurisdiction over the Non-California Defendants only if

16  such jurisdiction comports with the constitutional requirements of due process.[4]  Openwave bears

17  the burden of establishing jurisdiction.  *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir.

18  2008); *Ross v. Altria Group, Inc.*, No. 04-1453, 2004 WL 2055712, at *2 (N.D. Cal. Sept. 7, 2004)

19  (Illston, J.) ("Although the defendant is the moving party on a motion to dismiss, the plaintiff

20  bears the burden of establishing that jurisdiction exists.") (quotation omitted).  Moreover,

21  Openwave must allege specific facts supporting personal jurisdiction; it may not rely on

22  conclusory allegations.  *See Fujitsu-Icl Sys. Inc. v. Efmark Serv. Co.*, No. 00-0777, 2000 WL

23  1409760, at *2 (S.D. Cal. June 29, 2000) (allegations "may not be merely conclusory, but rather,

24  must assert particular facts which establish the necessary ties between the defendant and the forum

25

26  ───────────────

[4]  Although the Court must also determine whether personal jurisdiction is permitted under
California's long-arm statute, because that statute permits any exercise of jurisdiction consistent

27  with the Due Process Clause of the United States Constitution, the Court must only determine
whether the exercise of personal jurisdiction comports with due process.  *Ross v. Altria Group,*

28  *Inc.*, No. 04-1453, 2004 WL 2055712, at *3 (N.D. Cal. Sept. 7, 2004) (Illston, J.).

1    state").  Because the Complaint lacks such well-pleaded factual allegations with respect to the

2    Non-California Defendants, they should be dismissed from this action.

3        **B.    Openwave Has Failed To Establish That The Court's Exercise Of Jurisdiction**
             **Over The Non-California Defendants Comports With Due Process**

4            **1.    Openwave Cannot Establish That the Non-California Defendants are**
                  **Subject to General Jurisdiction in California**

5

6            To exercise general jurisdiction, this Court must find that *each* Non-California Defendant

7    maintains contacts with the forum that are "substantial, continuous, and systematic."  *See*

8    *Helicopteros Nacionales de Columbia, S.A., v. Hall*, 466 U.S. 408, 414–16 (1984); *Ross*, 2004 WL

9    2055712, at *3.  Openwave does not appear to ask the Court to exercise general jurisdiction over

10   the Non-California Defendants.[5]  Moreover, the declarations submitted by the Non-California

11   Defendants demonstrate that they lack the substantial, continuous, and systematic contacts with

12   California that would be required for the exercise of general jurisdiction over them.[6]

13           **2.    Openwave Cannot Establish That the Non-California Defendants are**
                  **Subject to Specific Jurisdiction in California**

14           Openwave also cannot establish specific jurisdiction over the Non-California Defendants.

15   Unlike general jurisdiction, specific jurisdiction is evaluated based on the quality and nature of a

16   defendant's contacts with the forum state in relation to the cause of action.  *See Doe v. Unocal*

17   *Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).  The Ninth Circuit has established a three-part test for

18   specific jurisdiction:

19           (1)    The non-resident defendant must purposefully direct his activities or
                  consummate some transaction with the forum or resident thereof; or

20

21   _____

22   [5]   The sole support for general jurisdiction offered by Openwave is its claim that Defendants
     Hernandez, Whitney and Ford are domiciled in California.  Compl. ¶¶ 5, 16, 17.  However, none
     of those defendants contests that they are subject to this Court's personal jurisdiction.  Moreover,
23   the fact that these three defendants are subject to jurisdiction in California does not affect the Non-
     California Defendants' motion.  *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13
24   (1984) ("Each defendant's contacts with the forum State must be assessed individually.").  The
     issue of whether Lehman would be subject to general jurisdiction in California is also irrelevant.
25   *See, e.g., Colt Studio Inc. v. Badpuppy Enterprise*, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999);
     *Ross*, 2004 WL 2055712, at *5 ("There is no personal jurisdiction over an individual corporate
26   officer on the basis of the corporation's contacts alone.").

27   [6]   Because the Complaint fails to set forth *any* jurisdictional facts, the Non-California Defendants
     were not required to submit declarations in support of their motion, but have done so in an excess
28   of caution and to further demonstrate their lack of minimum contacts with California.

perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2)    The claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3)    The exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *Ross*, 2004 WL 2055712, at *3. Because the Complaint contains only insufficient conclusory allegations of specific jurisdiction, Openwave has failed to satisfy this test.

**(a)    The Non-California Defendants did not purposefully avail themselves of the forum's benefits**

The requirement that a defendant "purposefully avail" itself of a forum's benefits or "purposefully direct" its conduct toward the forum ensures that a defendant is not haled into court because of random, fortuitous, or attenuated contacts or on account of the unilateral activities of third parties. *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985). In tort cases, like this one, courts apply an "effects" test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum. As the Ninth Circuit has stated, "the 'effects' test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, and (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. Openwave has failed to plead facts showing that any of the Non-California Defendants undertook any intentional act expressly aimed at California that caused foreseeable harm there.

As set forth in greater detail in § III.B, *infra*, Openwave fails to allege *any* facts showing intentional acts by the Non-California Defendants, let alone that such acts were expressly aimed at California. Openwave instead alleges in a conclusory fashion that the Non-California Defendants "participated in directing" misstatements to investors, including Openwave, in California. Compl. ¶¶ 27. Similarly, Openwave alleges that, under the Non-California Defendants' "direction and/or control," Lehman representatives in California made allegedly false statements to Openwave. *Id.* These conclusory allegations are insufficient to plead an intentional act by the Non-California

1   Defendants for purposeful availment purposes. *See Kirsch v. Cuadra*, No. 05-3010, 2005 WL

2   2677026, at *7 (N.D. Cal. Oct. 20, 2005) (conclusory allegations "insufficient to sustain a finding

3   that Defendant . . . either purposefully availed himself of the privilege of conducting activities in

4   California, or committed an intentional act aimed at California.").[7]

### (b)   Openwave's claims did not arise from the Non-California Defendants' forum-related activities

The exercise of specific jurisdiction over a defendant requires that the defendant's contacts

constituting purposeful availment or direction constitute the "but for" cause of the harm alleged in

the complaint, preserving a nexus between the cause of action and the defendant's activities in the

forum. *Unocal*, 248 F.3d at 924. As this Court has recognized, "[a] claim arises out of the forum-

related activities if it would not have happened but for the forum-related activities." *Foley v.

Marquez*, No. 03-1010, 2003 WL 22288160, at *4 (N.D. Cal. Oct. 1, 2003) (Illston, J.). Here, as

stated above, the Complaint contains no factual allegations of the Non-California Defendants'

forum-related activities that are connected in any way to Openwave's allegations. Accordingly,

Openwave fails to satisfy this second requirement for specific jurisdiction.

### (c)   It would be unreasonable to exercise jurisdiction over the Non-California Defendants

Finally, even if Openwave had satisfied the first two prongs of the specific jurisdiction test,

it still would need to show that exercising jurisdiction over these defendants was reasonable and

comported with notions of fair play and substantial justice. *Burger King*, 471 U.S. at 477–78. To

determine whether this requirement is met, courts in the Ninth Circuit examine seven factors: (1)

the extent of the defendant's purposeful injection into the forum, (2) the burden on the defendant

in defending in the forum, (3) the extent of the conflict with the defendant's state, (4) the forum's

interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6)

the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the

existence of an alternative forum. *See, e.g., Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th

---

[7]   Moreover, in contrast to Openwave's failure to allege specific acts by the Non-California Defendants, these defendants specifically disavow any knowledge of the representations that were made to Openwave, further undermining any claim of personal jurisdiction based on their supposed direction of those statements. *See generally* Non-Cal. Defs.' Decls. ¶ 9.

1   Cir. 1995).  Even a summary examination of these factors makes clear that the exercise of

2   jurisdiction over the Non-California Defendants would be entirely unreasonable and would offend,

3   rather than comport with, notions of fair play and substantial justice.  *See* Non-Cal. Defs.' Decls.

4   **II.      OPENWAVE'S COMPLAINT MUST COMPLY WITH FRCP 9(b)**

5          Where, as here, a complaint sounds in fraud, the Court must dismiss the action unless the

6   complaint meets the strict pleading requirements of FRCP 9(b) with respect to all claims.  *See In*

7   *re Daou Systems, Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005).  A complaint sounds in fraud where it

8   alleges a "uniform course of fraudulent conduct and rel[ies] entirely on that course of conduct as

9   the basis of a claim."  *Id.* (quoting *Vess v. CIBA-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir.

10   2003)).  Here, Openwave relies on such a course of conduct.  The heart of Openwave's Complaint

11   is its claim that defendants "participated in, consented to, and/or approved" Lehman's alleged

12   misrepresentations to Openwave concerning the nature of the ARS market, as well as Lehman's

13   alleged concealment of the fact that it was supposedly manipulating the market to create the

14   illusion of stability.  Compl. ¶¶ 41–42.  Less than two months ago, a district court expressly found

15   that substantially identical allegations in a different ARS litigation sound in fraud, and applied

16   FRCP 9(b) to the entire complaint.  *See Kassover v. UBS*, No. 08–2753, 2008 WL 5331812, at *1–

17   2 (S.D.N.Y. Dec. 19, 2008) (applying FRCP 9(b) to federal and state securities claims, and

18   common law fraud, negligent misrepresentation, breach of fiduciary duty, and negligence claims).

19          Openwave's *pro forma* efforts to disclaim reliance on a uniform fraudulent course of

20   conduct by asserting otherwise identical claims that are bifurcated into fraud and non-fraud based

21   causes of action, *see*, *e.g.*, Compl. ¶¶ 55–56, 61–62, 69–70, are unavailing.  "[N]ominal efforts [to

22   disclaim allegations of fraud] are unconvincing where the gravamen of the complaint is plainly

23   fraud . . . ."  *In re Stac Elecs.*, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996); *Kassover*, 2008 WL

24   5331812, at *2 ("The alleged conduct, and not the terms in which a plaintiff's allegations are

25   denominated, governs whether Rule 9(b) applies.").  In *In re Metricom Securities Litigation*,

26   plaintiffs issued disclaimers that were almost identical to Openwave's—incorporating all factual

27   allegations "except [those that] sound in fraud," and purporting "not [to] incorporate . . . any

28   allegations of fraud in connection with [these claims] for relief."  No. 01-4085, 2004 WL 966291,

at *22 (N.D. Cal. Apr. 29, 2004).  The *Metricom* court found those efforts "futile," and applied FRCP 9(b) to the entire complaint.  *Id.* at *22–24.  Having styled its Complaint as one alleging fraud, Openwave cannot escape the heightened pleading standard of FRCP 9(b) by attempting to carve out fraud from certain claims.  Moreover, FRCP 9(b) applies to each cause of action asserted in the Complaint.[8]

Consequently, Openwave must satisfy FRCP 9(b)'s requirement that "a party must state with particularity the circumstances constituting fraud or mistake" by detailing how each alleged representation was false or misleading, the time, place, and manner of each misrepresentation, *see, e.g.*, *Cooper v. Pickett*, 137 F. 3d 616, 627 (9th Cir. 1997), and facts supporting an inference of fraud by each defendant.  *See Swartz v. KPMG*, 476 F.3d 756, 764 (9th Cir. 2007).  Boilerplate assertions that a defendant "was responsible for" or "ordered, authorized, ratified, or participated in" acts alleged in the complaint cannot survive a motion to dismiss under FRCP 9(b).  *Maganallez v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594, 606–07 (N.D. Cal. 2007).  Instead, Openwave "must identify the *specific role* of [each defendant] in the fraudulent scheme so that [each] may defend himself against this charge."  *Id.* at 606 (emphasis added).  As discussed below, the Complaint fails to comply with FRCP 9(b) and should be dismissed.  *See* § III.B, *infra*.

## III.     OPENWAVE FAILS TO STATE A CLAIM UNDER SECTION 12(a)(2) OF THE SECURITIES ACT

The Complaint's second and sixth causes of action assert claims against all Director and Officer Defendants for violations of Section 12(a)(2) of the Securities Act.  In order to establish a primary violation of Section 12(a)(2), "a plaintiff must demonstrate (1) an offer or sale of a security, (2) by the use of a means or instrumentality of interstate commerce, (3) by means of a prospectus or oral communication, (4) that includes an untrue statement of material fact or omits to state a material fact that is necessary to make the statements not misleading."  *Miller v. Thane*

---

[8]   *See, e.g., Falkowski v. Imation Corp.*, 309 F.3d 1123, 1133 (9th Cir. 2002) (§ 12); *MTC Elec. Tech. v. Leung*, 876 F. Supp. 1143, 1147 (C.D. Cal. 1995) (§ 25401); *Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*, No. 97-4618, 1998 WL 2016634, at *12–13 (N.D. Cal. Sept. 14, 1998) (§§ 25400 and 25500); *In re Brocade Comm'ns Sys., Inc.*, No. 05-2233, 2009 WL 35235, at *17 (N.D. Cal. Jan. 6, 2009) (intentional misrepresentation); *Deitz v. Comcast Corp.*, No. 06-06352, 2006 WL 3782902, at *6 (N.D. Cal. Dec. 21, 2006) (negligent misrepresentation); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 (N.D. Cal. 2008) (concealment).

1   *Int'l, Inc.*, 519 F.3d 879, 885 (9th Cir. 2008).  Openwave also must demonstrate damages.  *Rubke*

2   *v. Capitol Bancorp Ltd.*, 460 F. Supp. 2d 1124, 1134 (N.D. Cal. 2006).  Openwave's Section 12

3   claims fail for numerous reasons, including that the Complaint fails to allege that (i) the ARS it

4   purchased were issued through a public offering; (ii) it purchased directly in an offering; and (iii) a

5   misrepresentation or omission related to a prospectus.  Moreover, Openwave's Section 12(a)(2)

6   claim fails to comply with FRCP 9(b).  Finally, its claims are time-barred.

7          Openwave also attempts to assert a "control person" claim against the Director and Officer

8   Defendants under Section 15 of the Securities Act by alleging that the Director and Officer

9   Defendants controlled someone who engaged in a primary Section 12(a)(2) violation.  Compl.

10  ¶¶ 66, 92.  This claim fails both because Openwave has failed to allege a primary Section 12

11  violation by *anyone* and because it has failed to adequately allege that the Director and Officer

12  Defendants should be held liable as control persons.

13     **A.     Openwave's ARS Purchases Are Not Actionable Under Section 12(a)(2)**

14            **1.     Openwave Has Not Pled—and Cannot Plead—That it Purchased the
                       ARS in a *Public* Offering**

15         Openwave's Section 12(a)(2) claims fail for the simple reason that Openwave has not

16  pled—and cannot plead—that its ARS purchases were made in public offerings, rather than

17  through private placements.  In *Gustafson v. Alloyd Co., Inc.*, the Supreme Court held that the

18  term "prospectus" as used in Section 12(a)(2), "is confined to documents related to *public*

19  offerings by an issuer or its controlling shareholders." 513 U.S. 561, 569-70 (1995) (emphasis

20  added).  The Court concluded that "the liability imposed by § 12[a](2) cannot attach unless there is

21  an obligation to distribute the prospectus in the first place."  *Id.* at 571.  Based on this reasoning,

22  the Court refused to apply Section 12(a)(2) to private transactions.  *See id.* at 578.  Courts

23  subsequently have recognized that "*Gustafson's* definition of a prospectus as 'a document that

24  describes a public offering of securities' compels the conclusion that a Section 12(a)(2) action

25  cannot be maintained by a plaintiff who acquires securities through a private transaction, whether

26  primary or secondary."  *Yung v. Lee*, 432 F.3d 142, 149 (2d Cir. 2005).[9]  Courts thus routinely

27  _____

28  [9]  *See also Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001) ("Section 12 of the 1933 Act does
    not apply to private transactions."); *Joseph v. Wiles*, 223 F.3d 1155, 1161 (10th Cir. 2000)

1   dismiss Section 12(a)(2) claims brought in connection with securities purchased through private

2   placements.[10]

3        Because Openwave has failed to allege that any of its ARS purchases were made as part of

4   a public offering, its Section 12(a)(2) claims are fatally flawed and should be dismissed.

5   Moreover, amendment would be futile.  A search of the SEC's EDGAR database reveals that none

6   of the Issuers filed a registration statement with the SEC, *see supra* at 5:1–4, a prerequisite for any

7   public offering.  Accordingly, Openwave purchased these securities in private transactions, and its

8   Section 12(a)(2) claims should be dismissed with prejudice.

9            **2.        Openwave Fails to Plead it Purchased the ARS in an *Initial* Offering**

10       Section 12(a)(2) applies only to purchases made in the *initial* offering of a security, and

11   does not apply to aftermarket transactions.  *See Gustafson*, 513 U.S. at 578.  Here, Openwave

12   identifies four ARS purchases in its Section 12 claims.  Compl. ¶¶ 64, 90.  The first is an ARS that

13   it claims to have purchased "within 60 days of the initial market offering."  *Id.*  With respect to the

14   remaining three ARS, Openwave claims they were "either part of an initial offering to investors . .

15   . or substantially coextensive with the initial offering."  *Id.*  Because Openwave claims only that it

16   bought ARS at around the time of an offering and not in the offering itself, it has no standing

17   under Section 12(a)(2), and its claims should be dismissed.[11]

18   ("[O]nly purchasers in the initial public offering [may] bring suit pursuant to Section 12[a](2).");
19   *Maldonado v. Dominguez*, 137 F.3d 1, 8 (1st Cir. 1998) (Section 12(a)(2) action "is not available
     to" claimants who purchased securities in private placement); L. Loss & J. Seligman, *Securities
20   Regulation* (3d ed.) § 11-C-2(b)(iv) ("[T]he majority decision in *Gustafson* now systematically
     precludes from § 12(a)(2) liability private placements and all other *non* public offerings.").

21   [10]   *See, e.g., In re Levi Strauss & Co.*, 527 F. Supp. 2d 965, 981–82, 992 (N.D. Cal. 2007)
22   (dismissing Section 12(a)(2) claims based on securities purchased in private offering); *Lopes v.
     Vieria*, 488 F. Supp. 2d 1000, 1024 (E.D. Cal. 2007) (dismissing Section 12(a)(2) claims for
23   failing to plead securities purchased in public offering); *In re Refco, Inc.*, 503 F. Supp. 2d 611, 626
     (S.D.N.Y. 2007) ("This Court agrees with the SEC and with prior courts in this district that under
24   current law a Rule 144A [private] offering does not give rise to liability under § 12(a)(2).").

25   [11]   *See, e.g., In re Sterling Foster & Co., Inc.*, 222 F. Supp. 2d 216, 244-45 (E.D.N.Y. 2002)
     (allegations that plaintiffs purchased "pursuant to" initial offering inadequate although alleged
26   purchase dates made within days of offering); *In re Adams Golf, Inc.*, 176 F. Supp. 2d 216, 219,
     224-25 (D. Del. 2001) (allegations that plaintiffs purchased securities "soon after" IPO
27   insufficient); *In re Prestige Brands Holding, Inc.*, No. 05-6924, 2006 WL 2147719, at *9
     (S.D.N.Y. July 10, 2006) (dismissing Section 12 claim where plaintiffs failed to allege purchase in
28   an initial offering, claiming purchases made "in connection with an IPO"); *In re Levi Strauss*, 527
     F. Supp. 2d at 983 (declining to extend Section 12(a)(2) liability to transactions traceable to initial

1

      **3.**     **Openwave Has Not Pled—and Cannot Plead—That Any Defendants Made a False Statement in a Prospectus or Related Oral Communication**

2

3        Section 12(a)(2) liability attaches only if an offer or sale of a security has been made by

4  use of a prospectus, or oral communication relating to a prospectus.  15 U.S.C. § 77*l*; *Gustafson*,

5  513 U.S. at 567–68 ("The Courts of Appeals agree that the phrase 'oral communication' is

6  restricted to oral communications that relate to a prospectus.").  In order to state a Section 12(a)(2)

7  claim, a plaintiff is required to identify the relevant prospectus.  *See Moore v. Kayport Package*

8  *Exp., Inc.*, 885 F.2d 531, 540–41 (9th Cir. 1989) (affirming dismissal of §10(b) claims where

9  "prospectuses [were] not specifically identified as to content, date or author"); *In re Mut. Funds*

10  *Inv. Litig.*, 384 F. Supp. 2d 845, 865–66 (D. Md. 2005) (dismissing Section 12(a)(2) claims where

11  plaintiff failed to specify prospectus pursuant to which it purchased); *Weinstein v. Jain*, No. 94-

12  1015, 1995 WL 787549, at *2 (N.D. Cal. Oct. 23, 1995) (requiring plaintiff to allege whether it

13  received a prospectus and what legal authority required a prospectus to be delivered).

14        Openwave's conclusory allegations that the ARS were sold through the use of a prospectus

15  fail for two simple reasons.  Compl. ¶¶ 64, 90.  First, Openwave fails to identify the prospectuses

16  to which it purportedly refers.  Second, Openwave has not identified any false or misleading

17  statement contained in a prospectus or oral communications relating to a prospectus.  Accordingly,

18  Openwave's Section 12(a)(2) claims should be dismissed.[12]

19

**B.**     **Openwave Fails To Plead A Section 12(a)(2) Violation With Requisite Particularity**

20

21        Even if Openwave had standing to bring a Section 12(a)(2) claim, it has still failed to plead

22  such a claim with the particularity mandated by FRCP 9(b).  Openwave is required to allege the

23

24  offering); *In re Cosi, Inc.*, 379 F. Supp. 2d 580, 588-89 (S.D.N.Y. 2005) (claim that plaintiffs purchased "pursuant to" an IPO insufficient to adequately plead standing); *Moskowitz v. Mitcham Ind.*, No. 98-1244, 1999 WL 33606197, at *20 (S.D. Tex. Sept. 29, 1999) (allegations that

25  plaintiffs purchased shares "on the offering" inadequate to establish purchase *in* the offering).

26  [12]  Openwave also fails to plead cognizable damages in support of its Section 12(a)(2) claims.  In order to state such a claim, Openwave must allege that it sold its ARS at a loss or tendered them

27  for rescission.  *See Evergreen Fund, Ltd. v. McCoy*, No. 00-0767, 2000 WL 1693963, at *7 (N.D. Ill. Nov. 6, 2000) (dismissing Section 12(a)(2) claim where plaintiff failed to allege either tender

28  or sale of shares).  Because Openwave alleged neither, its Section 12 claim should be dismissed.

1   time, place, and content of each allegedly false statement, the specific acts taken by each

2   defendant in connection with the false statement, and the reasons that the statement was false or

3   misleading.  *See In re Harmonic, Inc.*, 163 F. Supp. 2d 1079, 1099 (N.D. Cal. 2001); *Maganallez*,

4   505 F. Supp. 2d at 606.  It has failed to do so.

5        Openwave fails to identify *any* statement made or *any* action taken by *any* of the Director

6   and Officer Defendants (the only defendants named in the Section 12 counts).  Instead, it relies on

7   boilerplate allegations of participation, consent and approval that fail to meet the requirements of

8   FRCP 9(b).  *See Destfino v. Kennedy*, No. 08-1269, 2009 WL 63566, at *5–6, *8 (E.D. Cal. Jan. 8,

9   2009) (bare allegations that "[e]ach defendant is alleged to have engaged in every fraudulent

10  activity" constitute impermissible "shotgun pleading," and do not satisfy the pleading

11  requirements of FRCP 8, let alone FRCP 9(b); plaintiffs are required to set forth with clarity "the

12  identities of the parties, and their individual role in the fraud").  Accordingly, Openwave cannot

13  maintain a direct Section 12(a)(2) claim against the Director and Officer Defendants.

14       Openwave also cannot maintain a "control person" claim against the Director and Officer

15  Defendants under Section 15 of the Securities Act because it has failed to allege a primary

16  violation of Section 12 by *anyone* with requisite particularity.[13]  While Openwave claims that

17  Lehman made misrepresentations (*i.e.*, ARS were suitable under the Investment Policy and the

18  ARS market was a true, liquid market, Compl. ¶ 41) and failed to disclose certain facts (*i.e.*,

19  Lehman was trading in its own account to prevent failed auctions and ARS would become illiquid

20  if Lehman stopped supporting the market), Compl. ¶ 42, its allegations fall short of its Section 9(b)

21  pleading obligations for several reasons.  First, Openwave fails to allege facts showing that anyone

22  at Lehman made any of these statements about any of the ARS that Openwave actually purchased,

23  as opposed to other ARS that are not the subject of this suit or simply ARS in general.  Second,

24  while Openwave asserts that the alleged misrepresentations and omissions arose during four types

25  of communications, Compl. ¶ 43, Openwave fails to allege *which* misrepresentations or omissions

26  occurred during *which* communications.  *See Gage-Wilson v. Chase Manhattan Mortgage Corp.*,

27  ---

[13]   As discussed at § III.C, *infra*, Openwave also fails to adequately allege that the Director and
28  Officer Defendants are control persons, providing a separate basis to dismiss these claims.

1   No. 05 C 5801, 2006 WL 1431047, at *2 (N.D. Ill. May 17, 2006) (dismissing fraud claims where

2   plaintiffs "allege[d] only general types of misrepresentations" without pleading specific

3   circumstances).  Moreover, in many instances, it is impossible to identify when, where, or between

4   whom the alleged communications took place.  An examination of Openwave's pleading

5   highlights its failure to meet the exacting standards of FRCP 9(b):

> **December 2, 2005 PowerPoint Presentation:** Openwave identifies two statements made during this presentation—(1) Lehman's recommendation that Openwave invest its cash in ARS, and (2) Lehman's representation that prior to each investment recommendation to Openwave, Lehman would review the proposed transaction for compliance with Openwave's Investment Policy.  Compl. ¶ 34.  Openwave fails to explain why these statements were false when made.  It also fails to identify any other statements made by Lehman representatives during this presentation and fails to allege facts showing that any Director or Officer Defendant participated in this presentation or had knowledge of it.  *See In re Syntex Corp.*, 95 F.3d 922, 934 (9th Cir. 1996) (affirming dismissal where plaintiff failed to explain why statements were false when made).

> **Communications Regarding Lehman's Review of Openwave's Investment Policy:** Openwave alleges that in mid-December 2005, in the course of one or more communications, Openwave was told that "the Lehman ARS were in compliance" with Openwave's Investment policy.  Compl. ¶¶ 35, 43.  Openwave fails to state with particularity why this statement was false when made in late 2005, at a time that the ARS market was active and liquid, and two years before the market began experiencing failed auctions.[14]  Openwave also fails to identify (i) any other statements made by a Lehman representative during these communications, (ii) the number of such communications, (iii) the other participants in the communications, or (iv) the method of the communications.  Moreover, Openwave fails to allege facts showing that any Director or Officer Defendant participated in these alleged communications or even had any knowledge of them.

> **Communications Regarding Transfers of Cash to Lehman to Invest:** Openwave fails to identify the contents, time, place, frequency, number, or method of communications relating to transfers of cash.  Compl. ¶ 43.  The Complaint does not even indicate that these communications occurred during the same *years* as Openwave's ARS purchases, let alone that they had anything to do with those purchases.  Moreover, Openwave fails to allege facts showing that any Director or Officer Defendant participated in these alleged communications or even had any knowledge of them.  *See McMurray v. Merck & Co., Inc.*, No. 07-1007, 2007 WL 1456042, at *1 (N.D. Cal. May 17, 2007) (dismissing where "[p]laintiff fail[ed] to allege the time, place, and specific content of the asserted false representations, the identities of the parties to the misrepresentations, or the reason why such representations are false and misleading.").

> **Quarterly Performance Reviews of Lehman's Portfolio:** Openwave similarly fails to provide any degree of particularity regarding quarterly performance reviews.  Compl. ¶ 43.  Presumably four such reviews occurred each year, yet Openwave fails to allege which reviews contained a false statement, the specific false statements made, or the dates of the

---

14   Indeed, Openwave concedes that "from 1984 . . . through August 2007, 'failed auctions' . . . were nonexistent or virtually nonexistent."  Compl. ¶ 38.

1    reviews.  Moreover, Openwave fails to allege facts showing that any Director or Officer
     Defendant participated in these reviews or even had any knowledge of them.[15]

2        In sum, Openwave fails to plead that the Director and Officer Defendants did *anything* to

3    violate Section 12 and fails to plead the content, timing, location, or basis of falsity of any alleged

4    false or misleading statement by *anyone else* with the particularity required by FRCP 9(b).

5    Accordingly, Openwave has failed to plead either a direct claim or a control person claim under

6    Section 12.  *See Falkowski*, 309 F.2d at 1133–34 (affirming dismissal of Section 12 claims for

7    failure to plead false or misleading statements with particularity); *In re Harmonic, Inc.*, 163 F.

8    Supp. 2d at 1089–90 (same); *In re Metricom*, 2004 WL 966291, at *24 (same).[16]

9        **C.    Openwave Fails To Adequately Plead That Any Director Or Officer**
            **Defendant May Be Held Liable As A Control Person**
10

11       As discussed above, Openwave asserts that the Director and Officer Defendants are liable

12   as control persons for a primary violation of Section 12 undertaken by others.  Compl. ¶¶ 66, 92.

13   In order to establish Section 15 liability against a particular defendant, Openwave must allege a

14   primary violation of Section 12 and must demonstrate that the defendant in question exercised "a

15   _____

16   [15]   Additionally, to the extent that Openwave relies on communications occurring after September
     2007 for its Section 12(a)(2) claims, *see generally* Compl. ¶¶ 48–52, any such communications are
17   irrelevant, as they all occurred after August 1, 2007, the latest date of an Openwave ARS purchase
     and thus could not serve as the basis for a Section 12 claim.  *See* 17 C.F.R. 230.159 (information
18   conveyed to the purchaser after the time of sale not taken into account for the purposes of Section
     12(a)(2) liability).  The same principle applies for Openwave's other causes of action as well.

19   [16]   Openwave's Section 12 claim should also be dismissed because it fails to plead privity or
20   solicitation with particularity.  To assert a Section 12(a)(2) claim, Openwave must allege it was in
     privity with the primary violator, *see Joseph*, 223 F.3d at 1161, or solicited by the primary violator
21   for financial gain.  *In re Daou Systems,* 411 F.3d at 1029.  Because Openwave does not allege
     privity with the Director and Officer Defendants or that they solicited its purchases, it cannot
22   maintain a primary Section 12 claim against them.  Openwave also cannot establish that the
     Director and Officer Defendants are liable as control persons because it fails to allege with
23   particularity that Lehman or its employees meet the privity or solicitation requirement.  While
     Openwave claims it purchased *certain* ARS from Lehman, Compl. ¶ 32, and that "Lehman
24   engaged in the sale or offer to sell securities to Openwave" with respect to the four ARS that form
     the basis of its Section 12 claim, Compl. ¶¶ 63, 89, Openwave never claims it purchased those
25   ARS from Lehman.  Its pleading therefore does not satisfy FRCP 9(b).  Openwave similarly fails
     to plead solicitation, alleging that Lehman "solicited Openwave and other members of the public
26   to purchase ARS," Compl. ¶¶ 64, 90, but failing to identify when and where the solicitation
     occurred, who engaged in it, or how it was done.  *See In re Mesa Airlines, Inc.*, No. 94-690, 1996
27   WL 33419894, at *10 (D.N.M. May 31, 1996) (dismissing §12(a)(2) claim where plaintiffs failed
     to "plead with specificity the facts showing that [it] was either in privity with the [defendants] or
28   that the [defendants] solicited [it] to purchase shares of . . . stock").

_____

significant degree of day-to-day operational control, amounting to the power to dictate another party's conduct or operations." *In re McKesson HBOC, Inc.*, 126 F. Supp. 2d 1248, 1277 (N.D. Cal. 2000) (internal citation omitted); *see also Zucco Partners, LLC v. Digimarc Corp.*, No. 06-35758, 2009 WL 57081, at *4 (9th Cir. 2009) (requiring showing that "the defendant exercised actual power or control over the primary violator"); *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000) (same).  Openwave's control person claims should be dismissed both because they fail to adequately allege a primary Section 12 violation, *see* § III.B, *supra*, and because the control allegations are deficient.

Openwave attempts to plead control person liability solely by alleging the positions held by the Director and Officer Defendants and making general allegations that they were aware of, consented to, participated in, and/or caused the alleged wrongful acts.  *See, e.g.*, Compl. ¶¶ 3–15, 41–44.  Such vague pleading is insufficient for several reasons.  First, when pleading control person liability, plaintiff must "inform defendants who they are alleged to control and what acts or status indicate such control."  *Hudson v. Capital Mgmt. Intern., Inc.*, No. 81-1737, 1982 WL 1385, at *6 (N.D. Cal. Aug. 24, 1982); *see also Wanetick v. Mel's of Modesto, Inc.*, 811 F. Supp. 1402, 1407 (N.D. Cal. 1992) (same).  Openwave fails to identify the individuals that the Director and Officer Defendants allegedly controlled and fails to explain whether it seeks to hold them liable as control persons merely as a consequence of their status, or based upon specific affirmative acts.  Such puzzle pleading does not comport with the requirement of FRCP 9(b) or even FRCP 8(a).

Openwave's control person allegations are also insufficient in light of the Supreme Court's recent holding in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  In that case, the Court recognized "[t]he need at the pleading stage for allegations plausibly suggesting (not merely consistent with)" a claim for relief.  *Id.* at 1966.  Moreover, *Twombly* held that "a plaintiff's obligation to provide the 'grounds' of his 'entitle(ment) to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 1964–65.

Here, Openwave's control person allegations do not meet the *Twombly* plausibility standard.  It appears Openwave is claiming that the Director and Officer Defendants exercised

1   actual control over certain non-executive Lehman employees (*e.g.*, defendants Ford and Whitney)

2   who allegedly made false representations to a single client (Openwave) relating to a handful of

3   ARS purchases.  During the relevant time period, Lehman had approximately 30,000 employees,

4   working in approximately 60 principal offices in the Americas, Europe, the Middle East, and the

5   Asia Pacific Region, serving corporations, governments and municipalities, institutional clients

6   and high-net-worth individuals worldwide.  RJN Ex. E at 3, 14, and 22.  Openwave has failed to

7   plead *any* subsidiary facts to support its assertion that Lehman's senior officers and directors were

8   aware of the representations made to Openwave or any other aspect of the Openwave relationship.

9   Accordingly, Openwave's bare bones control person allegations are not plausible under *Twombly*

10  and should be dismissed.  *See Benzman v. Whitman*, 523 F.3d 119, 129 (2d Cir. 2008) (dismissing

11  claims against Administrator of EPA where plaintiffs' allegations that Administrator knew of false

12  reports or their contents were "not plausible in absence of some supporting facts").[17]

13        Additionally, given that the only specific control person allegations in the Complaint relate

14  to status and committee membership, Openwave's Section 15 claim must be dismissed against the

15  Director Defendants.  Such allegations, standing alone, are insufficient to establish control person

16  liability.  *See Arthur Children's Trust v. Keim.*, 994 F.2d 1390, 1396 (9th Cir. 1993) ("A director

17  is not automatically liable as a controlling person."); *In re Glenfed, Inc.*, 60 F.3d 591, 593 (9th Cir.

18  1995) ("identifi[cation of] the nonemployee directors . . ., their dates of service, every committee

19  assignment, [and] a general descript of the various committees" insufficient to establish control

20  person liability); *In re Valence Tech.*, No. 95-20459, 1996 WL 225010, at *3 (N.D. Cal. Apr. 30,

21  1996) (same) (citing *Glenfed*, 60 F. 3d at 593); *In re Gupta Corp.*, 900 F. Supp. 1217, 1243 (N.D.

22  Cal. 1994) ("The status of [defendants] as outside directors is insufficient to make them control

23  persons."); *In re Ross Sys.*, No. C-94-0017, 1994 WL 583114, at *5 (N.D. Cal. July 21, 1994)

24

25  [17]   *See also Monroe v. Hyundai of Manhattan*, No. 07-8777, 2008 WL 4891223, at *7 (S.D.N.Y.
    Nov. 12, 2008) ("The Second Circuit has interpreted [*Twombly*] as 'requiring a flexible
26  'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in
    those contexts where such amplification is needed to render the claim *plausible*.'"); *In re
27  Sonicblue Inc. v. Pillsbury Winthrop*, No. 03-51775, 2008 WL 2875407, at *10-11 (Bankr. N.D.
    Cal. July 23, 2008) (adopting flexible plausibility standard of Second and Seventh Circuits).
28

1   ("[C]ourts in this District have required plaintiffs to plead more than the status of an outside

2   director in order to survive a motion to dismiss control person claims.").

3         Similarly, the Court should dismiss the Section 15 control person claims against those

4   Officer Defendants who did not have day-to-day operational control over Lehman's investment

5   management business, which is the arm of Lehman that interacted with Openwave.  For example,

6   Defendant Goldfarb is alleged to have been Lehman's Chief Administrative Officer from 2004–

7   2006 and its Global Head of Strategic Partnerships, Principal Investing and Risk from October

8   2006 forward.  Compl. ¶ 6.  Because Openwave does not allege that Goldfarb had any

9   responsibility for or control over Lehman's investment management business, he cannot be liable

10  as a control person and should be dismissed.[18]  *See, e.g.*, *In re Amgen Inc.*, 544 F. Supp. 2d 1009,

11  1037 (C.D. Cal. 2008) (dismissing control person claims against certain officers, stating that

12  exercise of day-to-day control is necessary prerequisite of control person liability, and holding that

13  "an individual's status as an officer or director is insufficient, standing alone, to demonstrate the

14  exercise of control"); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d at 1277 (dismissing

15  control person claims against officers not alleged to have day-to-day control over alleged

16  violators); *Wanetick*, 811 F. Supp. at 1407 (same); *McFarland v. Memorex Corp.*, 493 F. Supp.

17  631, 649 (N.D. Cal. 1980) (same).[19]

18        **D.     Openwave's Section 12(a)(2) Claims Are Time-Barred**

19        Because Openwave was on inquiry notice of its claims more than a year before it filed its

20  Complaint on November 21, 2008, its Section 12(a)(2) claims should be dismissed as time-barred.

21  Claims for violations of Section 12(a)(2) must be brought "within one year after the discovery of

22

23  [18]   For the same reasons, Openwave also has failed to allege control person liability over
    Defendant Russo (former EVP and chief legal officer) or Defendant O'Meara (former EVP, CFO
24  and Head of Risk Management).  Compl. ¶¶ 14-15.

25  [19]   *See also In re Dynegy, Inc.*, 339 F. Supp. 2d 804, 913 (S.D. Tex. 2004) (dismissing control
    person claims against all officers other than officer to whom alleged primary violator reported and
26  noting that control person liability cannot be established by alleging officer's title without
    additional facts); *In re Qwest Commc'ns Int'l. Inc.*, 387 F. Supp. 2d 1130, 1148 (D. Colo. 2005)
27  (dismissing control person claim against Executive Vice President, General Counsel, Chief
    Administrative Officer and Corporate Secretary where complaint alleged titles, but failed to allege
28  control over primary violator).

1   the untrue statement or the omission, or after such discovery should have been made by the

2   exercise of reasonable diligence."  15 U.S.C. § 77m.  "Thus, the statute of limitations on Securities

3   Act claims is triggered by 'actual notice'—the discovery of the untrue statement or omission—or

4   'inquiry notice'—when discovery should have been made by the exercise of reasonable

5   diligence."  *In re Infonet Servs. Corp.*, 310 F. Supp. 2d 1106, 1113 (C.D. Cal. 2003).  The Ninth

6   Circuit applies a two-part "inquiry-plus-reasonable-diligence" test under which "a court first

7   determines when the plaintiff had inquiry notice of the facts giving rise to his securities claim,"

8   and then asks "whether the plaintiff exercised reasonable diligence in investigating the facts

9   underlying the alleged fraud."  *In re Am. Funds*, 556 F. Supp. 2d 1100, 1103 (C.D. Cal. 2008)

10  (granting motion to dismiss Section 12(a)(2) claims as time-barred).

11      Here, voluminous publicly available information placed Openwave on inquiry notice of its

12  claims more than a year before it filed the Complaint.  While Openwave alleges Lehman misled it

13  into believing that ARS were highly liquid and Lehman was not trading in the ARS market on its

14  own account to prevent auction failures, Openwave itself acknowledges that it was aware that

15  ARS auctions had begun to fail in August and September of 2007 and thus had to be aware by that

16  time that there was liquidity risk associated with ARS.  Compl. ¶ 48.  Moreover, such auction

17  failures were widely reported in the press, which noted that these failures led to a loss of liquidity

18  and could cause the ARS in question to sell at a discount.  *See* RJN Ex. G.

19      In addition to the fact that ARS auctions were failing, Openwave was—or should have

20  been—aware over a year before it filed its Complaint of the very Lehman ARS trading practices of

21  which it now complains.  On May 31, 2006, the SEC Order disclosed not only the fact that

22  Lehman had, as a historical matter, traded on its own account in ARS auctions to prevent auction

23  failures, but also the fact that such behavior was entirely permissible as long as it was adequately

24  disclosed.  RJN Ex. A at 6 n.6.  The SEC Order and the SEC's findings were also widely reported

25  in the press.  RJN Ex. F.  These disclosures provided the general public—and Openwave—with

26  the knowledge that certain ARS auctions could have failed but for the intervention of Lehman and

27  others.  Openwave was thus aware that ARS were not perfectly liquid and that the success of ARS

28  auctions depended in part on the willingness of brokers to intervene in the market.  Because

1   Openwave was on inquiry notice more than a year before it filed the Complaint, its Section

2   12(a)(2) claims are time-barred, and the Court should dismiss these claims with prejudice.

3   **IV.      OPENWAVE FAILS TO STATE A CLAIM UNDER SECTION 25401 OR 25504**

4          In its first and fifth causes of action, Openwave asserts claims against all Director and

5   Officer Defendants for violations of California Corporations Code Sections 25401 and 25504.

6   Section 25401 prohibits material false statements or omissions in connection with the offer or sale

7   of a security in California, while Section 25504 establishes vicarious "control persons" liability.

8          **A.      Openwave Fails To Adequately Plead Any Violation Of Section 25401**

9          To state a claim under Section 25401, Openwave must allege the existence of an "untrue

10  statement of material fact or [omission of] material fact" with particularity.  Cal. Corp. Code

11  § 25401; *MTC Elec. Tech.*, 876 F. Supp. at 1147 (dismissing § 25401 claims for failure to plead

12  false statement with particularity).  This requirement mirrors Section 12(a)(2) of the Securities

13  Act.  *See In re Rexplore, Inc.*, 685 F. Supp. 1132, 1142 (N.D. Cal. 1988) (§§ 25401, 25501 and

14  25504 are the "California analog to Section 12[a](2)"); *Hudson*, 1984 WL 2129, at *1 ("Sections

15  25401 and 25501 together are similar to § 12[a](2) of the Securities Act of 1933."); *In re Gap

16  Stores Sec. Litig.*, 79 F.R.D. 283, 307 (N.D. Cal. 1978) (§§ 25401, 25501, 25504 "specifically

17  modeled after § 12[a](2)").  As with its Section 12 claims, Openwave fails to plead a false or

18  misleading statement with the requisite particularity.  As explained in § III.B, *supra*, Openwave

19  has failed to identify the time, place, and content of the allegedly false statements, point out

20  specific misrepresentations made by each defendant, or explain why the statements were false or

21  misleading as required by FRCP 9(b).  Such failures necessitate dismissal of these claims.[20]

22         **B.      Openwave Fails To Adequately Plead Control Person Liability**

23         Openwave does not allege that the Director and Officer Defendants themselves violated

24  Section 25401, instead seeking to hold them liable as "control persons" under Section 25504 by

25  virtue of their status as officers and/or directors.  Compl. ¶¶ 59, 84.  The California courts have not

26  ──────────────
   [20]   Similarly, Openwave has failed to allege privity with Lehman or its employees with requisite
27  particularity, providing a further basis for dismissal.  *See Apollo Capital Fund, LLC v. Roth
   Capital Partners*, LLC, 158 Cal. App. 4th 226, 252-253 (2007) (affirming dismissal where
28  plaintiff and defendant not alleged to be in privity as required under § 25501); *supra* at 17 n.16.

1   construed the control person provision of § 25504 in any detail.  *See In re WorldCom, Inc.*, 377

2   B.R. 77, 102 (S.D.N.Y. 2007) ("No state court, including the California Supreme Court, has

3   discussed control person liability under section 25504 at any length").  Accordingly, courts look to

4   precedent interpreting the "control person" provisions of Section 15 of the Securities Act and

5   Section 20 of the Exchange Act when examining Section 25504 claims.[21]  Therefore, Openwave's

6   Section 25504 claim must be dismissed for the same reasons its Section 15 claims fail.  *See*

7   § III.C, *supra*.

8   **V.      OPENWAVE FAILS TO STATE A CLAIM FOR NEGLIGENT OR
            INTENTIONAL MISREPRESENTATION**

9          In its third and seventh causes of action, Openwave asserts claims for California common

10   law negligent and intentional misrepresentation.  To state a claim for negligent or intentional

11   misrepresentation, Openwave must allege (i) a misrepresentation, (ii) intent to induce reliance on

12   the fact misrepresented, (iii) justifiable reliance, and (iv) resulting damage.  *See Neilson v. Union*

13   *Bank of Cal.*, 290 F. Supp. 2d 1101, 1140–41 (C.D. Cal. 2003) (noting that the elements of

14   negligent and intentional misrepresentation are identical with the exception of the differing

15   scienter requirements for the two causes of action).  Openwave is required to plead these elements

16   with the particularity required by FRCP 9(b).  *See supra* at 11 n.8.

17          As discussed above, Openwave has failed to plead with particularity that any of the

18   Director and Officer Defendants made *any* false or misleading statements.  *See* § III.B, *supra*.

19   This failure is fatal to its common law misrepresentation claims, which should be dismissed.  *See,*

20   *e.g.*, *Maganallez*, 505 F. Supp. 2d at 606–07 (misrepresentation claim dismissed where plaintiffs

21   failed to identify each defendant's specific misrepresentations or identify "the specific role of [the

22   defendant] in the fraudulent scheme"); *Textainer Equip. Mgmt. (U.S.) Ltd. v. TRS Inc.*, No. 07-

23   1519, 2007 WL 1795695, at *4 (N.D. Cal. June 20, 2007) (dismissing where plaintiff did "not

---

[21]  *See, e.g.*, *Kainos Labs.*, 1998 WL 2016634, at *13 (applying federal law on motion to dismiss
§ 25504 claim because "the control person statute under California law is substantially the same as
the federal statute") (quoting *Underhill v. Royal*, 769 F.2d 1426, 1433 (9th Cir. 1985)); *Durham v.
Kelly*, 810 F.2d 1500, 1505 (9th Cir. 1987); *In re WorldCom, Inc.*, 377 B.R. at 104 (finding "the
Ninth Circuit's approach from *Howard v. Everex Systems, Inc.,* 228 F.3d 1057, 1065 (9th Cir.
2000), and *Paracor Finance*, 96 F.3d at 1161, for Section 20 claims would be appropriate and one
that the California Supreme Court would follow for section 25501").

1   identify any particular statement that defendants made that was fraudulent, nor did it allege when

2   any such statements took place").

3   **VI.    OPENWAVE FAILS TO STATE A CLAIM UNDER SECTION 25400 OR 25500**

4          In its fourth cause of action, Openwave asserts claims against all Director and Officer

5   Defendants for violations of California Corporations Code Sections 25400 and 25500.  Section

6   25400, subdivision (b), the provision that Openwave appears to be invoking in its Complaint,

7   prohibits one form of market manipulation: entering into "a series of transactions . . . creating

8   actual or apparent trading in such security."  Cal. Corp. Code § 25400(b).  Section 25500

9   establishes the circumstances under which a person who has engaged in such conduct may be held

10  liable for damages.  *Id.* at § 25500.  Openwave is again required—and has again failed—to plead

11  these elements with the particularity required by FRCP 9(b).  *See supra* at 11 n.8.

12  **A.    Openwave Fails To Adequately Plead Willful Participation In Manipulative Trading By Any Director Or Officer Defendant**

13

14         To state a claim, Openwave must "plead with particularity the circumstances which

    indicate that the defendants willfully participated" in a violation of Section 25500.  *Kainos Labs.,*
15
    1998 WL 2016634, at *13 (dismissing § 25500 claim for failure to plead willful participation with
16
    particularity).  Because Openwave alleges only that "[e]ach . . . defendant[] . . . effected a series of
17
    transactions which created actual or apparent active trading in ARS," Compl. ¶ 76, and provides
18
    no details whatsoever, the Complaint is deficient, and this cause of action must be dismissed.
19
    **B.    Openwave Fails To Allege That Any Director Or Officer Defendant Sold Or Offered To Sell ARS To Openwave**
20

21         The fourth cause of action should also be dismissed because "[c]ivil liability pursuant to

22  Section 25500 applies only to a defendant who is either a person selling or offering to sell or

23  buying or offering to buy"—no theory of secondary liability is available.  *Kamen v. Lindly*, 94

24  Cal. App. 4th 197, 204–05, 206 (2002); *see also California Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal.

25  App. 4th 102, 113 (2001) (secondary liability unavailable).  Because Openwave fails to allege that

26  any Director or Officer Director Defendant sold or offered to sell ARS, this count fails.

27

28

C.    **Openwave Fails To Adequately Plead Manipulative Trading**

To plead a claim for manipulative trading, the complaint must set forth "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue." *ATSI Comm. Inc. v. Shaar Fund, LTD*, 493 F.3d 87, 102 (2d Cir. 2007) ("General allegations not tied to the defendants or resting upon speculation are insufficient."). Openwave fails to plead the alleged manipulative trading with particularity. Instead, it relies on a boilerplate recitation of the statutory language, Compl. ¶¶ 76–77, and conclusory allegations that Lehman manipulated the ARS markets. Comp. ¶¶ 37–38. Openwave does not allege that Lehman manipulated or even traded in the specific ARS that it purchased. Moreover, it fails to identify any alleged manipulative traders, list any alleged manipulative trades, detail when the trading occurred, or describe how the trades harmed it. Because FRCP 9(b) does not permit such vague pleading, Openwave's manipulative trading claim must be dismissed. *See ATSI Comm. Inc.*, 493 F.3d at 104 (affirming dismissal of manipulative trading claim for failure to plead manipulation with particularity).

VII.   **OPENWAVE FAILS TO STATE A CLAIM FOR FRAUDULENT CONCEALMENT**

In its eighth cause of action, Openwave asserts a California common law fraudulent concealment claim against all of the Director and Officer Defendants. Such claims must be pled with particularity under FRCP 9(b). *See, e.g.*, *Oestreicher*, 544 F. Supp. 2d at 974–75 (applying FRCP 9(b) to fraudulent concealment claim). To plead a claim for fraudulent concealment, Openwave must allege with particularity: (i) concealment or suppression of material fact, (ii) a duty to disclose such fact, (iii) intentional conduct, with intent to induce reliance, (iv) actual, justifiable reliance, and (v) resulting damages. *See id.*

As with its other common law fraud and negligent misrepresentation claims, Openwave's fraudulent concealment claim fails because Openwave does not allege *any* specific facts showing that *any* of the Director and Officer Defendants took *any* action or directed others to take any action to conceal or suppress any facts. *See* § II.B, *supra*. Courts have held repeatedly that fraudulent concealment claims that rely on boilerplate assertions and fail to allege actual acts of

concealment by each defendant do not meet the FRCP 9(b) pleading standard and must be dismissed.  *See, e.g.*, *London v. New Albertson's Inc.*, No. 08-1173, 2008 WL 4492642, at *7–8 (S.D. Cal. Sept. 30, 2008) (dismissing fraudulent concealment claim because "plaintiff fails to allege with particularity the times, places, and those involved in the alleged non-disclosure of material facts"); *Oestreicher*, 544 F. Supp. 2d at 974 (dismissing fraudulent concealment claim where "allegations do not specify any factual basis for them"); *Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007) (dismissing fraudulent concealment claim where allegations were "entirely conclusory"); *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 132 (2007) (rejecting fraudulent concealment claim relying on "mere conclusory allegations").

Additionally, Openwave's fraudulent concealment claim fails because, even if it had provided specific allegations of concealment, it has not adequately alleged that any of the Director and Officer Defendants had a duty to disclose the allegedly concealed facts.  *See Crayton v. Super. Ct.*, 165 Cal. App. 3d 443, 451 (1985) (failure to disclose not actionable absent duty).  California recognizes such a duty in only four situations: (i) where a fiduciary duty exists between the plaintiff and defendant; (ii) where a defendant makes a statement or representation that is affirmatively misleading absent disclosure of other material facts; (iii) where a defendant takes steps to "actively conceal" information from the plaintiff; and (iv) where the defendant is in possession of material information that cannot be obtained by the plaintiff and that the defendant has reason to know cannot be so obtained.  *See LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997); *Linear Tech.*, 152 Cal. App. 4th at 132.

None of these situations applies here.  First, no fiduciary relationship exists between Openwave and the Director and Officer Defendants.  *See U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595 (1970) (officer of corporation owed no fiduciary duty to corporation's customers).  Second, Openwave does not claim that the Director and Officer Defendants made any representations and thus cannot claim that they made misleading representations.  Third, because Openwave has not alleged any specific affirmative acts taken by any Director or Officer Defendants—instead relying solely on conclusory allegations that the Director and Officer

1    Defendants concealed facts from it—Openwave has not claimed active concealment.  Finally,

2    because the information in question was publicly available, Openwave cannot establish that any

3    defendant possessed information that Openwave could not obtain.  *See* § III.D, *supra*. [22]

4    Openwave's claim therefore should also be dismissed for failure to plead facts showing that any

5    Director or Officer Defendant had a duty to disclose the allegedly concealed information.  *See*

6    *Menjivar v. Trophy Props. IV DE, LLC*, No. 06-03086, 2006 WL 2884396, at *6 (N.D. Cal. Oct.

7    10, 2006) (rejecting concealment claim for failure to adequately plead duty to disclose). [23]

8    **VIII.   THE COURT SHOULD STRIKE OPENWAVE'S CLAIMS FOR PUNITIVE**
     **DAMAGES UNDER THE SECURITIES ACT AND THE CALIFORNIA**
9    **CORPORATIONS CODE PURSUANT TO FRCP 12(f)**

10           In its fourth through sixth causes of action, which assert claims under the Securities Act

11   and the California Corporations Code, Openwave seeks "punitive and exemplary damages."  *See*

12   Compl. ¶¶ 79, 86, and 95.  Because both the Securities Act and the California Corporations Code

13   provide only for rescission or actual damages, *see* 15 U.S.C. § 77*l*; Cal. Corp. Code §§ 25500,

14   25501, courts have repeatedly held that punitive or exemplary damages are not available for

15   violations of these statutes. [24]  Therefore, Openwave's claimed entitlement to punitive damages for

16   violation of these statutes, set forth in paragraphs 79, 86 and 95 of the Complaint, should be

---

[22]   Moreover, even if this were the case, the Director and Officer Defendants still would not owe Openwave a duty given the absence of any alleged relationship between these individuals and Openwave.  *See, e.g.*, *LiMandri*, 52 Cal. App. 4th at 337 ("where material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is *some relationship* between the parties which gives rise to a duty to disclose such known facts") (emphasis in original).

[23]   Openwave also cannot show concealment because the relevant information was disclosed to the general public.  *See* § III.D, *supra*; *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n*, 731 F.2d 112, 123 (2d Cir. 1984) (affirming dismissal of common law concealment claim where "[a]ll of the information plaintiffs now claim was concealed from them was either a matter of public record, was not pursued by plaintiffs, or was disclosed, at least in part, by [defendant]").

[24]   *See, e.g.*, *Millas v. L.F. Rothschild, Unterberg & Towbin*, No. 81-3987, 1982 WL 1565, at *2 (N.D. Cal. Feb. 5, 1982) ("punitive damages may not be recovered under … section 12(2)"); *Pullins v. Klimley*, No. 05-082, 2008 WL 85871, at *42 (S.D. Ohio Jan. 7, 2008) ("punitive damages are not available for the alleged violations of the Security Act of 1933 (Section 12(a)(1) and 12(a)(2) and Section 15 claims)"); *Bowden v. Robinson*, 67 Cal. App. 3d 705, 714 (1977) ("Punitive damages are not available to those who choose to proceed under [§ 25501] rather than under a common law fraud action."); *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1103 (1993) (noting that failure of California securities laws to authorize punitive damages was a deliberate policy choice).

---

1   stricken.  *See Wilkerson v. Butler*, 229 F.R.D. 166, 172 (E.D. Cal. 2005) (Fed. R. Civ. P. 12(f)

2   motion to strike is "appropriate to address requested relief, such as punitive damages, which is not

3   recoverable as a matter of law.").

4                                          **CONCLUSION**

5          For the foregoing reasons, the Non-California Defendants respectfully request that they be

6   dismissed from this action for lack of personal jurisdiction, and the Director and Officer

7   Defendants respectfully request that the Complaint be dismissed and that the Court strike

8   Openwave's request for punitive damages under Counts 4, 5, and 6.

9

10  Dated:  February 9, 2009

11                                                  SIMPSON THACHER & BARTLETT LLP

12

13                                          By  _____/s/_____
                                                James G. Kreissman, 206740
14                                              jkreissman@stblaw.com

15                                              Attorneys for Defendants Richard S. Fuld, Jr.,
                                                Michael L. Ainslie, Roland A. Hernandez, David
16                                              Goldfarb, John F. Akers, Roger S. Berlind,
                                                Joseph M. Gregory, Thomas H. Cruikshank,
17                                              Marsha Johnson Evans, Henry Kaufman, John
                                                D. Macomber, Thomas A. Russo, and
18                                              Christopher M. O'Meara

19                                              Patricia M. Hynes
                                                Todd S. Fishman
20                                              Allen & Overy LLP
                                                1221 Avenue of the Americas
21                                              New York, New York 10020

22                                              Attorneys for Defendant Richard S. Fuld, Jr.,
                                                [*pro hac vice* motion pending]
23

24

25

26

27

28

1

**ECF FILER'S ATTESTATION**

2          I, James G. Kreissman, as the e-filing signatory, attest that concurrence in filing the

3   Declarations of John D. Macomber, Thomas H. Cruikshank, Thomas A. Russo, Roger S. Berlind,

4   Marsha Johnson Evans, Michael L. Ainslie, John F. Akers, David Goldfarb, Christopher M.

5   O'Meara, and Henry Kaufman In Support Of this Motion have been obtained from the signatories

6   thereto.  In accordance with General Order 45 Section X(B), I shall maintain a record of the

7   original signatures to support this concurrence for subsequent production for the Court if so

8   ordered or for inspection upon request by a party until one year after final resolution of the action.

9   Dated:  February 9, 2009

10                          By   _____/s/_____

11                               James G. Kreissman

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28