**United States District Court**
For the Northern District of California

1

2

3

4

5       IN THE UNITED STATES DISTRICT COURT

6       FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    OPENWAVE SYSTEMS INC,                    No. C 08-5683 SI

9              Plaintiff,              **ORDER GRANTING IN PART AND
                                        DENYING IN PART DEFENDANTS'**
10       v.                            **MOTIONS TO DISMISS THE
                                        COMPLAINT**
11   RICHARD S. FULD JR., *et al.*,

12             Defendants.
     _____/
13

14       On April 24, 2009, the Court held a hearing on defendants' motions to dismiss. For the reasons

15   set forth below, the Court GRANTS in part and DENIES in part defendants' motions, and GRANTS

16   plaintiff leave to amend the complaint. Plaintiff shall file an amended complaint no later than **June 19,**

17   **2009**.

18

19                                   **BACKGROUND**

20       Plaintiff Openwave Systems Inc. has sued fifteen current and former officers, directors and

21   employees of Lehman Brothers Holdings Inc. ("LB Holdings") and Lehman Brothers Inc. ("LBI"),

22   alleging claims of federal and state securities fraud, market manipulation, common law fraud,

23   concealment, and negligent misrepresentation arising out its investment in auction rate securities

24   ("ARS").[1] ARS are debt instruments, such as corporate or municipal bonds, that have a long-term

25   nominal maturity date and regularly reset their interest rate through an auction process that typically

26   occurs every 7, 28 or 35 days. Compl. ¶ 31.

27   _____

28       [1] In response to defendants' motions to dismiss the complaint, Openwave has agreed to dismiss
     the federal securities claims, as well as its claim for punitive damages.

Openwave retained Lehman as its investment advisor to invest its cash reserves in short term investments consistent with Openwave's needs for liquidity and safety by having an active resale market for such investments. *Id.* ¶¶ 33, 36. Openwave alleges that in December 2005, Lehman, through its portfolio manager defendant Whitney, made a PowerPoint presentation to Openwave concerning Lehman's cash management investment services. *Id.* ¶ 34. During that presentation, "Lehman" recommended that Openwave invest in ARS, and "Lehman and defendant Whitney also represented that each specific transaction on behalf of Openwave would be reviewed both by the Lehman portfolio managers (defendants Whitney and Ford), and a Lehman compliance officer for compliance with the Openwave Investment Policy." *Id.* The complaint alleges that Openwave's Investment Policy "provided that all investments by Openwave were to adhere to the investment objectives of preserving capital by minimizing exposure to financial loss, and ensuring liquidity." *Id.* ¶ 35. The Investment Policy states that "Any security purchased must have an active and liquid resale market," and that approved ARS must have a "maximum maturity date" (the last date by which a security will be redeemed) of three years. *Id.* Openwave alleges that "Lehman's and defendant Whitney's assurances that Lehman's ARS offerings complied with Openwave's Investment Policy were false." *Id.*

The complaint alleges that "Openwave is informed and believes and thereon alleges that Lehman was regularly holding or repurchasing large quantities of ARS in Lehman's 'inventory' to prevent failed auctions of ARS for which Lehman was the initial purchaser. When there were not enough buy orders to cover the sales orders, Lehman bought the extra ARS itself and held them in its inventory. Defendants and Lehman knew or should have known, and failed to disclose, that ARS would become illiquid as soon as Lehman stopped its artificial maintenance of the ARS market." *Id.* ¶ 37. Openwave also alleges that "defendants and Lehman" failed to disclose that, if capital markets tightened (as they did in early 2008), then Lehman would be reasonably likely to withdraw from the ARS market, which would cause the auctions to fail. *Id.*

In 2006, the Securities and Exchange Commission investigated the Lehman Brothers and other firms participating in the ARS market. *Id.* ¶ 39. The SEC alleged that Lehman had inadequately disclosed its material practices and procedures relating to ARS. *Id.* On May 31, 2006, Lehman and other firms settled the SEC's regulatory claims against them by paying a civil penalty and agreeing to

provide to customers written descriptions of all their material auction practices and procedures. *Id.* Openwave alleges that the written disclosures that Lehman made after the May 2006 SEC settlement continued to be inadequate. *Id.* ¶ 40.

Openwave alleges that auctions for Openwave's holdings of approximately $27 million in ARS with Lehman began failing when there were not enough buy orders to cover all of the sale orders for particular ARS issuances. *Id.* ¶ 48. The complaint alleges that whereas Lehman had previously supported the auctions by purchasing ARS as necessary to prevent failures, Lehman began to allow certain auctions to fail. "Openwave is informed and believes and thereon alleges that the Officer Defendants, Finance Committee Defendants and Director Defendants participated in, knowingly consented to, and/or approved of Lehman's selection of which auctions that Lehman would let fail in a manner specifically designed to further conceal the true cause of the failures; they sought to prevent institutional investors, the press, and the public from being able to discover Lehman's conduct as alleged herein." *Id.* Openwave alleges that when it asked "Lehman, including defendant Whitney," why the auctions were failing, "defendants" falsely stated that the ARS failures were due to issues in the credit markets, Openwave was misled into reasonably believing that failures were a "temporary market imperfection" and that the ARS markets would soon be liquid again. *Id.* ¶ 49. In October 2007 and January 2008, Openwave was able to sell two of its ARS, "which further caused Openwave to reasonably rely on defendants' concealment and to believe that the failed auctions were a temporary market imperfection that would shortly be resolved." *Id.* ¶ 50.

Openwave alleges that on or about January 31, 2008, with respect to another ARS for which auctions had been failing, Openwave's Treasury Manager wrote to Lehman asking why the auctions for that ARS hd failed, whether the security had ben downgraded, and whether the company's line of business had suffered material detriment. *Id.* ¶ 51. "Despite repeated written requests, Lehman refused to respond to Openwave's specific questions and concealed the true reason the auctions had failed, which was Lehman's sudden decision to stop supporting the false illusion of a safe and liquid market." *Id.* Beginning February 7, 2008, auctions for all ARS began repeatedly failing, and the ARS market "came to a sudden standstill and has remained frozen since." *Id.* ¶ 53. Openwave alleges that if defendants had not made the alleged misstatements and/or failed to disclose the material information

1  about ARS, Openwave would not have purchased the ARS and/or would have sold them upon learning

2  of the misstatements or omissions.  As of the filing of the complaint, Openwave is continuing to hold

3  illiquid ARS with a total par value of approximately $22.7 million.

4  Openwave filed this action in San Francisco Superior Court on November 21, 2008.  Defendants

5  timely removed on the basis of bankruptcy "related to" jurisdiction pursuant to 28 U.S.C. §§ 1334(b)

6  and 1452(a), and supplemental jurisdiction under 28 U.S.C. § 1367 for any claims or parties not subject

7  to jurisdiction under § 1334.[2]  Openwave seeks actual damages and rescission, including requiring

8  defendants to repurchase all remaining ARS back from Openwave at par value.

9  All defendants have moved to dismiss.  The thirteen director and officer ("D&O") defendants[3]

10  and two portfolio manager defendants contend that Rule 9(b)'s heightened pleading standard applies

11  to all of Openwave's claims, and that the complaint does not meet this standard. Defendants also raise

12  specific challenges to each of Openwave's claims.  In addition, ten of the D&O defendants are not

13  domiciled in California, and they also move to dismiss for lack of personal jurisdiction.

14

15  **LEGAL STANDARD**

16  Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it

17  fails to state a claim upon which relief can be granted.  The question presented by a motion to dismiss

18  is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer

19  evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other*

20  *grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

21  In answering this question, the Court must assume that the plaintiff's allegations are true and

22  must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d

23

24  [2] On September 15, 2009, Lehman Brothers Holdings, Inc., the corporation for which defendants

25  work or worked, filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, *In re Lehman Brothers Holdings, Inc.*, Case No. 08-13555.

26

27  [3] Openwave voluntarily dismissed defendants Michael Gelband and Alex Kirk prior to removal. The remaining defendants include Lehman directors (Ainslie, Akers, Berlind, Cruikshank, Evans,

28  Hernandez, Kaufman, and Macomber), Lehman officers (Fuld, Goldfarb, Gregory, O'Meara, and Russo), and portfolio managers (Whitney and Ford).

United States District Court
For the Northern District of California

556, 561 (9th Cir. 1987).  However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007).  While courts do not require "heightened fact pleading of specifics," a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1965. Plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

# DISCUSSION

## I.    Rule 9(b)

Defendants contend that the entire complaint sounds in fraud and thus must comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) with respect to all claims. Plaintiff argues that only claims alleging fraud are governed by Rule 9(b), and that the first cause of action under California Corporations Code Sections 25401 and 25504 need not comply with Rule 9(b) because fraud is not an element of that claim.  Plaintiff also argues that all of the fraud claims sufficiently allege fraud with particularity.

A complaint sounds in fraud where it alleges a "unified course of fraudulent conduct and re[lies] entirely on that course of conduct as the basis of a claim." *In re Daou Systems, Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)). "In a case where fraud is not an essential element of a claim, only allegations of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)." *Id*.

Here, the complaint alleges "negligent" behavior, as well as knowing and intentional conduct.

The first cause of action for violation of California Corporations Code Section 25401 and 25504 "realleges and incorporates by reference the allegations set forth in paragraphs 1 through 54 above, but *excluding allegations of reckless or intentional conduct.*"  Compl. ¶ 55 (emphasis added).  The first cause of action also alleges that "[t]his particular cause of action is based on defendants' lack of reasonable care, not fraud or intentional or reckless misconduct." *Id.*; *cf. In re Daou*, 411 F.3d at 1028 (holding entire complaint sounded in fraud because "complaint makes a 'wholesale adoption' of the securities fraud allegations for purposes of the Securities Act claims" and "plaintiffs here never rely on such conduct as negligence or mistake in stating their claims.").  As such, the Court agrees with plaintiff that the first cause of action need not comply with Rule 9(b).

However, the Court finds that with respect to the remaining claims, which are governed by Rule 9(b), the complaint does not "state with particularity the circumstances constituting fraud." Fed. R. Civ. Proc. 9(b).  The complaint must include an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (citation omitted).  Here, although the complaint identifies the content of some specific misstatements and omissions, Compl. ¶¶ 41(a)-(b), 42(a)-(d), the complaint does not – aside from defendant Whitney's December 2, 2005 PowerPoint presentation – sufficiently allege the time, place or identities of the parties to the misrepresentations.  For example, although the complaint generally alleges that defendants Whitney and Ford made the misstatements or failed to disclose material facts, none of the allegations identify any specific misstatements or omissions by defendant Ford.[4]

The complaint also fails to comply with Rule 9(b) because, aside from the allegations about defendant Whitney, the complaint does not contain allegations particular to each defendant.  In a case with multiple defendants, "a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007).  This deficiency

---

[4]  Plaintiff asserts in its opposition to Ford and Whitney's motion that "[a]s the other Lehman portfolio manager responsible for the account with defendant Whitney, defendant Ford had knowledge of and is liable for defendant Whitney's misstatements."  Opposition at 7:9-11 (citing paragraphs 17, 25, 34 and 36 of the complaint).  However, none of the cited paragraphs of the complaint actually allege that Ford had knowledge of Whitney's alleged misstatements.

United States District Court
For the Northern District of California

is particularly significant where, as here, plaintiff seeks to hold the D&O defendants liable based upon their alleged "participation in, knowing consent to, and/or approval of Lehman's unlawful acts." Compl. at p. 12. The Court agrees with plaintiff "there is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant." *Id.* at 764. "On the other hand, Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id.* at 764-65. The complaint comes close to meeting Rule 9(b) in that it identifies each defendant's position within Lehman and the committees and/or job responsibilities of that defendant. However, the complaint only generally alleges that these defendants, "because of their senior positions at Lehman . . . possessed the power and authority to control Lehman's reports, presentations, and investment and portfolio recommendations to institutional investors like Openwave . . . including in particular the types of statements alleged herein that Lehman representatives and employees made concerning the risk and liquidity of ARS . . . ." Compl. ¶ 23. These and similar allegations about what "defendants and Lehman" knew or did are insufficient. *See Swartz*, 476 F.3d at 765 ("The complaint is shot through with general allegations that the 'defendants' engaged in fraudulent conduct but attributes specific misconduct only to KPMG and B & W. Conclusory allegations that Presidio and DB 'knew that [KPMG and B & W] were making . . . false statements to clients, including Swartz, and thus were acting in concert with [KPMG and B & W]' and 'were acting as agents [of KPMG and B & W]' and were 'active participants in the conspiracy' without any stated factual basis are insufficient as a matter of law.").

Accordingly, the Court GRANTS defendants' motions to dismiss on this ground and GRANTS plaintiff leave to amend.

## II.   Counts 1 and 5 (Cal. Corp. Code §§ 25401, 25504)

The first cause of action alleges violations of California Corporations Code Sections 25401 and 25504 for lack of reasonable care against all defendants. The fifth cause of action alleges violations of the same provisions for fraudulent, intentional or reckless misconduct against all defendants except

1    defendants Whitney and Ford.

2

3        **A.      Section 25401**

4    California Corporations Code Section 25401 states:

5        It is unlawful for any person to offer or sell a security in this state or buy or offer to buy
         a security in this state by means of any written or oral communication which includes
6        an untrue statement of a material fact or omits to state a material fact necessary in order
         to make the statements made, in the light of the circumstances under which they were
7        made, not misleading.

8    Cal. Corp. Code § 25401.  Section 25501 provides a private right of action for violations of Section

9    25401: "Any person who violates Section 25401 shall be liable to the person who purchases a security

10   from him or sells a security to him, who may sue either for rescission or for damages . . . ."  Cal. Corp.

11   Code § 25501.

12       All defendants contend that Openwave has failed to adequately plead a violation of Section

13   25401 because Openwave has not alleged the existence of an "untrue statement of material fact or

14   [omission of] material fact" with particularity.  As discussed *supra*, the Court agrees and has granted

15   plaintiff leave to amend to cure this deficiency.[5]  Defendants also contend that the complaint does not

16   sufficiently allege that Openwave was in privity with Lehman because the complaint only alleges that

17   "Lehman engaged in the sale or offer to sell securities to Openwave in California, including the ARS

18   identified in paragraphs 43(a)-(k) herein.  Lehman was in privity with Openwave."  Compl. ¶ 57.

19   Although this allegation is probably sufficient as a pleading matter, in light of the fact that the Court is

20   granting leave to amend on other grounds, the Court also GRANTS leave to amend to more specifically

21   allege privity with respect to the ARS purchases at issue.[6]

22

23

24       [5] The Court notes that it is somewhat unclear from the complaint and plaintiff's papers whether
     plaintiff seeks to hold defendants primarily liable under Section 25401 or secondarily liable under
25   25504.  Plaintiff may wish to clarify this issue when amending the complaint.

26       [6] With respect to defendants Ford and Whitney's contention that they cannot be held liable
     under Section 25504 because Openwave must be in strict privity with them, as opposed to Lehman, the
27   Court finds no such requirement in the language of the statute, and agrees with those district courts that
     have held that strict privity is not required.  *See In re ZZZZ Best Sec. Litig.*, CV 87-3574, 1990 WL
28   132715, at *17-18 (C. D. Cal. July 23, 1990).

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.     Section 25504**

Section 25504 states:

> Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist.

Cal. Corp. Code § 25504.

Defendants contend that plaintiff has failed to state a claim under Section 25504 because the complaint does not allege that the D&O defendants exercised control over defendants Whitney and Ford.  Defendants state that the California courts have not construed the control person provision of Section 25504 in any detail, and that this Court should be guided by precedent interpreting the "control person" provisions of Section 15 of the Securities Act of 1933 and Section 20 of the Exchange Act 1934 when examining Section 25504 claims.  Defendants contend that because control person liability under federal law requires that the defendant in question exercised "a significant degree of day-to-day operational control, amounting to the power to dictate another party's conduct or operations," *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1277 (N.D. Cal. 2000), the complaint fails to state a claim under Section 25504.

Plaintiff asserts that the plain language of the California statute both imposes liability on "control persons" and independently imposes presumptive liability on certain specifically enumerated classes of individuals, including principal executive officers and directors.  Plaintiff argues that defendants are seeking to improperly conflate the two by arguing that the entire statute should be interpreted as coextensive with "control person" liability under the federal securities statutes.  While acknowledging that there are no California cases examining Section 25504, plaintiff argues that the Court should find persuasive *Courtney v. Waring*, 191 Cal. App. 3d 1434 (1987), which addressed liability under an identically worded section of the Franchise Investment Law.  In *Courtney*, the court held that California Corporations Code Section 31302 imposes joint and several liability on control persons and each person who is a director or a principal executive officer, regardless of whether they

1    may independently be held liable as a control person:

2          The complaint alleges that each of the defendants falls within one of the statutory
           categories: Waring as vice president and a director; Drykerman as a controlling person;
3          and Emergy as a vice president.  While factual questions may arise as to defendants'
           status, the complaint adequately pleads a cause of action under section 31302.
4
     *Id.* at 1440-41.  The *Courtney* court noted that "Section 31302 was modeled on these two federal statutes
5
     [section 15 of the 1993 Act and section 20(a) of the 1934 Act] *except that the class of persons liable was*
6
     *expanded beyond the limited concept of a controlling person to include a variety of persons with*
7
     *relationships or connections to the franchise seller.*"  *Id.* at 1441 n.8 (emphasis added).  Plaintiff
8
     contends that the Court should interpret Section 25504 in the same manner, and that defendants'
9
     construction is ungrammatical and unsupported.  *See id.* at 1440 ("Section 25504 is the securities law
10
     analog of section 33302 in the Franchise Investment Law.").
11
            The Court agrees with plaintiff's construction of Section 25504.  The plain language of the
12
     statute provides that "[e]very person who directly or indirectly controls a person liable under Section
13
     25501 or 25503, . . . , *every principal executive officer or director of a corporation so liable* . . . and
14
     every broker-dealer or agent who materially aids in the act or transaction constituting the violation, *are*
15
     *also* liable jointly and severally with and to the same extent as such person, unless the other person who
16
     is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason
17
     of which the liability is alleged to exist."  Cal. Corp. Code § 25504 (emphasis added).  Defendants'
18
     interpretation of the statute requires the Court to ignore the clause "every principal executive officer or
19
     director of a corporation so liable."  *Courtney* is persuasive since that case interpreted identical
20
     language, albeit in a different section of the California Corporations Code.  Moreover, where the
21
     language of the California and federal statutes differ, as they do here, the Court finds no basis for
22
     holding that the scope of liability under Section 25504 is limited solely to control persons as under
23
     federal law.[7]
24

25   _____

26         [7] Section 15 of the 1933 Act states:

27          Every person who, by or through stock ownership, agency, or otherwise, or who,
           pursuant to or in connection with an agreement or understanding with one or more other
28          persons by or through stock ownership, agency, or otherwise, controls any person liable
           under sections 77k or 77l of this title, shall also be liable jointly and severally with and

United States District Court
For the Northern District of California

Defendants cite several Ninth Circuit cases for the proposition that liability under Section 25504 is coextensive with "control person" liability under federal securities law.  Several of these cases generally state that control person liability under Section 25504 is the same as control person liability under federal law. However, these cases do not analyze the additional "every principal executive officer or director of a corporation so liable" language in Section 25504, nor is there any indication that the courts were presented with the question of whether Section 25504 imposes liability on persons other than "control persons." *See Durham v. Kelly*, 810 F.2d 1500, 1505 (9th Cir. 1987) (affirming summary judgment in favor defendant alleged to be control person); *Underhill v. Royal*, 769 F.2d 1426, 1433 (9th Cir. 1985) (reviewing jury instructions on control person liability), *rejected on other grounds by Reves v. Ernst & Young*, 494 U.S. 56 (1990); *see also Kainos Labs v. Beacon Diagnostics*, No. C 97-4618, 1998 WL 2016634, at *14 (N.D. Cal. Sept. 14, 1998) (citing *Underhill* for proposition that "the control person statute under California law is substantially the same as the federal statute.").

More on point is the Ninth Circuit's unpublished memorandum decision in *Leason v. Berg*, No. 89-1539, 1991 WL 26483 (9th Cir. Mar. 1, 1991).  In *Leason*, the Ninth Circuit affirmed the district court's grant of summary judgment in favor of a defendant on numerous federal and state securities claims.  The court rejected the plaintiff's contention that Section 25504 "imposes a prima facie inference of liability on Berg as a director," and held that "[i]n order to be secondarily liable under section 25504, the defendant must exercise some control over the alleged perpetrator of the fraud." *Id*. at *4.  As an

---

to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 77o.  The 1934 Act contains language similar to the 1933 Act:

(a) Joint and several liability; good faith defense

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t.

United States District Court

For the Northern District of California

initial matter, *Leason* is not precedential.  *See* Fed. R. App. Proc. 32.1(a).  Moreover, the facts of *Leason* were unusual – one investor suing another investor who was also a director in the company – and quite different from the facts alleged here.  More importantly, *Leason* does not analyze the language of Section 25504, nor does it explain its reasoning.  Accordingly, the Court declines to follow *Leason* and finds that plaintiff has stated a claim under Section 25504.

### III.   Counts 3 and 7 (negligent misrepresentation, fraud), against all defendants

Defendants move to dismiss these claims on the ground that they are not pled with particularity.  For the reasons stated above, the Court agrees and GRANTS the motions to dismiss with leave to amend.  The D&O defendants also assert that plaintiff cannot state a claim against them because the complaint does not allege that they themselves uttered the misrepresentations.  However, while "[d]irectors and officers of a corporation are not personally liable for its torts merely because of their official positions, [they] may become liable if they directly ordered, authorized or participated in the tortious conduct."  *Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773, 785 (1979); *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1380 (2000) ("A corporate director or officer's participation in tortious conduct may be shown not solely by direct but also by knowing consent to or approval of unlawful acts.").  Thus, plaintiff can state negligent misrepresentation and fraud claims against the D&O defendants if plaintiff amends the complaint to allege more specifically each defendants' role in the alleged fraud.

### IV.   Count 4 (Cal. Corp. Code §§ 25400, 25500), against D&O defendants

California Corporations Code Section 25500 states, "Any person who willfully participates in any act or transaction in violation of Section 25400 shall be liable to any other person who purchases or sells any security at a price which was affected by such act or transaction."  Cal. Corp. Code § 25500.  Section 25400(b), upon which plaintiff relies, provides:

It is unlawful for any person, directly or indirectly, in this state:

. . .

(b) To effect, alone or with one or more other persons, a series of transactions in any security creating actual or apparent active trading in such security or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of

United States District Court

For the Northern District of California

1    such security by others.

2    Cal. Corp. Code § 25400(b).

3        Relying on *Kamen v. Lindly*, 94 Cal. App. 4th 197 (2001), and *California Amplifier, Inc. v. RLI*

4    *Ins. Co.*, 94 Cal. App. 4th 102 (2001), defendants contend that Section 25400 only imposes liability on

5    a defendant who either sells or offers to sell or buys or offers to buy a security, and that no theory of

6    secondary liability is available.   Plaintiff responds that *Kamen* and *California Amplifier* are

7    distinguishable because those cases interpreted a different subjection of Section 25400, subsection (d),

8    which uses different and narrower language than subsection (b).[8]  Plaintiff argues that Section 25400(b)

9    is directly applicable to the facts alleged because the D&O defendants "directly or indirectly" "effected"

10   the series of transactions pursuant to which Lehman purchased ARS and held them in its inventory to

11   prevent failed auctions.   Plaintiff argues that by preventing failed auctions, the D&O defendants

12   "effected" market and price manipulations for their own personal financial gain.

13       Plaintiff is correct that *Kamen* addressed subsection (d) and not (b).  However, the language of

14   *Kamen* strongly suggests that no theory of secondary liability is available under any subsection of

15   Section 25400, with perhaps the exception of subsection (e).  *See Kamen*, 94 Cal. App. 4th at 204 ("the

16   Legislature knows how to establish secondary liability when it wants to do so, yet failed to do so with

17   respect to Corporations Code section 25400.").   Plaintiff acknowledges that there are no cases

18   interpreting subsection (b), and plaintiff has not cited any authority in support of its construction.  To

19   the contrary, plaintiff's interpretation of the statute differs from that of a respected treatise.

20   "Subdivision (b) . . . by [its] very nature requires that the defendant be a purchaser or seller since the

21   conduct prohibited is associated with a market transaction."   Harold Marsh, Jr. & Robert H. Volk,

22   

23       [8]  Section 25400(d) states:

24   If such person is a broker-dealer or other person selling or offering for sale or purchasing
     or offering to purchase the security, to make, for the purpose of inducing the purchase

25   or sale of such security by others, any statement which was, at the time and in the light
     of the circumstances under which it was made, false or misleading with respect to any

26   material fact, or which omitted to state any material fact necessary in order to make the
     statements made, in the light of the circumstances under which they were made, not

27   misleading, and which he knew or had reasonable ground to believe was so false or
     misleading.

28   Cal. Corp. Code § 25400(d).

*Practice Under the California Securities Laws*, § 14.05[4] (2008).  In the absence of any authority adopting plaintiff's interpretation of Section 25400(b), the Court agrees with defendants that plaintiff cannot state a claim under this section because defendants neither sold nor offered securities to Openwave.  Accordingly, the Court GRANTS defendants' motion to dismiss this claim without leave to amend.

**V.      Count 8 (fraudulent concealment), against D&O defendants**

Defendants move to dismiss plaintiff's fraudulent concealment claim on a number of grounds. To the extent defendants contend that the claim fails because plaintiff has not alleged fraud with particularity, the Court agrees as discussed *supra*, and plaintiff is granted leave to amend.  Defendants additionally contend that plaintiff has failed to plead that defendants had a duty to disclose the allegedly concealed facts, a necessary element of a fraudulent concealment claim. *See Crayton v. Superior Court*, 165 Cal. App. 3d 443, 451 (1985).  Defendants are correct that the complaint does not allege duty, and plaintiff's opposition does not address this issue.  If plaintiff wishes to pursue this claim, plaintiff must amend the complaint to allege that the D&O defendants owed plaintiff a duty to disclose the allegedly concealed facts.

**VI.     Damages**

Defendants Whitney and Ford contend that all of Openwave's claims should be dismissed because Openwave has not alleged that it has sustained any cognizable damage or economic loss. Plaintiff responds that each claim in the complaint alleges that it has suffered at least $75,000 in damages, and that it has been damaged by the lack of liquidity of its investment in ARS.  Plaintiff also seeks rescission under California law.  The Court finds as a pleading matter that these allegations are sufficient.  Whether plaintiff can prove that it has been damaged is a factual inquiry appropriate for a later stage in this litigation.

**VII.    Personal jurisdiction over 10 non-California D&O defendants**

Ten D&O defendants who are not California residents also move to dismiss for lack of personal

jurisdiction.  "Although the defendant is the moving party on a motion to dismiss, the plaintiff bears the burden of establishing that jurisdiction exists."  *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citation omitted).  In adjudicating a personal jurisdiction motion, the Court must accept as true the uncontroverted allegations in the complaint, and where the motion is based on written materials, plaintiff need only make a *prima facie* showing of jurisdiction.  *Dole Food Co. Inc. v. Watt*, 303 F.3d 1104, 1108 (9th Cir. 2002).

The Court's exercise of personal jurisdiction must comport both with the state long-arm statute and with the constitutional requirements of due process.  *Omeluk v. Langsten Slip and Batbyggeri A/S*, 52 F.3d 267, 271 (9th Cir. 1995) (citing *Chan v. Society Expeditions, Inc*., 39 F.3d 1398 (9th Cir. 1994)).  California's long-arm statute confers jurisdiction over nonresident defendants to the extent permitted by the California or United States Constitution.  *See* Cal. Code of Civ. Proc. § 410.10.  Therefore, the jurisdictional inquiry collapses into a single analysis of due process.  Absent traditional bases for personal jurisdiction (physical presence, domicile or consent), due process requires that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Court must determine whether sufficient minimum contacts between moving defendants and the forum state exist to allow the exercise of personal jurisdiction over them.  In this regard, courts may exercise either general or specific jurisdiction over nonresident defendants.  *FDIC v. British-American Ins. Co., LTD*, 828 F.2d 1439, 1442 (9th Cir. 1987).  Here, plaintiff asserts that the Court has specific jurisdiction over the non-resident defendants.  The Ninth Circuit has held that "a court may exercise 'specific jurisdiction' when the following requirements are met:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Dole Food*, 303 F.3d at 1111.

Here, the complaint alleges that pursuant to the D&O defendants' plan and implementation and direction of it, Lehman purposefully solicited California residents to purchase ARS and sold ARS to California residents. Compl. ¶ 27. The complaint alleges that a substantial portion of Lehman's ARS business was with California investors, including Openwave. *Id*. Plaintiff alleges that each of the 10 non-resident D&O defendants knowingly participated in a plan to cause the Lehman representatives to make the misrepresentations and to conceal the omissions specified in paragraphs 41 and 42 of the complaint in connection with Openwave's investments in each of the disputed ARS securities. *Id*. ¶¶ 23, 43-44. The complaint also alleges that defendants knew that ARS would become illiquid as soon as Lehman withdrew its artificial support of the market. *Id*. ¶¶ 37-38, 45. Finally, the misrepresentations and omissions and sales of the ARS took place in Redwood City, California. *Id*. ¶ 2.

All of the non-resident D&O defendants have submitted declarations stating, *inter alia*, where they live and where their Lehman-related documents are located, denying having communicated with or visiting Openwave, and denying knowledge of "what representations were made to Openwave before it decided to purchase the auction-rate securities at issue in this action." *See, e.g.,* O'Meara Decl. ¶ 9. Plaintiff emphasizes that none of the non-resident defendants denies the substantive allegations of the complaint, namely that these defendants participated in Lehman's promotion of the ARS market as a safe and liquid market; that defendants knew and failed to disclose that ARS would become illiquid as soon as Lehman stopped its artificial maintenance of the ARS market; and that defendants knowingly participated in a plan that resulted in the specific misrepresentations and omissions to Openwave.

### A. Purposeful availment and "effects" test

Applying the three part specific jurisdiction test, and assuming that plaintiff does amend the complaint to more specifically allege the role that each defendant played in the alleged fraudulent scheme as discussed *supra*, the Court finds that plaintiff has made a *prima facie* showing of jurisdiction over the non-resident defendants. On the first factor, defendants have purposefully availed themselves of the California forum. As discussed above, the complaint alleges – and the Court must take as true because the allegations are uncontroverted – that each of the defendants conceived of and chose to

16

United States District Court
For the Northern District of California

1   participate in and implement the plan that cause the specified misrepresentations and omissions to

2   Openwave, and that each defendant obtained substantial financial benefits from the activities conducted

3   in California.  "A corporate officer or director is, in general, personally liable for all torts which he

4   authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the

5   corporation and not on his own behalf." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d

6   725, 734 (9th Cir.1999) (corporate officers cannot "hide behind the corporation where [the officer was]

7   an actual participant in the tort"); *see also j2 Global Communications, Inc. v. Blue Jay, Inc.*, No. C 08-

8   4254, 2009 WL 29905, at *5, 9 (N.D. Cal. Jan. 5, 2009) (exercising specific jurisdiction over non-

9   resident former corporate president defendant whose only contact with California was through directing

10  agents to send fax advertisements to nationwide network of servers, including in California); *Wolf*

11  *Designs, Inc. v. DHR & Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004).

12          In addition, the non-resident defendants are subject to personal jurisdiction in California under

13  the "effects" test articulated in *Calder v. Jones*, 465 U.S. 783 (1984).  In *Calder*, the Supreme Court held

14  that California courts could exercise jurisdiction over an editor and a reporter who caused a defamatory

15  article about a California resident to be published in Florida and circulated in California, because the

16  tortious conduct was "expressly aimed" at California where the harm occurred.  *See id.* at 788-89.

17  "*Calder* stands for the proposition that purposeful availment is satisfied even by a defendant whose only

18  contact with the forum state is the 'purposeful direction' of a foreign act having effect in the forum

19  state." *Dole Food*, 303 F.3d at 1111.  Here, the complaint alleges that the non-resident D&O defendants

20  intentionally directed their fraudulent scheme to California where Lehman conducted a substantial

21  portion of its ARS business.  Compl. ¶¶ 27, 44.  Plaintiff alleges that defendants' intentional acts caused

22  Openwave harm in California.[9]  These allegations are sufficient to establish purposeful availment.  *See*

23  *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1398-1400 (9th Cir. 1986).

24  _____

25          [9]  Moreover, by enacting California Corporations Code Section 25504 which presumptively
    extends joint and several liability to "every principal executive officer or director of a corporation so
26  liable," California has demonstrated a special interest in controlling the effects of securities fraud.  *See*
    *Quattrone v. Superior Court*, 44 Cal. App. 3d 296, 306 (1975) ("[W]here the forum state has manifested
27  a special interest in controlling the effects by enacting special legislation with respect thereto, the
    exercise of jurisdiction based upon such effects is justified.").

28

1

2     **B.     Forum-related activities**

3         The second prong of the minimum contacts analysis requires that "the claim asserted in the

4   litigation arises out of defendant's forum related activities." *Panavision Int'l LP v. Toeppen*, 141 F.3d

5   1316, 1322 (9th Cir. 1998).  The Court must determine whether plaintiff would not have been injured

6   but for defendants' forum-related activities.  *See id.*

7         This prong is satisfied here.  Openwave's claims arise out of the defendants' alleged conception

8   of, participation in, and authorization of Lehman's plan to market ARS as a safe, liquid investment when

9   in fact it was not and was being artificially supported by Lehman.

10

11    **C.     Reasonableness**

12        "If the plaintiff establishes both prongs one and two, the defendant must come forward with a

13  'compelling case' that the exercise of jurisdiction would not be reasonable." *Boschetto v. Hansing*, 539

14  F.3d 1011, 1016 (9th Cir. 2008) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

15  In deciding whether the exercise of jurisdiction would be reasonable, the Court considers seven factors:

16  "(1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending

17  in

18  the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's

19  interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the

20  importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence

21  of an alternative forum." *Panavision*, 141 F.3d at 1323 (citing *Burger King*, 471 U.S. at 476-77).  The

22  Court balances all seven factors and no one factor is dispositive.  *Id*.

23        Defendants have not met their burden to show that the exercise of jurisdiction would not be

24  reasonable.  Indeed, defendants make no effort to address any of the seven *Burger King* factors, instead

25  simply asserting that "[e]ven a summary examination of these factors makes clear that the exercise of

26  jurisdiction over the non-California defendants would be entirely unreasonable and would offend, rather

27  than comport with, notions of fair play and substantial justice."  Motion at 10:1-3.  In any event, the

28  Court finds that under the *Burger King* test the exercise of jurisdiction would be reasonable.

United States District Court
For the Northern District of California

### 1.        Purposeful interjection

"Even if there is sufficient 'interjection' into the state to satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong." *Panavision*, 141 F.3d at 1323.  Based upon the record before the Court, the Court finds this factor weighs in favor of defendants, as there are no allegations specific to each defendant regarding that defendant's particular involvement in the alleged fraudulent plan.

### 2.        Defendants' burden in litigating

"A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation of due process it will not overcome clear justifications for the exercise of jurisdiction.'" *Panavision*, 141 F.3d at 1323 (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128-29 (9th Cir. 1995)).  Here, defendants have not argued to the Court that their burden in litigating in California would be so great as to deprive them of due process.  Even if they had, advances in technology and discounted airfare do not make it unreasonable for defendants to litigate in California.  *See Panavision*, 141 F.3d at 1323.  Moreover, defendants are represented by New York counsel with Palo Alto offices.  This factor does not favor defendants.

### 3.        Sovereignty

This factor "concerns the extent to which the district court's exercise of jurisdiction in California would conflict with the sovereignty" of defendants' home states.  *Panavision*, 141 F.3d at 1323. Defendants have not pointed to any conflict of law between California and the defendants' home states (New York, Florida, Texas, Connecticut, New Jersey, and Washington D.C.), or other issues which would adversely impact other states' sovereignty interests.  This factor therefore does not weigh in favor of defendants.

### 4.        Forum state's interest

19

1    California has "a strong interest in protecting its residents from torts that cause injury within the

2    state, and in providing a forum for relief."  *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d

3    1257, 1260 (9th Cir. 1989).  Defendants have not pointed to any compelling interest that any other state

4    has in adjudicating the dispute.  This factor does not weigh in favor of defendants.

5

6            **5.      Efficient resolution**

7    This factor "focuses on the location of the evidence and the witnesses.  It is no longer weighed

8    heavily given the modern advances in communication and transportation."  *Panavision*, 141 F.3d at

9    1323 (internal citation omitted).  Even if the Court were to weigh this factor, defendants have not come

10   forward with any evidence that resolution of this matter would not be efficient in California, particularly

11   given the presence of the five California resident defendants.  Therefore, this factor does not weigh in

12   favor of defendants.

13

14           **6.      Convenient and effective relief for plaintiff**

15   Plaintiff's inconvenience is not weighed heavily in this analysis.  *Panavision*, 141 F.3d at 1324.

16   However, convenient and effective relief for plaintiff would be hindered by litigating in multiple states.

17   This factor therefore weighs slightly in favor of plaintiff.

18

19           **7.      Alternative forum**

20   The ten D&O defendants have not identified an alternate forum where all fifteen defendants are

21   subject to jurisdiction.   This factor therefore weighs in plaintiff's favor.

22   In sum, while the first factor – the extent of defendants' purposeful  interjection – weighs in

23   favor of defendants, none of the other factors in the reasonableness analysis favors defendants.  In

24   balancing these factors, the Court finds that although one weighs in defendant's favor, defendants "failed

25   to present a compelling case that the district court's exercise of jurisdiction in California would be

26   unreasonable." *Panavision*, 141 F.3d at 1324.

27

28           **CONCLUSION**

United States District Court
For the Northern District of California

1        For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part and

2   DENIES in part defendants' motions to dismiss.  (Docket Nos. 20 & 21).  The Court GRANTS

3   defendants' request for judicial notice of Exhibits A, B, F & G to Docket No. 23 and Exhibit H to

4   Docket No. 49.  Plaintiff shall file an amended complaint no later than **June 19, 2009**.

5

6        **IT IS SO ORDERED.**

7

8   Dated: June 6, 2009

9                            SUSAN ILLSTON
                         United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28