1  JAMES G. KREISSMAN, 206740
   jkreissman@stblaw.com
2  SIMONA G. STRAUSS, 203062
   sstrauss@stblaw.com
3  SIMPSON THACHER & BARTLETT LLP
   2550 Hanover Street
4  Palo Alto, California  94304
   Telephone: (650) 251-5000
5  Facsimile:  (650) 251-5002

6  Attorneys for Defendants Richard S. Fuld,
   Jr., Michael L. Ainslie, Roland A.
7  Hernandez, David Goldfarb, John F. Akers,
   Roger S. Berlind, Joseph M. Gregory,
8  Thomas H. Cruikshank, Marsha Johnson
   Evans, Henry Kaufman, John D. Macomber,
9  Thomas A. Russo, and Christopher M.
   O'Meara

10 *Additional counsel listed on signature page*

11

12              UNITED STATES DISTRICT COURT

13         FOR THE NORTHERN DISTRICT OF CALIFORNIA

14              SAN FRANCISCO DIVISION

15 **OPENWAVE SYSTEMS INC.,**                    Case No. C 08-05683-SI

16                        **Plaintiff,**         **NOTICE OF MOTION AND
                                                 MOTION OF DIRECTOR AND
17            **v.**                             OFFICER DEFENDANTS TO
                                                 DISMISS OPENWAVE'S FIRST
18 **RICHARD S. FULD, JR. et al.,**              AMENDED COMPLAINT
                                                 PURSUANT TO FRCP 12(b)(2) AND
19                        **Defendants.**        FRCP 12(b)(6); MEMORANDUM OF
                                                 POINTS AND AUTHORITIES IN
20                                               SUPPORT

21                                               Date:        September 18, 2009
                                                 Time:        9:00 a.m.
22                                               Judge:       Honorable Susan Illston
                                                 Courtroom:   10, 19th Floor
23
                                                 [Request for Judicial Notice, [Proposed]
24                                               Order and Joinders filed concurrently
                                                 herewith]
25

26

27

28

1

**TABLE OF CONTENTS**

2   NOTICE OF MOTION AND MOTION ........................................................................ 1

3   PRELIMINARY STATEMENT OF ISSUES ............................................................... 1

4   STATEMENT OF FACTS........................................................................................... 3

5   ARGUMENT .............................................................................................................. 6

6      I.     OPENWAVE FAILS TO PLEAD ANY MISREPRESENTATIONS WITH
7            PARTICULARITY (Counts 1, 2, 3, and 4) ............................................. 6

8      II.    OPENWAVE FAILS TO PLEAD THE PARTICIPATION AND ROLE OF
             EACH DIRECTOR AND OFFICER DEFENDANT IN AN ALLEGED
9            FRAUDULENT SCHEME (Counts 2, 4 and 5) ....................................... 7

10         A.    Openwave Fails To Adequately Allege Facts To Suggest The Existence
               Of A Fraudulent Scheme ............................................................... 7

11         B.    Openwave's Own Allegations Make The Existence Of A Global ARS
12               Scheme Implausible, Thus Supporting Dismissal ........................................ 8

13         C.    Openwave Fails To Adequately Allege Facts Detailing The
               Participation Of Each Of The Director And Officer Defendants In A
14              Fraudulent Scheme ............................................................... 9

15         D.    Openwave Cannot Use Information And Belief To Rescue Its Scheme
               Allegations .............................................................................. 13

16      III.   OPENWAVE FAILS TO STATE A CLAIM UNDER § 25504 (Counts 1 and
17            3)...................................................................................... 14

18         A.    Openwave Fails To Adequately Plead An Underlying Violation Of §
               25501 Because It Fails To Plead A False Statement .................................... 14

19         B.    Openwave Fails To Adequately Plead An Underlying Violation Of §
20               25501 Because It Fails To Allege Strict Privity With LBI ........................ 15

21         C.    Openwave Fails To Adequately Plead The Requisite § 25504 Status
               For Many Of The Director And Officer Defendants .................................... 16

22      IV.   OPENWAVE FAILS TO STATE A CLAIM FOR CONCEALMENT (Count
23            5)...................................................................................... 18

24         A.    Openwave Fails To Allege The Director And Officer's Conduct With
               The Requisite Particularity .............................................................. 19

25         B.    Openwave Fails To Allege A Duty With The Requisite Particularity ........ 19

26      V.    THE NON-CALIFORNIA DEFENDANTS SHOULD BE DISMISSED FOR
27            LACK OF PERSONAL JURISDICTION ............................................. 24

28   CONCLUSION ....................................................................................... 25

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n¸*

4

731 F.2d 112 (2d Cir. 1984) ............................................................................. 22

5

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ........................................................ 8

6

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ............................ 8

7

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) ............................... 24

8

*California ex rel. Miller v. Walgreen Corp.*,

9

175 F.R.D. 631 (N.D. Cal. 1997) ...................................................................... 7

10

*Doe v. Aramark Educ. Res., Inc.*,
206 F.R.D. 459 (M.D. Tenn. 2002) ................................................................ 12

11

*Fujitsu-Icl Sys. Inc. v. Efmark Serv. Co.*,

12

No. 00-0777, 2000 WL 1409760 (S.D. Cal. June 29, 2000) ....................... 24

13

*Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099 (N.D. Cal. 2007) ............ 20

14

*Hokama v. E.F. Hutton & Co., Inc.*, 566 F. Supp. 636 (C.D. Cal. 1983) ...... 11

15

*In re Alliance Equip. Lease Program*,

16

No. 98-2150, 2002 WL 34451621 (S.D. Cal. Oct. 15, 2002) .................... 14

17

*In re Brocade Sec. Litig.*,
No. 05-02042, 2008 WL 2050847 (N.D. Cal. May 13, 2008) ................... 18

18

19

*In re Daou Sys., Inc.*, 411 F.3d 1006 (9th Cir. 2005) ................................... 6

*In re First Alliance Mortgage Co.*,

20

No. 01-971, 2003 WL 21530096 (C.D. Cal. June 16, 2003) ..................... 21

21

*In re Gap Stores Sec. Litig.*, 457 F. Supp. 1135 (N.D. Cal. 1978) .............. 18

22

*In re Metricom Sec. Litig.*,

23

No. 01-4085, 2004 WL 966291 (N.D. Cal. Apr. 29, 2004) ......................... 7

24

*In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399 (9th Cir. 1996) ......................... 7

25

*In re Uni-Marts, LLC*, 404 B.R. 767 (Bankr. D. Del. 2009) ...................... 13

26

*In re ZZZZ Best Sec. Litig.*,

27

No. 87-3574, 1990 WL 132715 (C.D. Cal. July 23, 1990) ......................... 15

28

*Kassover v. UBS*,
No. 08-2753, 2008 WL 5331812 (S.D.N.Y. Dec. 19, 2008) ........................................................ 7

*Lichtenstein v. Reassure Am. Life Ins. Co.*,
No. 07-1653, 2009 WL 792080 (E.D.N.Y. Mar. 23, 2009) ........................................................ 9

*Maganallez v. Hilltop Lending Corp.*,
505 F. Supp. 2d 594 (N.D. Cal. 2007) .................................................................................... 10

*MTC Elec. Tech. v. Leung*, 876 F. Supp. 1153 (C.D. Cal. 1995) ............................................ 14

*Moore v. Kayport Package Express*, 885 F.2d 531 (9th Cir. 1989) .......................................... 13

*Mourning v. SmithKline Beecham Corp.*,
No. 08-04929, 2009 WL 733873 (N.D. Cal. Mar. 17, 2009) .................................................... 22

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) .................................................................. 13

*Occupational-Urgent Care Health Sys. v. Sutro & Co., Inc.*,
711 F. Supp. 1016 (E.D. Cal. 1989) ........................................................................................ 13

*Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................ 18

*Pecot v. SF Deputy Sheriff's Association*,
No. 08-05125, 2009 WL 585877 (N.D. Cal. Mar. 6, 2009) ...................................................... 7

*Rick-Mik Enterprises, Inc. v. Equilon Enterprises, LLC*,
532 F.3d 963 (9th Cir. 2008) ................................................................................................ 8-9

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ............................ 24

*Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1986) .............................................................. 10

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ........................................ 17

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) .............................................................. 9

*U.S. v. Bader*, 956 F.2d 708 (7th Cir. 1992) ........................................................................ 13

*U.S. v. Cathcart*,
No. 07-4762, 2008 WL 4279717 (N.D. Cal. Sept. 15, 2008) .................................................. 13

*Weaver v. City & County of San Francisco*,
No. 03-01589, 2004 WL 422626 (N.D. Cal. Mar. 4, 2004) .................................................... 21

*Wexner v. First Manhattan Co.*, 902 F.2d 169 (2d Cir. 1990) ................................................ 13

**STATE CASES**

*American Land Investments v. County of Los Angeles*,
No. B193598, 2008 WL 570602 (Cal. Ct. App. Mar. 4, 2008)................................................ 21

*Apollo Capital Fund v. Roth Capital Partners,*
158 Cal. App. 4th 226 (2007) ..................................................................... 15

*Goodman v. Kennedy*, 18 Cal. 3d 335 (1976) ....................................... 21, 22

*Hughes Elecs. Corp. v. Citibank Delaware,*
120 Cal. App. 4th 251 (2004) ................................................................. 17-18

*LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997) .................... 19, 20-21, 22

*Linear Tech. Corp. v. Applied Materials, Inc.,*
152 Cal. App. 4th 115 (2007) ..................................................................... 19

*U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586 (1970) ........... 20

## STATUTES & REGULATIONS

15 U.S.C. § 7241 ........................................................................................ 18

17 C.F.R. 240.3b-2 ..................................................................................... 18

17 C.F.R. 240.3b-7 ..................................................................................... 18

Cal. Corp. Code § 25401 ....................................................................... 14-15

Cal. Corp. Code § 25501 ....................................................................... 14-15

Cal. Corp. Code § 25504 ....................................................................... 14-18

Uniform Securities Act of 1956, App. Unif. Sec. Act 1956 § 410 ............. 17

## OTHER AUTHORITIES

Marsh & Volk, *Practice Under the California Securities Laws* (2008) ....... 17

Robert H. Volk, Comm. of Corps.; "Corporate Securities Law of 1968
(Proposed)" October 20, 1967 .................................................................... 17

Webster's New World College Dictionary (4th ed. 2005) .......................... 17

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 18, 2009 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, Defendants Richard S. Fuld, Jr., Michael L. Ainslie, Roland A. Hernandez, David Goldfarb, John F. Akers, Roger S. Berlind, Joseph M. Gregory, Thomas H. Cruikshank, Marsha Johnson Evans, Henry Kaufman, John D. Macomber, Thomas A. Russo, and Christopher M. O'Meara ("Director and Officer Defendants") shall and hereby do move, pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing without leave to amend the Corrected First Amended Complaint filed by Openwave Systems Inc. ("Openwave") ("FAC").[1]  Defendants Ainslie, Akers, Berlind, Cruikshank, Evans, Kaufman, Macomber, Goldfarb, O'Meara, and Russo (the "Non-California Defendants") also specially appear to move to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Request for Judicial Notice ("RJN"), all the records and files in this action (including those papers filed in support of the motion to dismiss the original complaint in this action), and such additional matters of which the Court may take judicial notice.[2]

## PRELIMINARY STATEMENT OF ISSUES

In its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss the Complaint (the "June 6th Order"), the Court gave Openwave the opportunity to file an amended complaint that would rectify its prior pleading deficiencies.  Openwave squandered this opportunity.  Its amended complaint suffers from precisely the same shortcomings that doomed its initial effort and should likewise be dismissed, albeit with prejudice.

---

[1]  The FAC divides the defendants into three categories: (i) directors of Lehman Brothers Inc. ("LBI") and/or Lehman Brothers Holdings, Inc. ("LBHI") (Defendants Ainslie, Akers, Berlind, Cruikshank, Evans, Fuld, Hernandez, Kaufman, and Macomber) ("Director Defendants"), FAC ¶ 22; (ii) officers of LBI and/or LBHI (Defendants Fuld, Goldfarb, Gregory, O'Meara, and Russo) ("Officer Defendants"), FAC ¶ 20; and (3) former LBI employees who worked on the Openwave account ("Defendants Whitney and Ford").  FAC ¶¶ 16-17.

[2]  The Director and Officer Defendants hereby incorporate by reference all arguments in their original motions to dismiss, as the amended complaint cures none of the original defects.

1    In ruling on the initial motion to dismiss, the Court held that, other than the negligence-

2    based claim brought pursuant to § 25504 of the California Corporations Code, Rule 9(b) governed

3    all of Openwave's claims.  The Court dismissed these claims for failure to plead fraud with

4    particularity.  In response, Openwave has done virtually nothing to add more detail to its pleading,

5    necessitating dismissal again.

6        The Court also dismissed the non-statutory claims against the Director and Officer

7    Defendants because Openwave failed to allege what actions each of those defendants took in

8    furtherance of the alleged scheme to manipulate the ARS market.  Openwave's attempts to rectify

9    this deficiency also fail.  Rather than alleging what actions the Director and Officer Defendants

10   undertook as part of the scheme, the FAC merely adds allegations about the structure of LBI and

11   its committees and alleges that the Director and Officer Defendants are somehow culpable because

12   they allegedly approved an LBI settlement with the SEC in 2006.  These additional allegations

13   ignore the fundamental failure of the complaint – the absence of any specific allegations that the

14   Director and Officer Defendants took any actions as part of a scheme to manipulate the ARS

15   market.  Moreover, the alleged scheme itself is still so poorly pleaded that it has not been defined

16   with sufficient specificity to survive Rule 9(b) scrutiny.

17       Openwave's § 25504 claims against the Director and Officer Defendants should also be

18   dismissed.  First, as with the initial complaint, the FAC fails to allege an actionable false statement

19   with particularity.  Additionally, despite being given the opportunity by the Court to plead the

20   required element of privity with greater specificity, Openwave has instead admitted that it does not

21   know whether it purchased the ARS in question from LBI.  Both of these failures necessitate

22   dismissal of the § 25504 claims in their entirety.  Moreover, the § 25504 claims against most of

23   the Director and Officer Defendants should also be dismissed because they fall outside the status-

24   based definition of those parties that face potential § 25504 liability.

25       In its June 6th Order, the Court also dismissed Openwave's fraudulent concealment claim,

26   both because Openwave had failed to plead the actions of the Director and Officer Defendants

27   with the requisite particularity and because it had failed to allege that those defendants owed

28   Openwave a duty.  Openwave has failed to cure either of these defects.

Finally, the Court held that Openwave must plead the specific actions taken by each of the Non-California Defendants in order to state a *prima facie* case for personal jurisdiction. Because Openwave has failed to plead any additional facts showing what actions these defendants took in furtherance of the alleged scheme to manipulate the ARS market, it has failed to plead facts giving rise to personal jurisdiction over these defendants, and they should be dismissed on that basis.

## STATEMENT OF FACTS

**ARS Market Background**

Auction Rate Securities ("ARS") are debt instruments, such as corporate or municipal bonds, that have a long-term nominal maturity date and regularly reset their interest rate through an auction process that typically occurs every 7, 28 or 35 days. FAC ¶ 33. LBI[3] sometimes purchased ARS from issuers and resold them to investors, and sometimes acted as a broker for investors who wished to purchase ARS from others. FAC ¶¶ 34-35, 69. From 1984 through 2007, the ARS market was liquid and functioned smoothly, with virtually no auction failures. FAC ¶ 42. Sophisticated investors—such as Openwave—regularly invested in ARS during this time. FAC ¶ 33. By early February 2008, the market for ARS had essentially frozen. FAC ¶¶ 42, 47, 78. This industry-wide seizure coincided with "the developing sub-prime mortgage and credit crises" that had roiled the credit markets worldwide. FAC ¶¶ 47, 72(a).

**The SEC's Investigation of the ARS Market**

The SEC investigated practices in the ARS market and subsequently entered into a settlement and cease-and-desist order with certain broker-dealers, including LBI, on May 31, 2006 (the "SEC Order"). FAC ¶ 43 & Ex. B at 1. Plaintiff claims that the Director and Officer Defendants approved the terms of this settlement before it was submitted to the SEC. FAC ¶¶ 44-45. The SEC Order disclosed, *inter alia*, that broker-dealers sometimes placed bids in ARS auctions for their own accounts to prevent auctions from failing. FAC Ex. B at 6. Although the SEC did not object to this conduct, it required the broker-dealers to disclose such material ARS

---

[3] The FAC improperly refers to LBI and LBHI, collectively, as "Lehman." FAC ¶ 1. LBI and LBHI were, however, legally distinct corporate entities with separate boards of directors. This Motion attempts to refer to the proper Lehman entity where appropriate, although the FAC's ambiguity makes maintaining the appropriate distinction difficult in certain instances.

auction practices and procedures to their customers and the general public within three months of entry of the SEC Order.  FAC Ex. B at 6 n.6, 11; FAC ¶ 43.  In response, LBI posted its "Material Auction Rate Securities Practices and Procedures" on is public website.  FAC Ex. C; FAC ¶ 49. LBI publicly disclosed a number of its ARS-related practices and related information:

- LBI routinely participates in auctions and trade ARS for its own account;

- LBI has knowledge of the other orders placed and can use that knowledge to discern the clearing rate before the auction is completed and alter its bidding strategy accordingly;

- LBI place bids for its own account to, among other things, prevent auction failures or to prevent an auction from clearing at a rate that LBI believed was inappropriate;

- A successful auction does not mean that an ARS investment involves no significant liquidity or credit risk;

- LBI is not obligated to place bids in order to prevent auctions from failing;

- Investors should not assume that LBI would place bids in the future;

- The fact that an auction clears successfully does not mean that an investment in the securities involves no significant liquidity or credit risk;

- Investors should not assume that LBI will continue to bid at auctions or that auction failures will not occur in the future;

- ARS had long-term maturities, with no guarantee of liquidity; and

- Auction failures are possible, especially if the issuer's credit (and/or the credit of any guarantor or insurer) were to deteriorate, if a market disruption were to occur of if, for any reason, Lehman Brothers were unable or unwilling to bid.

*See generally* FAC Ex. C.

**Openwave's ARS Investments**

Openwave retained LBI as an investment adviser.  FAC ¶ 35.  On January 12, 2006, Openwave's Audit Committee approved a revised investment policy (the "Investment Policy"), which expressly approved the purchase of ARS by Openwave.  FAC ¶ 37 & Ex. A at 1. Openwave purchased at least the following 11 ARS (almost all of them *after* the SEC Order):

| DATE | AMOUNT | ARS |
|---|---|---|
| 5.4.2006 | $800,000 | Ballantyne Re PLC Class A-3 Notes |
| 5.31.2006 | $100,000 | Ballantyne Re PLC Class A-3 Notes |
| 12.13.2006 | $1,570,000 | Potomac Trust Capital Series 2004-VII |
| 12.28.2006 | $1,700,000 | Potomac Trust Capital Series 2004-VII |
| 12.29.2006 | $3,500,000 | Insurance Note Capital Series 2006-RMI I |
| 2.5.2007 | $3,500,000 | Primus Financial |
| 2.14.2007 | $2,200,000 | Athilon Capital Series C Notes |
| 4.10.2007 | $1,000,000 | Ballantyne Re PLC Class A-3 Notes |
| 5.15.2007 | $1,500,000 | Ballantyne Re PLC Class A-3 Notes |
| 7.6.2007 | $3,400,000 | Insurance Note Capital 2003 River Lake |
| 8.1.2007 | $3,400,000 | Double Oak Series 2007-III |

FAC ¶ 55.  Openwave alleges that LBI was the "Initial Purchaser" of each of these ARS.  FAC ¶ 96(a).  However, Openwave does not know which of the above-listed ARS, if any, it purchased from LBI.  FAC ¶ 83.

**The Alleged Misrepresentations and Omissions**

Openwave alleges that Defendant Whitney represented to Linda Rodezno, a manager in Openwave's treasury department, that: (i) ARS were low-risk, highly liquid investments that were suitable under the Investment Policy, and (ii) the market for ARS was a true, liquid market.  FAC ¶¶ 53, 56.  This representation allegedly occurred between December 2005 and November 2007, as well as "at other times."  FAC ¶ 56.  LBI personnel allegedly failed to tell Openwave: (i) that LBI was the Initial Purchaser for ARS it sold to Openwave, (ii) that LBI was holding or repurchasing large quantities of ARS to prevent failed auctions, (iii) that LBI offered ARS from its own inventory for the predominant purpose of preventing failed auctions or price fluctuations, (iv) the percentage of ARS that LBI was purchasing at auctions for its own account or the volume of ARS it owned, (v) that ARS would become illiquid as soon as LBI stopped its support of the ARS market, (vi) the "true cause" of the ARS auction failures, and (vii) that ARS being sold to Openwave were unsuitable under the Investment Policy.  FAC ¶¶ 54, 73-74.  Plaintiff claims it was deceived about these issues despite LBI's disclosures, discussed above, that LBI participated in auctions, traded for its own account, sometimes placed bids to prevent auctions from failing or from clearing at a non-market rate, and was not obligated to continue to do so in the future.  *See* FAC Ex. C.

**Openwave's Allegations Relating to the Director and Officer Defendants**

Openwave fails to provide any specific factual allegations about the Director and Officer Defendants' involvement in the alleged misstatements or omissions set forth above.  The FAC merely identifies each defendant's title and general responsibilities at LBHI and/or LBI, including membership on various LBHI and/or LBI committees.  FAC ¶¶ 3-15, 24-25, 65-66.  For example, it alleges that the Officer Defendants served on "Lehman's Risk Committee," which met weekly to review Lehman's risk exposure, position concentrations, and risk-taking activities.  FAC ¶ 25.  Openwave also alleges that "Lehman" was comprised of three business units, and that the head of the Fixed Income Division, which operated ARS, reported to Defendant Gregory.  FAC ¶ 24.

Openwave claims that the Director and Officer Defendants "participated in, authorized, or consented to a plan whereby Lehman's corporate structure was used to perpetuate" the alleged fraud and promulgated "directives and other policies, procedures, practices, and/or schemes" that caused the misconduct.  FAC ¶¶ 41, 55.  Openwave fails to allege, however, *how* Lehman's corporate structure was used to perpetrate the alleged fraud.  It also fails to plead any facts setting forth the alleged directives, policies, procedures, practices, or schemes that were allegedly promulgated by the Director and Officer Defendants.  Moreover, Openwave does not allege a single action, direction or statement made by any Director or Officer Defendant or the contents of any discussion had by any of the Director and Officer Defendants relating to ARS in any way.

## ARGUMENT

### I.  OPENWAVE FAILS TO PLEAD ANY MISREPRESENTATIONS WITH PARTICULARITY (Counts 1, 2, 3, and 4)

As explained in the Motion to Dismiss concurrently filed by Defendants Whitney and Ford, in which the Director and Officer Defendants join, Openwave's FAC does not cure the pleading deficiencies in the original complaint with respect to the alleged misstatements.  The first four claims against the Director and Officer Defendants should be dismissed on that basis alone.[4]

---

[4]  As the Court previously stated, when a complaint "alleges a 'unified course of fraudulent conduct and re[lies] entirely on that course of conduct'" for all claims, Rule 9(b) applies to the entire complaint.  June 6th Order at 5 (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005)).  Because the FAC relies on such a unified course of conduct, Rule 9(b) should apply to each of its claims.  Openwave attempts to avoid the application of Rule 9(b) to Count 1 of the

1  **II.**    **OPENWAVE FAILS TO PLEAD THE PARTICIPATION AND ROLE OF EACH
DIRECTOR AND OFFICER DEFENDANT IN AN ALLEGED FRAUDULENT
SCHEME (Counts 2, 4 and 5)**

2

3        Openwave's non-statutory claims against the Director and Officer Defendants rely entirely

4  on the premise that each of these individuals "participated in, authorized, or consented" to a vast

5  ARS market manipulation scheme, which resulted in the alleged misrepresentations made by

6  Defendant Whitney.  FAC ¶ 41.  However, the FAC fails to plead any facts suggesting the

7  existence of such a far-reaching scheme, let alone each defendant's participation in it.  As was the

8  case with Openwave's initial complaint, this pleading is grossly inadequate, and forms a basis to

9  dismiss the common law claims in the FAC.

10       **A.**    **Openwave Fails To Adequately Allege Facts To Suggest The Existence Of A
Fraudulent Scheme**

11

12       Where allegations are based on a fraudulent scheme, as they are here, a plaintiff must plead

13  this scheme with the particularity required under Rule 9(b).  *See, e.g., California ex rel. Miller v.*

14  *Walgreen Corp.*, 175 F.R.D. 631, 634–35 (N.D. Cal. 1997) (dismissing fraud claims because,

15  despite detailing the "*nature*" of a fraudulent scheme, plaintiff did not "specifically identify the

16  *circumstances* (i.e., time, place, and participants) giving rise to the fraud"); *Pecot v. SF Deputy*

17  *Sheriff's Ass'n*, No. 08-05125, 2009 WL 585877, at *1 (N.D. Cal. Mar. 6, 2009) (dismissing

18  claims for failure to allege details of scheme with sufficient particularity).

19       The FAC lacks the requisite specificity as to the existence of a fraudulent scheme.

20  Openwave simply alleges that "Lehman" was artificially manipulating the ARS market,

21  _____

22  FAC by styling it as a negligence-based § 25504 claim and expressly alleging that the claim does
not rely on any allegations of reckless or intentional conduct.  However, Openwave fails to plead a
single fact that supports its negligence theory rather than its overarching theory that the defendants

23  participated in an intentional fraudulent scheme.  Where, as here, one claim of a complaint does
not rely on different facts, but merely attempts to *relabel* fraud allegations as negligence

24  allegations, courts have repeatedly held that Rule 9(b) applies to the claim in question.  *See In re
Stac Elecs.*, 89 F.3d 1399, 1405 n.2 (9th Cir. 2006) (applying Rule 9(b) to purported negligence-

25  based claim because same factual allegations were used to support negligence- and fraud-based
claims even though complaint asserted that it was excluding all fraud-based allegations from

26  negligence claim); *In re Metricom Sec. Litig.*, No. 01-4085, 2004 WL 966291, at *22 (N.D. Cal.
Apr. 29, 2004) (same); *Kassover v. UBS*, 619 F. Supp. 2d 28, 31 (S.D.N.Y. 2008) (applying Rule

27  9(b) to fraud and negligence claims where complaint alleged scheme to mislead investors about
nature of ARS market; holding "alleged conduct, and not the terms in which a plaintiff's

28  allegations are denominated, governs whether Rule 9(b) applies").

1   concealing its actions and misrepresenting the safety and liquidity of the ARS market.  FAC ¶¶ 39-

2   42.  However, the FAC fails to provide any details, such as: who devised the scheme, when the

3   scheme began, what ARS were manipulated, who was involved in the scheme, or even how the

4   scheme was carried out.  Absent more specific allegations regarding the "scheme," Openwave has

5   failed to plead its existence with the required particularity.

6   **B.    Openwave's Own Allegations Make The Existence Of A Global ARS Scheme Implausible, Thus Supporting Dismissal**

7

8       Apart from the absence of particularity, Openwave's own allegations make the existence of

9   a scheme not *plausible* and thus insufficient in light of the Supreme Court's recent holdings in *Bell*

10  *Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  In

11  *Twombly*, the Court recognized "[t]he need at the pleading stage for allegations plausibly

12  suggesting (not merely consistent with)" a claim for relief.  *Twombly,* 550 U.S. at 557.  Moreover,

13  *Twombly* held that "a plaintiff's obligation to provide the 'grounds' of his 'entitle(ment) to relief'

14  requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

15  action will not do."  *Id.* at 554.  The Court reiterated in *Iqbal* that a plaintiff must plead "factual

16  content that allows the court to draw the reasonable inference that the defendant is liable for the

17  misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  A plaintiff thus must show "more than a sheer

18  possibility that a defendant has acted unlawfully."  *Id.*

19      The existence of the scheme suggested by Openwave runs contrary to common sense and

20  to facts within the FAC itself.  As Openwave admits, the ARS market was stable for twenty-three

21  years before its sudden seizure in the fall of 2007.  FAC ¶ 42.  The SEC never uncovered or even

22  alleged a vast ARS scheme; instead, it required LBI and other investment banks to pay modest

23  penalties and modify their customer and website disclosures.  FAC ¶¶ 43, 47 & Ex. B.  And the

24  market seizure itself was an industry-wide calamity rather than an LBI-specific occurrence.  FAC

25  ¶¶ 47, 78.  The facts that are well-pleaded (*e.g.*, a stable ARS market before a sudden collapse) do

26  not allow the Court to reasonably infer that the Director and Officer Defendants have acted

27  unlawfully in some sort of vague, unarticulated, premeditated scheme to defraud ARS investors.

28  *See, e.g., Rick-Mik Enterprises, Inc. v. Equilon Enterprises, LLC*, 532 F.3d 963, 975 (9th Cir.

1   2008) ("readily conclud[ing]" that price fixing claims fail because complaint lacked "specific

2   details" to plausibly suggest existence of "scheme"); *Lichtenstein v. Reassure Am. Life Ins. Co.*,

3   No. 07-1653, 2009 WL 792080, at \*7–8 (E.D.N.Y. Mar. 23, 2009) ("sweeping fraud allegations"

4   about "a grand fraud scheme . . . fail to meet the heightened pleading standards of Rule 9(b) and

5   the plausibility standard under *Twombly*").

6       **C.      Openwave Fails To Adequately Allege Facts Detailing The Participation Of
7                  Each Of The Director And Officer Defendants In A Fraudulent Scheme**

8           In its June 6th Order, the Court granted the motion to dismiss based on Openwave's failure

9   to comply with Rule 9(b) because "the complaint does not contain allegations particular to each

10  defendant." June 6th Order at 6.  As the Court stated, "[i]n a case with multiple defendants, 'a

11  plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent

12  scheme.'" *Id.* at 6 (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007)).

13          The Court went on to hold that the requirement to specify the actions taken by each

14  defendant "is particularly significant where, as here, plaintiff seeks to hold the D&O defendants

15  liable based upon their alleged 'participation in, knowing consent to, and/or approval of Lehman's

16  unlawful acts.'" *Id.* at 7.  Addressing the requirement of Rule 9(b) in the context of pleading a

17  broad conspiracy, the Court held that Openwave's general allegations "about what 'defendants and

18  Lehman' knew or did [were] insufficient" to show participation.  *Id.*  The Court then cited *Swartz,*

19  476 F.3d at 765, for the proposition that "[c]onclusory allegations that [defendants] 'were active

20  participants in the conspiracy' without any stated factual basis are insufficient as a matter of law."

21  Accordingly, the Court held that Openwave was not free to "merely lump multiple defendants

22  together" but instead was obligated to "inform each defendant separately of the allegations

23  surrounding his alleged participation in the fraud." *Id.* (citing *Swartz*, 476 F.3d at 764–65).

24          Despite the Court's clear statement that Openwave was to provide specific, particularized

25  facts setting forth the actions each Director and Officer Defendant took to further the alleged

26  scheme, Openwave failed to allege *any* additional facts on this topic.  Instead, the FAC continues

27  to rely on conclusory allegations and neutral facts regarding "Lehman's" business structure.  Thus,

28  the FAC, like the original complaint, fails to satisfy Rule 9(b) and should be dismissed.  *See*

1   *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1986) (dismissing claims where "[p]laintiffs

2   have done nothing more than set forth conclusory allegations of . . . conspiracy . . . punctuated by

3   a handful of neutral facts."); *Maganallez v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594, 606 (N.D.

4   Cal. 2007) ("It is not enough to allege that [defendant] was responsible for all the acts of [primary

5   violators].  Plaintiff must identify the specific role of [defendant] in the fraudulent scheme.").

6       As it did in the first complaint, Openwave again hinges its allegations that the Director and

7   Officer Defendants participated in a scheme on a conclusory assertion:

8       [E]ach of the Director Defendants and each of the Officer Defendants participated
        in, authorized, or consented to a plan whereby Lehman's corporate structure was
9       used to perpetrate the misrepresentations and omissions . . . [manipulate the ARS
        market, and] conceal [its manipulation] from Openwave and other like investors.
10

11  FAC ¶ 41; *see also* FAC ¶¶ 23, 53-55, 73, 89, 101, 108.  Openwave's bald assertions of

12  participation in a scheme—without a stated factual basis—cannot support its claims.  As the Court

13  recognized, it is "not required to accept as true 'allegations that are merely conclusory,

14  unwarranted deductions of fact, or unreasonable inferences." June 6th Order at 5.

15      The FAC includes only three factual additions that even arguably relate to the Director and

16  Officer Defendants' participation in ARS-related activities: (i) it provides more information about

17  Lehman's structure (FAC ¶ 24); (ii) it identifies the Officer Defendants as members of Lehman's

18  Risk Committee (FAC ¶¶ 24-25); and (iii) it alleges that the Director and Officer Defendants

19  approved LBI's 2006 SEC Settlement (FAC ¶¶ 43-46).  As set forth below, these facts cannot

20  substitute for pleading the Director and Officer Defendants' specific participation in a fraud.

21      Lehman's Structure:  Openwave has amended its complaint to add new allegations about

22  the structure of "Lehman," which appears to be a reference to LBI.  Openwave alleges that

23  Lehman was composed of three business units, and that one of those units (Fixed Income)

24  managed LBI's ARS business and generated substantial revenues from it.  FAC ¶ 24.  Openwave

25  then alleges that the head of the Fixed Income division reported to Defendant Gregory about the

26  division's business, "including but not limited to about the ARS business and risk associated with

27  it."  FAC ¶ 24.  Tellingly, Openwave does not allege that the Fixed Income head ever advised

28  Defendant Gregory (let alone any of the other Director and Officer Defendants) that (a) any LBI

1   employees were telling prospective clients that the ARS market was "true," "safe" or "highly

2   liquid," (b) the ARS market was not "true," "safe" or "highly liquid," or (c) LBI was artificially

3   manipulating the ARS market and concealing this fact from its clients.  Openwave's corporate

4   structure allegations thus amount to this: the head of LBI's Fixed Income division reported to

5   LBI's President about that division's business, including ARS.  This allegation does not support

6   Defendant Gregory's participation in any fraud and certainly does not comply with the

7   requirement of Rule 9(b).

8          The Risk Committee:  Openwave identifies the composition of a Risk Committee and its

9   responsibility for reviewing Lehman's risk exposures, position concentrations, and risk-exposures,

10  "including Lehman's risk associated with ARS."  FAC ¶ 25.  As with the allegations concerning

11  LBI's structure discussed above, Openwave does *not* allege that the Risk Committee, or any

12  member thereof, had knowledge of, let alone was involved in, any scheme involving ARS.  As

13  such, Openwave has done nothing more than provide information about the existence of a Lehman

14  committee.  This vague allegation fails to comply with Rule 9(b)'s requirement of pleading each

15  defendant's actions taken in furtherance of a fraudulent scheme with particularity and does not

16  even suggest participation in such a scheme by anyone.  *See Hokama v. E.F. Hutton & Co., Inc.*,

17  566 F. Supp. 636, 646 (C.D. Cal. 1983) ("although the complaint specifies the general

18  relationships among the defendants with respect to the overall [enterprise], it contains no specific

19  allegations regarding the roles of the various defendants in the [fraud]").

20         The SEC Settlement:  Finally, Openwave alleges that all of the Director and Officer

21  Defendants participated in the fraudulent scheme because they all approved the May 2006

22  settlement between the SEC and 15 financial institutions, including LBI.  FAC ¶¶ 43-46.  Under

23  the terms of the resulting consent decree, LBI agreed to pay a modest fine of $1.5 million (the

24  other financial institutions likewise paid similar fines) and to make certain supplemental

25  disclosures concerning its ARS practices.  FAC Ex. B.  While Openwave's logic in making this

26  allegation is difficult to grasp, it is clear that this allegation does not satisfy the requirements of

27  Rule 9(b) and does not provide particularized allegations of participation by the Director and

28  Officer Defendants in the alleged fraudulent scheme.  First, approval of a settlement does not

1    reflect participation in or awareness of a fraudulent scheme.  *See Doe v. Aramark Educ. Res., Inc.*,

2    206 F.R.D. 459, 463 (M.D. Tenn. 2002) ("Both [FRCP] Rule 408 and common sense dictate the

3    principle that the fact of settlement does not equal liability."); *see also* FAC Ex. B at 2 (SEC

4    consent decree entered into "without admitting or denying the findings herein").

5            Moreover, the circumstances of this particular settlement do not support a conclusion that

6    anyone approving it had any involvement in, or knowledge of, Plaintiff's hypothesized scheme

7    itself.  As alleged, the SEC settlement related to disclosure issues; it was not related to a secret

8    scheme to manipulate the entire ARS market.  FAC ¶ 43 & Ex. B.  To jump from additional

9    disclosure to a fraudulent scheme requires a vast inferential leap.  Openwave itself acknowledged

10   this when it opposed the first motion to dismiss.  *See* Opp. at 19:16-20 (SEC issues were "far

11   different from the D&Os secret and systematic manipulation of the entire auction process.").

12   Additionally, it is not plausible to infer, as Openwave does, that executives who allegedly

13   approved a $1.5 million civil penalty in a market generating revenues of "tens of billions of

14   dollars," FAC ¶¶ 43, 62, "knew or should have known" of Lehman's material ARS practices, or a

15   scheme related thereto.  FAC ¶¶ 46, 63-64.  Indeed, Openwave's assertion that the Director and

16   Officer Defendants approved LBI's settlement with the SEC fails to demonstrate that these

17   defendants were aware of (much less participated in) any supposed fraudulent scheme.  Rather, it

18   merely shows that the Director and Officer Defendants approved a settlement that corrected what

19   the SEC believed were certain disclosure deficiencies – nothing more.  There is no basis to infer

20   from such a disclosure-based settlement that the Director and Officer Defendants were somehow

21   participating, either pre-settlement or post-settlement, in a scheme to defraud ARS investors.

22           Finally, the new allegations in the FAC do not even allege actual knowledge of, let alone

23   participation in any improper conduct.  Instead, the FAC alleges that the defendants either knew or

24   *should have known* various facts.  *See, e.g.*, FAC ¶ 72(b) (Risk Committee members "knew or

25   should have known" of various issues, including "the developing sub-prime mortgage and credit

26   crises"); FAC ¶ 63 (Director Defendants "knew or should have known" that Lehman was holding

27   ARS to prevent failed auctions).  Allegations that individuals "should have known" about

28   underlying facts – even if true – are insufficient to establish *knowing* participation in a fraudulent

1   scheme.  *Cf. U.S. v. Bader*, 956 F.2d 708, 710 (7th Cir. 1992) ("What the defendant should have

2   known is not knowledge.").[5]

3   **D.      Openwave Cannot Use Information And Belief To Rescue Its Scheme
           Allegations**

4

5       In an apparent effort to escape its pleading burden, Openwave now pleads many of its

6   conclusory allegations on "information and belief."  However, even these allegations cannot

7   satisfy Rule 9(b).  In certain circumstances, "the particularity requirement may be satisfied if the

8   allegations are accompanied by a statement of facts on which the belief is founded, including the

9   source of the information and the reasons for the belief."  *U.S. v. Cathcart*, No. 07-4762, 2008 WL

10  4279717, at *2 (N.D. Cal. Sept. 15, 2008).  However, this standard is not a "license to base claims

11  of fraud on speculation and conclusory allegations."  *Wexner v. First Manhattan Co.*, 902 F.2d

12  169, 173 (2d Cir. 1990); *see also Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir.

13  1989) ("allegations of fraud based on information and belief usually do not satisfy the particularity

14  requirements under Rule 9(b)"); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)

15  ("exception does not nullify Rule 9(b)").  Rather, to satisfy the requirement, "the sources of the

16  information and belief should be sufficiently identified so as to allow each defendant and the

17  Court to review the sources and determine, at the pleading stage, whether an inference of fraud

18  may be fairly drawn from the information contained therein."  *Occupational-Urgent Care Health*

19  *Sys. v. Sutro & Co., Inc.*, 711 F. Supp. 1016, 1020 (E.D. Cal. 1989).

20      Here, Openwave's information cannot justify its belief.  *See* FAC ¶¶ 63-66.  Openwave

21  bases its conclusion that the Director Defendants "participated in, authorized, or consented to the

22  plan" on the alleged fact that they approved the terms of the 2006 SEC Settlement.  This is not a

23  _____

24  [5]  Even if one treated the FAC's "knew or should have known" allegations as pleading actual
    knowledge, Openwave still would fail to establish that that the Director and Officer Defendants

25  *participated* in a fraudulent scheme.  Alleged awareness of corporate wrongdoing is insufficient
    because "[m]ere knowledge of the [company's] activities, without some affirmative act or
    participation is insufficient to state a claim under the participation theory of liability."  *In re Uni-*

26  *Marts, LLC*, 404 B.R. 767, 786–87 (Bankr. D. Del. 2009) (rejecting allegations that defendant (i)
    "is president of and a manager of the [company]," (ii) "knew or should have known" of various

27  false statements, and (iii) "directed and participated with and provided substantial assistance to the
    [company] and others, pursuant to a common plan" as "vague and broad" allegations that "do not

28  possess the requisite heft to state a claim against [defendant] under a participation theory").

1    valid basis to conclude that the Director Defendants knew about, let alone participated in, an

2    alleged scheme.  *See* Section II.C, *supra*.

3         Openwave's "facts" regarding the Officer Defendants' "participation, authorization, or

4    consent" are similarly inadequate.  FAC ¶¶ 64-66.  Openwave again relies principally on the

5    officers' knowledge and approval of the SEC settlement—a fact that itself is pleaded on

6    "information and belief."  FAC ¶ 64.  This basis is defective for the reasons stated above.

7    Openwave also points to the officers' job responsibilities at Lehman, including their participation

8    on the Risk Committee.  *Id.*  Significantly, Openwave fails to connect these corporate positions or

9    committees with any scheme.  Therefore, as the Court already indicated, Openwave's common-

10   law claims should be dismissed.  *See* June 6th Order at 12 (holding negligent misrepresentation and

11   fraud claims cannot be sustained against the Director and Officer Defendants unless Openwave

12   "amends the complaint to allege more specifically each defendants' role in the alleged fraud").

13   **III.    OPENWAVE FAILS TO STATE A CLAIM UNDER § 25504 (Counts 1 and 3)**

14        In its first and third causes of action, Openwave asserts claims against all Director and

15   Officer Defendants for violations of California Corporations Code § 25504.  These claims must be

16   dismissed because Openwave has not alleged either (i) an underlying violation by LBI in

17   connection with the sale of ARS, or (ii) vicarious liability based on the positions held by most of

18   the Director and Officer Defendants.

19        **A.    Openwave Fails To Adequately Plead An Underlying Violation Of § 25501**
             **Because It Fails To Plead A False Statement**
20

21        Liability under "§ 25504 requires a primary violation of § 25501."  *In re Alliance*

22   *Equip. Lease Program*, No. 98-2150, 2002 WL 34451621, at *11 (S.D. Cal. Oct. 15, 2002).

23   Section 25501 provides for liability for violation of § 25401, which prohibits material false

24   statements or omissions in connection with the offer or sale of a security in California.  Cal. Corp.

25   Code §§ 25401, 25501.  To state a claim under § 25401, Openwave must allege with particularity

26   the existence of an "untrue statement of material fact or [omission of] material fact."  Cal. Corp.

27   Code § 25401; *see MTC Elec. Tech. v. Leung*, 876 F. Supp. 1153, 1147 (C.D. Cal. 1995)

28   (dismissing § 25401 claim for failure to plead with particularity).  Openwave fails to plead a false

1   or misleading statement with the requisite particularity.  Section I, *supra*; Whitney & Ford MTD at

2   Section III.A.  Because *both* of Openwave's § 25504 claims are subject to the heightened pleading

3   requirements of Rule 9(b), *see* n.4, *supra*, its claims must be dismissed for failure to plead an

4   underlying violation by LBI.

5      **B.      Openwave Fails To Adequately Plead An Underlying Violation Of § 25501**
              **Because It Fails To Allege Strict Privity With LBI**

6

7            In order to establish liability under § 25504, "[t]he person alleged to be controlled by the

8   defendants must be alleged to be in privity with the plaintiffs."  *In re ZZZZ Best Sec. Litig.*, No.

9   87-3574, 1990 WL 132715, at *17 (C.D. Cal. July 23, 1990).  The Court previously instructed

10  Openwave to "more specifically allege privity with respect to the ARS purchases at issue."  June

11  6th Order at 8.  The FAC, however, alleges even *less* than Openwave's previous conclusory

12  allegations of privity.  In fact, Openwave now concedes that it *does not know* whether it purchased

13  any of the securities at issue from LBI and thus whether there was the requisite privity to support

14  its statutory claims.  FAC ¶ 83.  Unless Openwave can allege that it purchased from LBI – not that

15  it *might have purchased* from LBI – its § 25504 claim must fail.

16           Having admitted that it does not know whether it is in privity with any Lehman entity,

17  Openwave now relies on its "belief" that it purchased ARS directly from LBI.  First, with respect

18  to ARS that had been trading for at least a few months before Openwave's purchase, Openwave

19  bases its belief that it is in privity with LBI on the fact that LBI held a lot of ARS and sold them to

20  numerous purchasers during the auction process, which could have included Openwave.  FAC ¶

21  96(c)-(d).  However, Openwave admits that "[i]n instances in which Openwave purchased the

22  Illiquid ARS more than a few months after Lehman initially offered them for sale," it does not

23  know whether such ARS sales can be traced to LBI.  FAC ¶ 96(e).  Accepting Openwave's factual

24  assertions as true, it has not pleaded a basis for privity.  Instead, "liability under Section 25501

25  attaches only to the actual seller of the securities."  *Apollo Capital Fund v. Roth Capital Partners*,

26  158 Cal. App. 4th 226, 254 (2007).

27           Additionally, Openwave alleges that it purchased a few of the ARS in question shortly

28  after the securities were first offered for sale.  With respect to those ARS, Openwave bases its

belief that it is in privity with LBI on the allegation that LBI was the initial seller of those ARS and that Openwave purchased the ARS before their first auction, allegedly making it "impossible" for Openwave to have purchased from anyone else.  FAC ¶ 96(a)-(b).  Contrary to Openwave's speculative belief, however, LBI could have arranged a sale between someone who had already purchased those ARS from LBI and Openwave prior to the first auction date.  Openwave simply ignores this possibility.  Such speculative pleading is insufficient to establish strict privity, necessitating dismissal of Openwave's § 25504 claims.

C.  **Openwave Fails To Adequately Plead The Requisite § 25504 Status For Many Of The Director And Officer Defendants**

1.  **Defendants Ainsle, Akers, Berlind, Evans, Hernandez, Kaufman, and Macomber Were Not Directors of LBI, the Alleged Primary Violator**

While defendants continue to believe and assert that Section 25504 requires plaintiffs to demonstrate that the Director and Officer Defendants exercised a significant degree of day-to-day operational control over a primary violator, this Court has held that the statute imposes joint and several liability for "every principal executive officer or director of a corporation so liable."  June 6th Order at 10 (quoting Cal. Corp. Code § 25504).  Yet, even under this interpretation of § 25504, Openwave fails to state a claim against nearly all of the Director and Officer Defendants, who were neither directors nor the principal executive officer of the "corporation so liable."

The FAC suggests that Openwave purchased ARS from LBI and suggests that an LBI employee made misrepresentations in connection with the sale.  FAC ¶¶ 16, 56 & n.1, *supra*.  LBI, which had its own board of directors, was the Lehman entity registered as a broker-dealer with the SEC and, as identified by the SEC Order and LBI's website, was the Lehman entity offering and selling ARS.  FAC Ex. B at 2 ("Respondent Lehman Brothers Inc . . . is a broker dealer registered with the Commission"); FAC Ex. C at 1 ("Information on this page has been provided to disclose material auction rate securities practices and procedures of Lehman Brothers Inc.").  Defendants Ainsle, Akers, Berlind, Evans, Hernandez, Kaufman, and Macomber, however, were not directors of LBI at the time of Plaintiff's alleged ARS purchases.[6]  As such, even under a strict statutory

---

[6]  The FAC correctly identifies Defendants Evans (FAC ¶ 11) and Hernandez (FAC ¶ 5) as members of *only* LBHI's Board; it improperly identifies Defendants Ainslie (FAC ¶ 4), Akers (FAC ¶ 7), Berlind (FAC ¶ 8), Kaufman (FAC ¶ 12), and Macomber (FAC ¶ 13) as members of

1   construction that would make any director "of a corporation so liable" jointly and severally liable,

2   these individuals, as *LBHI* directors, cannot be liable under § 25504.

3              **2.        Defendants Goldfarb, Gregory, O'Meara, and Russo Were Not LBI's**
                         **"Principal Executive Officer"**
4

5       Section 25504 provides that only a corporation's "*principal* executive officer" is liable

6   based on his or her status.  Cal. Corp. Code § 25504 (emphasis added).  Accordingly, neither

7   Defendant Goldfarb (as global head of strategic partnerships, principal investing, and risk, or chief

8   administrative officer, FAC ¶ 6); Defendant Gregory (president and COO, FAC ¶ 9); Defendant

9   O'Meara (CFO, FAC ¶ 15); nor Defendant Russo (chief legal officer and executive vice president,

10  FAC ¶ 14) can be liable under § 25504.

11      Section 25504 was modeled, in part, on § 410(b) of the Uniform Securities Act of 1956,[7]

12  which provides that liability extends to "every partner, officer, or director of such a seller."  App.

13  Unif. Sec. Act 1956 § 410.  A comparison of the two sections reveals that California added the

14  modifiers "principal" and "executive" to the word "officer" in adopting § 25504, thus narrowing

15  the scope of the provision.  Webster's Dictionary defines the word "principal" as "first in rank,

16  authority, importance, degree, etc."[8]  The fact that the legislature chose to add wording limiting

17  the scope of § 25504 demonstrates that it intended that status-based liability under § 25504 be

18  limited to the most senior member of a corporation's management—the CEO—rather than to its

19  corporate officers generally.  *See, e.g., Hughes Elecs. Corp. v. Citibank Delaware*, 120 Cal. App.

20  4th 251, 257 (2004) ("Typically, when a Legislature models a statute after a uniform act, but does

21  *both* the LBI and LBHI Boards.  Defendants Ainslie, Akers, Berlind, Kaufman, and Macomber
22  are, in fact, only members of the LHBI Board and were never LBI directors during the relevant
    period.  *See* RJN Ex. A (LBHI SEC filings listing both LBI and LBHI's Directors and Officers
23  during the relevant period).  Accordingly, the Court should disregard Openwave's incorrect
    allegations that these defendants were directors of LBI.  *See Sprewell v. Golden State Warriors*,
24  266 F.3d 979, 988 (9th Cir. 2001) ("The court need not ... accept as true allegations that contradict
    matters properly subject to judicial notice").

25  [7]  *See* Marsh & Volk, *Practice Under the California Securities Laws* (2008) § 14.03[4][c] ("in
26  accordance with Section 410(b) of the Uniform Securities Act"); *see also* Robert H. Volk, Comm.
    of Corps.; "Corporate Securities Law of 1968 (Proposed)," October 20, 1967: § 25504 ("Source: §
27  410(b), Uniform Securities Act; § 15, Securities Act of 1933").

28  [8]  Webster's New World College Dictionary 1141 (4th ed. 2005).

1   not adopt the particular language of the act, courts conclude that the deviation was deliberate and

2   that the policy of the uniform act was rejected.") (*citing* Singer, Sutherland Statutes and Statutory

3   Construction (6th ed. 2004) § 52:5).

4          This narrow interpretation of "principal executive officer" is consistent with use of the

5   phrase in federal securities statutes.  Under the Securities Exchange Act of 1934, an "officer" may

6   be a "president, vice president, secretary, treasury or principal financial officer, [or] comptroller or

7   principal accounting officer;" while an "executive officer" can include an officer "in charge of a

8   principal business unit, division or function … [or] perform[ing] a policy making function."  17

9   C.F.R. 240.3b-2; 3b-7.  By contrast, however, the Exchange Act's use of "principal executive

10  officer" in 15 U.S.C. § 7241(a) (requiring certification of financial statements by "principal

11  executive officer") is uniformly limited to a corporation's highest ranking officer, typically the

12  Chief Executive Officer.  *See, e.g., In re Brocade Sec. Litig.*, 05-02042, 2008 WL 2050847, at *2

13  (N.D. Cal. May 13, 2008) (equating corporation's CEO with its "principal executive officer").

14         The California legislature's limitation on the scope of § 25504 is evidenced not only by the

15  plain language of the statute and the meaning given the term by Congress, but also by precedent.

16  For example, in *In re Gap Stores Securities Litigation*, 457 F. Supp. 1135, 1146 (N.D. Cal. 1978),

17  the court held that Gap's Vice President of Distribution and Executive Committee member was

18  not a "principal executive officer" and thus "does not come within the coverage of [§ 25504]."

19  Therefore, under both the plain language of § 25504 and the precedent construing it, Defendants

20  Goldfarb, Gregory, O'Meara, and Russo do not fall within the ambit of  § 25504's status-based

21  liability.

22  **IV.    OPENWAVE FAILS TO STATE A CLAIM FOR CONCEALMENT (Count 5)**

23         To plead fraudulent concealment, Openwave must allege with particularity (i) concealment

24  or suppression of material fact, (ii) a duty to disclose such fact, (iii) intentional conduct, with

25  intent to induce reliance, (iv) actual, justifiable reliance, and (v) resulting damages.  *Oestreicher v.*

26  *Alienware Corp.*, 544 F. Supp. 2d 964, 974 (N.D. Cal. 2008).  Rule 9(b) governs this claim.  June

27  6th Order at 6.  Openwave fails, at a minimum, to allege specific facts showing that the Director

28

1   and Officer Defendants engaged in intentional conduct or owed a duty to disclose to Openwave.

2   These failures provide separate and independent bases to dismiss Count 5 of the FAC.

### A.  Openwave Fails To Allege The Director And Officer's Conduct With The Requisite Particularity

5   Openwave cannot meet its burden of pleading the intentional conduct of the Director and

6   Officer Defendants with particularity for the simple reason that it has failed to allege *any* conduct

7   on the part of the Director and Officer Defendants.  As set forth in Section II.C, *supra*, Openwave

8   fails to allege any *facts* showing what any of the Director or Officer Defendants did as part of the

9   alleged scheme to manipulate the ARS market.  Without pleading any such conduct, Openwave

10  cannot satisfy its Rule 9(b) obligation to plead intentional conduct with particularity.

### B.  Openwave Fails To Allege A Duty With The Requisite Particularity

12  Openwave also has failed to plead particularized facts showing that any of the Director and

13  Officer Defendants owed a duty to Openwave.  California recognizes a duty to disclose in *only*

14  four situations: (i) where a fiduciary duty exists between the plaintiff and defendant; (ii) where a

15  defendant makes a statement or representation that is affirmatively misleading absent disclosure of

16  other material facts; (iii) where a defendant takes steps to "actively conceal" information from the

17  plaintiff; and (iv) where the defendant is in possession of material information that cannot be

18  obtained by the plaintiff and that the defendant has reason to know cannot be so obtained.  *See*

19  *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997); *Linear Tech. Corp. v. Applied Materials,*

20  *Inc.*, 152 Cal. App. 4th 115, 132 (2007).

21  The Court held that Openwave's first complaint did not state a concealment claim because

22  it failed to allege that "the D&O defendants owed the plaintiff a duty to disclose the allegedly

23  concealed facts."  June 6th Order at 14.  Because Openwave has again failed to allege specific facts

24  demonstrating the existence of a duty, the Court should dismiss Count 5 with prejudice.

### 1.  Openwave Does Not Plead That the Director and Officer Defendants Were in a Fiduciary Relationship with Openwave

27  Openwave does not allege that it was in a fiduciary relationship with the Director and

28  Officer Defendants.  Moreover, there is no reason to believe such a relationship existed.  *See U.S.*

1  *Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 594–95 (1970) (corporate officer owed no

2  fiduciary duty to corporation's customers).

### 2.  Openwave Does Not Plead That the Director and Officer Defendants Made a Misleading Statement to Openwave

5  Openwave does not allege that any Director and Officer Defendant made any misleading

6  statements to Openwave.  Indeed, Openwave does not allege that any of the Director or Officer

7  Defendants made *any* representation to anyone at Openwave at any time.  *See LiMandri*, 52 Cal.

8  App. 4th at 336 (duty exists where "*defendant* makes partial representations but also suppresses

9  some material facts").

### 3.  Openwave Does Not Plead That the Director and Officer Defendants Actively Concealed Information from Openwave

12  Openwave pleads no facts to show that the Director and Officer Defendants took any

13  affirmative acts to actively conceal information from it.  Instead, Openwave relies solely on the

14  conclusory allegation that the Director and Officer Defendants either participated in the

15  concealment of facts from it or allowed others to do so.  FAC ¶ 73 ("Defendants participated in,

16  knowingly consented to, and/or approved of Lehman's concealment of the true cause of the

17  failures.").  Such conclusory assertions are inadequate under Rule 9(b) to establish the existence of

18  a duty based on active concealment.  *See, e.g., Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099,

19  1104 (N.D. Cal. 2007) (dismissing fraudulent concealment claim where allegations of active

20  concealment were "entirely conclusionary").

### 4.  Openwave Fails to Plead Facts Establishing a Duty on the Basis that the Director and Officer Defendants Possessed Material Information That Openwave Could Not Otherwise Obtain

23  Openwave suggests that the Director and Officer Defendants owed it a duty because they

24  possessed material non-public information that Openwave could not have obtained.  FAC ¶

25  109(e)-(f).  However, Openwave's duty theory fails both as a matter of law and pleading.

26  First, a duty based on the possession of material facts by one party and not the other arises

27  only where there is an actual *relationship* between the parties.  *See, e.g.*, *LiMandri,* 52 Cal. App. 4th

28  at 337 ("where material facts are known to one party and not to the other, failure to disclose them is

not actionable fraud unless there is *some relationship* between the parties which gives rise to a duty to

disclose such known facts") (emphasis in original) (citation omitted).  The *LiMandri* court explained

that "[a]s a matter of common sense, such a relationship can come into being only as a result of some

sort of *transaction* between the parties."  *Id.*; *see also Goodman v. Kennedy*, 18 Cal. 3d 335, 347

(1976) ("duty of disclosure . . . may exist when one *party to a transaction* has sole knowledge or

access to material facts and knows that such facts are not known to . . . the other party") (emphasis

added).  The requirement of some sort of relationship between the defendant and the plaintiff is

logical, as a plaintiff otherwise would be able to state a concealment claim against someone with

superior information who did nothing to actively suppress that information and had no contractual

relationship with the plaintiff.  Indeed, California courts have routinely rejected attempts to extend

a duty to disclose to persons related in some manner to a contractual participant.  *See, e.g.*,

*American Land Investments v. County of Los Angeles*, No. B193598, 2008 WL 570602, at *13

(Cal. Ct. App. Mar. 4, 2008) (defendant "who is merely in an agency or employment relationship

with one of the transacting parties" owed no duty to disclose) (unpublished);[9] *In re First Alliance

Mortgage Co.*, No. 01-971, 2003 WL 21530096, at *5 (C.D. Cal. June 16, 2003) (corporation that

allegedly controlled mortgage lender owed no duty to borrowers who received mortgage loans).

Here, while Openwave had a contractual relationship with *LBI*, it had absolutely no relationship

with any of the *Director and Officer Defendants*.  Nor has Openwave alleged that any Director or

Officer Defendant was aware of, or involved in, LBI's relationship with Openwave.  Accordingly,

the Director and Officer Defendants cannot owe Openwave a duty.

Second, Openwave cannot establish a duty on this basis because it has failed to allege specific

facts showing what knowledge any of the Director and Officer Defendants had that was not also

disclosed to the general public, including Openwave.  As an initial matter, Openwave has failed to

plead any facts demonstrating the *Director and Officer Defendants'* (as opposed to LBI's or LBHI's)

---

[9]  Because *American Land Investments* is an unpublished decision, the Director and Officer Defendants do not cite it as binding precedent, but instead bring it to the Court's attention so that the Court may consider its reasoning in addressing the issue.  *Cf. Weaver v. City & County of San Francisco*, No. 03-01589, 2004 WL 422626, at *7 (N.D. Cal. Mar. 4, 2004) (Illston, J.) ("[A]s an unpublished decision, [the case] is not binding on this Court and can only be persuasive authority at most.").

actual knowledge.  Indeed, Openwave repeatedly alleges that the Director and Officer Defendants

knew or "*should have known*" many of the facts that it alleges were not disclosed.  *See, e.g.*, FAC ¶¶ 1,

40, 46, 50, 63, 64, 71, 72(b), 72(c) (emphasis added).  Absent an allegation that the Director and

Officer Defendants actually possessed any allegedly material information, they cannot owe Openwave

a duty to disclose.  *See LiMandri*, 52 Cal. App. 4th at 337 (no duty unless "material facts are *known* to

one party") (emphasis added); *Mourning v. SmithKline Beecham Corp.*, No. 08-04929, 2009 WL

733873, at *2 (N.D. Cal. Mar. 17, 2009) (no duty where plaintiff fails to allege "the extent of his lack

of knowledge … or that defendants possessed exclusive knowledge of that information").

Moreover, it is well established that a plaintiff cannot establish a duty to disclose when the

information in question is publicly available.  *See Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank,*

*Nat. Ass'n,* 731 F.2d 112, 123 (2d Cir. 1984) (affirming dismissal of common law concealment claim

where "[a]ll of the information plaintiffs now claim was concealed from them was either a matter of

public record, was not pursued by plaintiffs, or was disclosed, at least in part"); *Goodman*, 18 Cal. 3d

at 347 (dismissing concealment claim where "[i]nsufficient facts are alleged to establish that . . . the

omitted matters . . . were inaccessible to plaintiffs").  Here, the information about LBI's material

ARS procedures, as well as every facet of the alleged market manipulation "scheme" that

Openwave suggests was concealed by the Director and Officer Defendants was disclosed:

| Alleged Concealed Fact | SEC Order[10] | Lehman Disclosure[11] |
| --- | --- | --- |
| Lehman "was regularly holding" or "repurchasing" ARS. (FAC ¶ 39) | "Respondents intervened in auctions by bidding for their proprietary accounts." (§ C.2.b.) | Lehman Brothers may "submit orders in auctions for its own account … and routinely does so in the auction rate securities market at its sole discretion. (p. 1) |
| Lehman had "inside knowledge" of the demand in | "Most auctions had an internal deadline that broker-dealers | "Lehman Brothers would have knowledge of some or |

---

[10]  The SEC Order and the SEC's findings were also widely reported in the press.  *See, e.g.*, Ex. F to RJN ISO MTD Original Complaint, Docket No. 23 (RJN granted in June 6th Order).

[11]  These disclosures were posted on Lehman's publicly accessible website at www.lehman.com/ fi/ars.htm.  *See* FAC Ex. C.  The SEC Order mandated that identical disclosures be sent to "all of [LBI's] customers who hold auction rate securities ('Holders') and issuers of such securities ('Issuers')" as well as "all customers who are first time purchasers, and all broker-dealers who are purchasers."  FAC Ex. B at 10.

| Alleged Concealed Fact | SEC Order[10] | Lehman Disclosure[11] |
|---|---|---|
| any particular auction. (FAC ¶ 39) | set for investors to submit bids to the broker-dealers and a formal submission deadline set by the offering documents for broker-dealers to submit bids to the auction agent." (§ C.2.d.) | all the other orders placed … [it] could discern the clearing rate before the orders are submitted to the auction agent." (p. 2) |
| Lehman would use this knowledge to "determine how much ARS" to offer. (FAC ¶ 39) | "Most auctions had an internal deadline … Respondents themselves submitted or revised bids after these deadlines." (§ C.2.d.) | "Lehman Brothers would have knowledge of some or all the other orders placed … and thus could determine the rate and size of its order." (p. 2) |
| Lehman would bid to prevent "failed auctions." (FAC ¶ 39) | "Respondents bid to prevent auctions from failing." (§ C.2.b.1.) | "Lehman Brothers may place [bids] to prevent an 'auction failure.'" (p. 2) |
| Lehman would bid to prevent "unstable price fluctuations." (FAC ¶ 39) | "Respondents submitted bids or asked investors to change their bids so that auctions cleared at rates [they] considered to be appropriate 'market' rates." (§ C.2.b.3.) | "Lehman Brothers may place [bids] to prevent an auction from clearing at a rate that Lehman Brothers believes does not reflect the market for the securities." (p. 2) |

LBI's website disclosures further undercut Openwave's suggestion that LBI concealed the risk of failed auctions in the event that LBI stopped supporting the ARS auctions:

> Because of these practices, the fact that an auction clears successfully does not mean that an investment in the securities involves no significant liquidity or credit risk.  Lehman Brothers is not obligated to continue to place such bids, or encourage other bidders to do so, in any particular auction to prevent an auction failure or an auction from clearing at a rate Lehman Brothers believes does not reflect the market for the securities.  Investors should not assume that Lehman Brothers will place bids or encourage others to do so or that auction failures will not occur.

FAC Ex C at 2-3.  LBI also provided examples of specific circumstances under which ARS auction failures were possible.  These are precisely the scenarios that came to pass in 2007-08:

> Existing holders will be able to sell all of the securities that are the subject of their submitted sell orders only if there are bidders willing to purchase all those securities in the auction.  If sufficient clearing bids have not been made, existing holders that have submitted sell orders will not be able to sell in the auction all, and may not be able to sell any, of the securities subject to such submitted sell orders.  As discussed above (see "Bidding by Broker-Dealer" above) Lehman Brothers may submit a bid in an auction to avoid an auction failure, but it is not obligated to do so.  There may not always be enough bidders to prevent an auction failure in the absence of Lehman Brothers bidding in the auction of its own account or encouraging others to bid.  *Therefore, auction failures are possible, especially if the issuer's credit (and/or the credit of any guarantor or insurer)*

1    *were to deteriorate, if a market disruption were to occur of if, for any reason,*
     *Lehman Brothers were unable or unwilling to bid.*

2

3    FAC Ex. C at 4-5 (emphasis added).  Thus, all the relevant aspects of the Director and Officer

4    Defendants' alleged concealed "scheme" were publicly disclosed by LBI itself, and Openwave has

5    not pleaded a duty to disclose based on its lack of access to material information.

6    **V.      THE NON-CALIFORNIA DEFENDANTS SHOULD BE DISMISSED FOR LACK**
     **         OF PERSONAL JURISDICTION**

7

8             Non-resident defendants are subject to personal jurisdiction only if they have sufficient

9    minimum contacts with the forum state to satisfy due process considerations.  June 6th Order at 15.

10   Openwave has the burden to make a *prima facie* showing of jurisdiction.  *Boschetto v. Hansing*,

11   539 F.3d 1011, 1015 (9th Cir. 2008).  This showing must be made through specific factual

12   allegations rather than conclusions.  *Fujitsu-Icl Sys. Inc. v. Efmark Serv. Co.*, No. 00-0777, 2000

13   WL 1409760, at *2 (S.D. Cal. June 29, 2000).[12]

14            To support the exercise of "specific jurisdiction" over the Non-California Defendants,

15   Openwave must allege specific facts that each of the Non-California Defendants "purposefully

16   direct[ed] his [or her] activities or consummate[d] some transaction with the forum or resident

17   thereof; or perform[ed] some act by which he [or she] purposefully avails himself [or herself] of

18   the privilege of conducting activities in the forum, thereby invoking the benefits and protections of

19   its laws."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); June 6th

20   Order at 15.[13]  In tort cases, purposeful availment is generally determined based on an "effects"

21   test, which focuses on the forum in which the defendant's actions were felt, whether or not the

22   actions themselves occurred within the forum.  As the Ninth Circuit has held, "the 'effects' test

23   requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at

24   the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum

25   state."  *Id*. at 803.

26   _____

     [12]  Because the FAC does not contain specific allegations supporting jurisdiction, the Non-
     California Defendants need not submit declarations to dispute or deny any of these allegations.

27

     [13]  Openwave also would have to show that its claims arise out of the Non-California Defendants'

28   forum-related activities, and that the exercise of jurisdiction is reasonable.  *Id*.

1    The Court held that Openwave could state a *prima facie* case "*assuming*" that it could

2    "amend the complaint to more specifically allege the role that each defendant played in the alleged

3    fraudulent scheme." June 6th Order at 16.  That assumption did not come to fruition, as the FAC

4    fails to allege, let alone "specifically allege," what each Non-California Defendant did in

5    connection with any alleged scheme involving ARS.  Section II.C, *supra*.  Indeed, Openwave does

6    not allege any intentional act taken by any of the Non-California Defendants that was expressly

7    aimed at California.  In fact, the FAC does not even allege *any* intentional act by any of the Non-

8    California Defendants.  Accordingly, in addition to the failings set forth in the Non-California

9    Defendants' first motion to dismiss for lack of personal jurisdiction, which are hereby

10   incorporated by reference, Openwave has again failed to make a *prima facie* showing of personal

11   jurisdiction.

12                                   **<u>CONCLUSION</u>**

13          The Non-California Defendants respectfully request that they be dismissed from this action

14   for lack of personal jurisdiction, and the Director and Officer Defendants respectfully request that

15   the Complaint be dismissed with prejudice for failure to state a claim.

16   Dated:  August 14, 2009                    SIMPSON THACHER & BARTLETT LLP

17

18                                              By _____/s/_____

19                                                  James G. Kreissman, 206740
                                                    jkreissman@stblaw.com

20                                              Attorneys for the Director and Officer Defendants

21                                              Patricia M. Hynes (*pro hac vice*)
                                                Todd S. Fishman (*pro hac vice*)
22                                              Allen & Overy LLP
                                                1221 Avenue of the Americas
23                                              New York, New York 10020

24                                              Attorneys for Defendant Richard S. Fuld, Jr.

25

26

27

28