1   Philip E. Cook (State Bar No. 149067)
        pcook@jonesday.com
2   John K. Ly (State Bar No. 247477)
        jly@jonesday.com
3   JONES DAY
    555 South Flower Street
4   Fiftieth Floor
    Los Angeles, CA  90071-2300
5   Telephone:     (213) 489-3939
    Facsimile:     (213) 243-2539
6
7   Attorneys for Defendants
    TIM FORD AND MELISSA CONROY WHITNEY
8
9                    UNITED STATES DISTRICT COURT
10                  NORTHERN DISTRICT OF CALIFORNIA
11                    SAN FRANCISCO DIVISION
12

| | |
|---|---|
| **OPENWAVE SYSTEMS INC.,** | Case No. Civil No. 08-05683 SI |
| **Plaintiff,** | **DEFENDANTS FORD AND WHITNEY'S REPLY TO OPENWAVE'S OPPOSITION TO MOTION TO COMPEL ARBITRATION** |
| v. | |
| **RICHARD S. FULD, JR. et al.,** | |
| **Defendants.** | Date:        October 30, 2009<br>Time:        9:00 a.m.<br>Judge:       Hon. Susan Illston<br>Courtroom:   10, 19th Floor |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT ............................................................................................................. 2

    A.    All Defendants Have Standing to Compel Arbitration ........................................... 2

        1.    The LBHI D&O Defendants Are Entitled to Enforce the Arbitration Clause under Two Independent Estoppel Theories..................................... 2

        2.    The LBHI D&O Defendants Are Entitled To Enforce The Arbitration Clause As Alleged Agents of the Lehman Brothers D&O Defendants......................................................................................... 6

    B.    The Arbitration Clause Covers All of Openwave's Claims................................... 7

    C.    Defendants Have Not Waived Their Right to Arbitration .................................... 10

        1.    Defendants Did Not Act Inconsistently With Their Right to Arbitrate ....................................................................................... 11

        2.    Openwave Has Not Suffered Prejudice................................................ 14

III.  CONCLUSION ......................................................................................................... 15

1

# TABLE OF AUTHORITIES

2

Page

3

**CASES**

4

*Amato v. KPMG LLP,*
    433 F. Supp. 2d 460 (M.D. Pa. 2006), *vacated in part on other grounds*, No. 06CV39,

5

    2006 WL 2376245 (M.D. Pa. Aug. 14, 2006) .......................................................... 7

6

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.,*
    622 F. Supp. 2d 825 (N.D. Cal. 2007) ............................................................. 2, 5, 6

7

8

*Britton v. Co-op Banking Group,*
    916 F.2d 1405 (9th Cir. 1990)................................................................................. 14

9

*Brown v. General Steel Domestic Sales, LLC,*
    2008 WL 2128057, at *8 (C.D. Cal. May 19, 2008) ............................................... 5

10

11

*CD Partners, LLC v. Grizzle,*
    424 F.3d 795 (8th Cir. 2005)..................................................................................... 3

12

13

*Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.,*
    271 F.3d 403 (2d Cir. 2001)...................................................................................... 4

14

*Doctors' Company v. Superior Court (Valencia),*
    49 Cal.3d 39 (1989) .................................................................................................. 9

15

16

*Downer v. Siegel,*
    489 F.3d 623 (5th Cir. 2007).................................................................................... 8

17

18

*Galtney v. KPMG LLP,*
    No. Civ. H05583, 2005 WL 1214613 (S.D. Tex. May 19, 2005)........................ 3, 6

19

*General Guaranty Ins. Co, v. New Orleans Gen. Agency, Inc.,*
    427 F.2d 924 (5th Cir. 1970).................................................................................. 12

20

21

*Grumhaus v. Comerica Secs., Inc.,*
    223 F.3d 648 (7th Cir. 2000).................................................................................. 15

22

23

*Hansen v. KPMG LLP,*
    No. CV-04-10525-GLT, 2005 WL 6051705 (C.D. Cal. Mar. 29, 2005)................. 3

24

*Hawkins v. KPMG LLP,*
    423 F. Supp. 2d 1038 (N.D. Cal. 2006) ......................................................... 2, 5, 6

25

26

*Hoffman v. Citibank (South Dakota), N.A.,*
    546 F.3d 1078 (9th Cir. 2008)................................................................................ 10

27

*Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp.,*
    981 F.2d 752 (5th Cir. 1993)..................................................................................... 2

28

*In re Mercury Constr. Corp.*,
    656 F.2d 933 (4th Cir. 1981) ................................................................................. 13

*J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*,
    863 F.2d 315 (4th Cir. 1988) .................................................................................. 4

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004) ................................................................................... 4

*Ketchum v. Almahurst Bloodstock IV*,
    685 F. Supp. 786 (D. Kan. 1988) ........................................................................... 4

*Knorr Brake Corp. v. Harbil*,
    556 F. Supp. 489 (N.D. Ill. 1983) .......................................................................... 4

*Lake Communications, Inc. v. ICC Corp.*,
    738 F.2d 1473 (9th Cir. 1984) ......................................................................... 13, 14

*Letizia v. Prudential Bache Sec. Inc.*,
    802 F.2d 1185 (9th Cir. 1986) ............................................................................ 6, 7

*Mantetti-Farrow, Inc. v. Gucci America, Inc.*,
    858 F.2d 509 (9th Cir. 1988) .................................................................................. 9

*McEntee v. Ormes Capital Markets, Inc.*,
    95 Civ. 3451(HB) 1995 U.S. Dist. LEXIS 18114 (S.D.N.Y. Dec. 5, 1995) ........... 9

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
    708 F.2d 1458 (9th Cir. 1983) ............................................................................. 7, 8

*Medtronic AVE Inc. v. Cordis Corp.*,
    100 Fed. Appx. 865 (3rd Cir. 2004) ....................................................................... 8

*Metalclad Corp. v. Ventana Envtl. Org.*,
    109 Cal. App. 4th 1705 (Cal. Ct. App. 2003) ................................................. 3, 6, 9

*Microstrategy, Inc. v. Lauricia*,
    268 F.3d 244 (4th Cir. 2001) ........................................................................... 12, 14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ........................................................................................ 10, 13

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ............................................................................................. 9, 10

*MS Dealer Serv. Corp. v. Franklin*,
    177 F.3d 942 (11th Cir. 1999) ................................................................................ 2

*Nielsen v. Greenwood*,
    No. 91C6537 1993 U.S. Dist. LEXIS 12004 (N.D. Ill. Aug. 27, 1993) .................. 9

*Prograph Int'l Inc. v. Barhydt*,
  928 F. Supp. 983 (N.D. Cal. 1996) ........................................................................ 4

*Rosen v. Waldman*,
  93 Civ. 225 (PKL) 1993 U.S. Dist. LEXIS 14076 (S.D.N.Y. Oct. 7, 1993) ............ 9

*Rush v. Oppenheimer & Co.,*
  779 F.2d 885 (2d Cir.1985)................................................................................... 13

*Schacht v. Hartford Fire Ins. Co.,*
  No. 91 C 2228, 1991 WL 247644 (N.D. Ill. Nov. 6, 1991) ...................................... 4

*Simula, Inc. v. Autoliv, Inc.,*
  175 F.3d 716 (9th Cir. 1999)............................................................................ 2, 10

*Sovak, M.D. v. Chugai Pharm. Co.,*
  280 F.3d 1266 (9th Cir. 2002)........................................................................ 10, 14

*Sparling v. Hoffman Constr. Co., Inc.,*
  864 F.2d 635 (9th Cir. 1988).................................................................................. 2

*St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Prods. Co.,*
  969 F.2d 585 (7th Cir. 1992).................................................................................. 15

*Sunkist Soft Drinks v. Sunkist Growers,*
  10 F.3d 753 (11th Cir. 1993)............................................................................. 3, 6

*Tenneco Resins, Inc. v. Davy Int'l,*
  770 F.2d 416 (5th Cir. 1985)................................................................................. 13

*Tepper Realty Co. v. Mosaic Tile Co.,*
  259 F.Supp. 688 (S.D.N.Y. 1966)........................................................................... 9

*Third Millennium Technologies, Inc. v. Bentley Sys., Inc.,*
  No. 03-1145-JTM, 2003 WL 22003097 (D. Kan. Aug. 21, 2003) ...................... 6, 9

*Thomassen & Drijver-Verblifa N.V. v. Sardee Indus., Inc.,*
  No. 88C4271 1988 WL 102258 (N.D. Ill. Sept. 28, 1988)....................................... 8

*Van Ness Townhouses v. Mar Indus. Corp.,*
  862 F.2d 754 (9th Cir. 1988)................................................................................. 15

*Williams v. Cigna Fin. Advisors, Inc.,*
  56 F.3d 656 (5th Cir. 1995).......................................................................... 13, 14

**STATUTES**

9 U.S.C. § 3 ................................................................................................................. 2

9 U.S.C. § 4 ............................................................................................................... 10

1    **I.     INTRODUCTION**

2           In its Opposition to Defendants'[1] Motion to Compel Arbitration ("Opposition"), Plaintiff

3    Openwave Systems, Inc. ("Openwave") contends that:  (i) the "LBHI D&O Defendants" do not

4    have standing to compel arbitration of Openwave's claims; (ii) Openwave's fraud claims against

5    all the D&O Defendants are outside the scope of the arbitration clause; and (iii) all Defendants

6    waived their rights to arbitration.  Openwave's arguments must fail.  *First*, the LBHI D&O

7    Defendants have standing to compel arbitration because they are entitled to enforce the arbitration

8    clause under both estoppel and agency theories.  *Second*, Openwave's fraud claims are covered

9    by the arbitration clause because they clearly "touch matters" arising from and concerning the

10   agreements between Openwave and Lehman Brothers Inc. ("Lehman Brothers"), as well as the

11   business of Lehman Brothers.[2]  *Finally*, Openwave cannot show that Defendants have acted

12   inconsistently with their rights to arbitrate (or that Openwave will be prejudiced if forced into

13   arbitration) to justify its argument that Defendants have waived their rights to arbitration.

14   Because of the strong public policy towards enforcing broad arbitration provisions and the heavy

15   burden required for a finding of waiver, this Court must compel arbitration of *all* of Openwave's

16   claims against *all* Defendants and should dismiss this action.

17   **II.    ARGUMENT**

18          **A.     All Defendants Have Standing to Compel Arbitration.**

19          Openwave asserts in its Opposition that the LBHI D&O Defendants do not have standing

20   to compel arbitration because they are not parties to the Investment Advisory Agreement

21   ("Investment Agreement").[3]  This argument lacks merit.  As this Court has held, "a nonsignatory

22          [1] The D&O Defendants are Richard S. Fuld, Jr., Michael L. Ainslie, Roland A.
     Hernandez, David Goldfarb, John F. Akers, Roger S. Berlind, Joseph M. Gregory, Thomas H.
23   Cruikshank, Marsha Johnson Evans, Henry Kaufman, John D. Macomber, Thomas A. Russo and
     Christopher M. O'Meara.  During the relevant period alleged in the FAC, six of the D&O
24   Defendants were current or former directors and/or officers of Lehman Brothers Inc. (the
     "Lehman Brothers D&O Defendants") and all were directors and/or officers at Lehman Brothers
25   Holdings Inc. ("LBHI D&O Defendants," collectively the "D&O Defendants").  The remaining
     two defendants, Whitney and Ford, are former Lehman Brothers' portfolio managers (the "Broker
26   Employee Defendants").

27          [2] Lehman Brothers was a broker-dealer that, inter alia, provided investment advice and
     brokerage services for institutional clients.

28          [3] Because Openwave limits its standing arguments to the LBHI D&O Defendants, it
     effectively concedes that the Broker Employee and Lehman Brothers D&O Defendants have

1    [can] compel a signatory to arbitrate," and, moreover, arbitration is even "more likely to be

2    attained when the party resisting arbitration is a signatory," as Openwave is. *Amisil Holdings Ltd.*

3    *v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 830-31 (N.D. Cal. 2007).  Based on Openwave's

4    own allegations, the LBHI D&O Defendants have standing to compel arbitration under either

5    estoppel or agency theories.

6              1.    The LBHI D&O Defendants Are Entitled to Enforce the Arbitration Clause
                    under Two Independent Estoppel Theories.
7
                    a.    The LBHI D&O Defendants have standing because Openwave's
8                        claims against them are intertwined with the claims against the
                        Lehman Brothers D&O Defendants.
9

10         "'[W]here a lawsuit against non-signatories is inherently bound up with claims against a

11   signatory, the court should compel arbitration in order to avoid denying the signatory the benefit

12   of the arbitration clause, and in order to avoid duplicative litigation which undermines the

13   efficiency of arbitration.'"  *Id.* at 840 (quoting *Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038,

14   1050 (N.D. Cal. 2006); *see also MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.

15   1999) (application of equitable estoppel warranted when signatory to contract containing

16   arbitration clause raises allegations of substantially interdependent and concerted misconduct by

17   both non-signatories and one or more of other signatories to contract); *CD Partners, LLC v.*

18   *Grizzle*, 424 F.3d 795, 799 (8th Cir. 2005) (nonsignatory can force signatory into arbitration

19   "when the relationship of the persons, wrongs and issues involved is a close one").  Equitable

20   estoppel prohibits a party from signing an agreement containing an arbitration clause and then

21   attempting to avoid arbitration by suing nonsignatory defendants for claims that are "'based on

22   the same facts and are inherently inseparable' from arbitration claims against signatory

23

24   _____
     (continued…)

25   standing to compel arbitration.  Openwave's claim that the LBHI D&O Defendants are
     "sandbagging" by discussing their standing on reply, Opp. at 7-8, should be disregarded.  The
26   Broker Employee Defendants moved to compel arbitration of *all* of Openwave's claims against
     *all* defendants, and the D&O Defendants, including the LBHI Defendants, joined in that motion.
27   Openwave's cases stand for nothing more than the principle that parties cannot allege *facts or*
     *legal theories* on reply that were not made in the original motion.  None of these cases prohibit a
28   party from using its reply to address arguments made in an opposition brief.

                                                    REPLY TO OPENWAVE'S OPPOSITION TO MOTION
TO COMPEL ARBITRATION; Civil No. 08-05683 SI

1   defendants." *Metalclad Corp. v. Ventana Envtl. Org.*, 109 Cal. App. 4th 1705, 1713 (Cal. Ct.

2   App. 2003) (quoting *Sunkist Soft Drinks v. Sunkist Growers*, 10 F.3d 753, 757 (11th Cir. 1993));

3   *see also Galtney v. KPMG LLP*, No. Civ. H05583, 2005 WL 1214613, at *5 (S.D. Tex. May 19,

4   2005); *Hansen v. KPMG LLP*, No. CV-04-10525-GLT, 2005 WL 6051705, at *2-3 (C.D. Cal.

5   Mar. 29, 2005).

6          Openwave does not dispute that the Lehman Brothers D&O Defendants can invoke the

7   Investment Agreement's arbitration clause.  Investment Agreement § 13.  Openwave's claims

8   against the Lehman Brothers D&O Defendants are substantially interdependent with—and based

9   on the same set of facts as—its claims against the LBHI D&O Defendants.  In the very first

10  paragraph of its complaint, Openwave conflates Lehman Brothers and LBHI (FAC ¶ 1), and

11  consistently refers to both as "Lehman" in its later allegations.  Even a cursory read of the FAC

12  reveals that Openwave has made no effort to distinguish the conduct of the LBHI D&O

13  Defendants from the conduct of the Lehman Brothers D&O Defendants and that the allegations

14  against both are based upon precisely the same set of operative facts.  Openwave also alleges that

15  "each defendant was the agent of each of the remaining defendants," *id.* ¶ 26; that each defendant

16  aided and abetted the "acts, plans, schemes, and transactions" of the others, *id.* ¶ 27; and that each

17  defendant conspired with each of the others and "shared a common plan or design in the

18  perpetration of the torts alleged," *id.* ¶ 28.  Indeed, until its opposition to the motion to compel

19  arbitration, Openwave never attempted to distinguish Lehman Brothers from LBHI, stating that

20  one is, for all practical purposes, the other.  *See, e.g.*, Opp. to MTD at 11:17-21 ("LBHI's

21  directors cannot escape primary liability by arguing that its wholly owned subsidiary, through

22  which LBHI conducted business as simply 'Lehman Brothers,' was the seller of the ARS, not

23  LBHI.  If LBHI, while conducting business as 'Lehman Brothers' directly sold ARS it owned to

24  Openwave, then LBHI was in privity with Openwave.  The Legislature did not intend to have the

25  California securities laws eviscerated by corporate shell games.").  It is equitably estopped from

26  doing so now.

27         Similarly, when claims against a parent company (here, LBHI) and its subsidiary (here,

28  Lehman Brothers) are "based on the same facts and are inherently inseparable, a court may refer

1  claims against the parent to arbitration even though the parent is not formally a party to the

2  arbitration agreement." *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21

3  (4th Cir. 1988); *see also Ketchum v. Almahurst Bloodstock IV*, 685 F. Supp. 786, 793-94 (D. Kan.

4  1988) (allowing non-signatory to arbitrate securities claims that (i) were identical to claims

5  against signatory affiliate, (ii) arose out of same transaction as claims made against affiliate, and

6  (iii) fell within arbitration clause); *Schacht v. Hartford Fire Ins. Co.*, No. 91 C 2228, 1991 WL

7  247644, at *3 (N.D. Ill. Nov. 6, 1991) (articulating *Ketchum* test and enforcing arbitration clause

8  at request of parent company whose subsidiaries signed arbitration agreement with plaintiff);

9  *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 991 (N.D. Cal. 1996) (nonsignatory corporation

10  may compel arbitration under arbitration clause signed by its subsidiary, when the allegations

11  against the nonsignatory corporation do not differ substantially from those against the subsidiary);

12  *Knorr Brake Corp. v. Harbil*, 556 F. Supp. 489, 493 (N.D. Ill. 1983) (holding that arbitration of

13  disputes against non-signatory parent company was appropriate); *JLM Indus., Inc. v. Stolt-Nielsen*

14  *SA*, 387 F.3d 163, 177 (2d Cir. 2004) ("where the merits of an issue between the parties [is]

15  bound up with a contract binding one party and containing an arbitration clause, the 'tight

16  relatedness of the parties, contracts and controversies' [is] sufficient to estop the bound party

17  from avoiding arbitration") (quoting *Choctaw Generation Ltd. P'ship v. Am. Home Assurance*

18  *Co.*, 271 F.3d 403, 406 (2d Cir. 2001)).

19       Finally, if the Lehman Brothers D&O Defendants were permitted to arbitrate their claims,

20  while the LBHI D&O Defendants were forced to litigate essentially identical claims, there is a

21  substantial risk that inconsistent results would obtain.  Courts have compelled arbitration to avoid

22  such inconsistencies.  *See, e.g., Brown v. General Steel Domestic Sales, LLC*, No. CV 08-00779

23  MMM (SHx), 2008 WL 2128057, at *8 (C.D. Cal. May 19, 2008) (arbitration must be compelled

24  to preserve benefit of arbitration clause for the signatory and avoid duplicative litigation that

25  undermines the efficiency of arbitration).

26       b.    Openwave's Claims Against the LBHI D&O Defendants Presume
               the Existence of the Investment Agreement.

27

28       Based on separate estoppel principles, a non-signatory can compel arbitration against a

1   signatory to an agreement containing an arbitration clause when the signatory relies on that

2   agreement (either by referring to its terms or by presuming its existence) in asserting its claims

3   against the non-signatory. *See Amisil*, 622 F. Supp. 2d at 840 (citing *Hawkins*, 423 F. Supp. 2d at

4   1050). Openwave's Investment Policy, which Openwave attached to the FAC, provides that

5   Openwave may retain investment advisors. The resulting Investment Agreement with Lehman

6   Brothers sets forth the contours of the investment advisory services that Lehman Brothers agreed

7   to provide to Openwave. It explained that Lehman Brothers would exercise sole discretion with

8   respect to Openwave's investments, subject to Openwave's investment guidelines.

9         The gravamen of Openwave's complaint against the D&O Defendants—including the

10   LBHI D&O Defendants—is that they breached their duties[4] to Openwave by misrepresenting, or

11   allowing others to misrepresent, the compliance of ARS with Openwave's investment guidelines.

12   *See, e.g.*, FAC ¶ 1 (alleging that all defendants "participated in, knowingly consented to or

13   approved Lehman's misstatements that ARS were low-risk, highly liquid investments that were

14   suitable under Openwave's Investment Policy"); *id*. ¶ 27 ("Defendants, and each of them, are

15   individually sued as participants and as aiders and abettors in the acts, plans, schemes, and

16   transactions, to induce Openwave to purchase and hold the ARS that are the subject of this

17   complaint."). These allegations presume the Investment Agreement's existence because, without

18   it, Openwave would not have received any investment advice or services from Lehman Brothers,

19   nor invested in the ARS at issue, in the first place.[5]

20          [4] The legal truism that individuals, regardless of their status, each have a duty not to
21   commit tortious acts (*see* Opp. at 12) is irrelevant to the analysis. Even if it were relevant, it does
     not help Openwave avoid the arbitration clause because it covers "all claims or controversies . . .
22   concerning or arising from the construction, performance or breach . . . of any duty arising from
     the business of Lehman Brothers *or otherwise*." Investment Agreement § 13 (emphasis added).
23   This "or otherwise" language expands the scope of claims covered by the arbitration clause
     beyond those relating to duties "arising from the business of Lehman Brothers" to duties
24   allegedly owed by the D&O Defendants—as individuals—to Openwave.

25          [5] Although Openwave makes much of the fact that it has not asserted breach of contract
     claims (*see* Opp. at 3), Openwave cannot avoid enforcement of the arbitration clause because it
26   couched its allegations in terms of tort rather than contract. "A party may not avoid broad
     language in an arbitration clause by attempting to cast its complaint in tort rather than contract."
27   *Metalclad*, 109 Cal. App. 4th at 1717-18 (reversing denial of motion to compel arbitration in
     breach of contract and fraud case) (citing *Sunkist*, 10 F.3d at 758); *Amisil*, 622 F. Supp. 2d at 838
28   (where, as here, arbitration clause broadly covered "any controversy or claim arising out of or
     relating to" to agreement, court rejected signatory's argument that non-signatories' alleged
     "independent, noncontractual acts of fraud" were not covered by arbitration clause). Nor does

1    Openwave cannot have it both ways.  "'[I]t cannot on the one hand, seek to hold the non-

2   signatory [LBHI D&O Defendants] liable pursuant to duties imposed by the [Investment

3   Agreement], which contains an arbitration provision, but on the other hand, deny the arbitration

4   provision's applicability because the [LBHI D&O Defendants are] non-signator[ies].'"  *Amisil*,

5   622 F. Supp. 2d at 840 (quoting *Hawkins*, 423 F. Supp. 2d at 1050).  Equitable estoppel requires

6   that, because Openwave is asserting claims against the LBHI D&O Defendants that necessarily

7   depend upon the Investment Agreement's existence and terms, the LBHI D&O Defendants be

8   permitted to avail themselves of the protections of that same agreement.

9               2.      The LBHI D&O Defendants Are Entitled To Enforce The Arbitration
                        Clause As Alleged Agents of the Lehman Brothers D&O Defendants.
10

11   Alternatively, the agents of a signatory to an arbitration agreement can compel the other

12   signatory to arbitrate "so long as (1) the wrongful acts of the agents for which they are sued relate

13   to their behavior as agents or in their capacities as agents … and (2) the claims against the agents

14   arise out of or relate to the contract containing the arbitration clause."  *Amisil*, 622 F. Supp. 2d at

15   832; *Galtney*, 2005 WL 1214613, at *5 (enforcing arbitration clause in part because non-

16   signatories, as affiliates, were deemed agents of defendant signatory); *Letizia v. Prudential Bache

17   Sec. Inc.*, 802 F.2d 1185, 1188 (9th Cir. 1986) (affirming motion to compel arbitration).

18   As explained above, the claims against the LBHI D&O Defendants relate to the

19   Investment Agreement.  Moreover, while the Defendants do not understand how, Openwave

20   alleges that the LBHI D&O Defendants were the agents of the Lehman Brothers D&O

21   Defendants (who were themselves agents of Lehman Brothers, the signatory to the Investment

22   Agreement) and that the LBHI D&O Defendants are being sued for actions allegedly perpetrated

23   by them in their capacity *as agents*.  FAC ¶ 26 (alleging that "each defendant was the agent of

24   _____

25   (continued…)

26   Openwave's assertion of fraud rather than contract claims mean its claims do not in fact rely on
     the Investment Agreement.  *See Third Millennium Technologies, Inc.  v. Bentley Sys., Inc.*,
27   No. 03-1145-JTM, 2003 WL 22003097, at *5 (D. Kan. Aug. 21, 2003) (finding that tort claims
     were rooted in business relationships created by underlying agreements and applying arbitration
28   clause); *see also Sunkist*, 10 F.3d at 758 (finding that tort claims presumed existence of
     underlying contract and thus arbitration clause applied); *see infra* pp. 9-10.

1   each of the remaining defendants, and in doing the acts alleged herein, was acting within the

2   course and scope of such agency.  Except for defendants Whitney and Ford, each defendant

3   ratified and/or authorized the wrongful acts of each of the other defendants."); *id.* ¶ 28 (alleging

4   that LBHI D&O Defendants and Lehman Brothers D&O Defendants were conspirators with a

5   common plan).  Openwave cannot now run away from these allegations.  *See Amato v. KPMG*

6   *LLP*, 433 F. Supp. 2d 460, 485-87 (M.D. Pa. 2006) (finding that non-signatory parent company

7   could enforce arbitration agreement signed by agent because plaintiff acknowledged agency

8   relationship, alleged that parent and agent were co-conspirators, and referred to them collectively

9   in complaint, drawing no substantive distinction between their conduct), *vacated in part on other*

10  *grounds*, No. 06CV39, 2006 WL 2376245, at *6 (M.D. Pa. Aug. 14, 2006); *Letizia*, 802 F.2d at

11  1188.

12  **B.      The Arbitration Clause Covers All of Openwave's Claims.**

13          Openwave argues that its fraud claims against the D&O Defendants fall outside the scope

14  of the arbitration clause because its claims do not (i) arise from the construction, performance, or

15  breach of the Investment Agreement (or any other agreement), or (ii) arise from the construction,

16  performance, or breach of a duty arising from the business of Lehman Brothers.[6]  *See* Opp. at 11.

17  Openwave's contentions lack merit for three reasons.  *First*, the language in the Investment

18  Agreement's arbitration clause indicates that the parties intended the clause to cover "a broader

19  spectrum of disputes" that would include fraud claims.  *See Mediterranean Enters., Inc. v.*

20  *Ssangyong Corp.*, 708 F.2d 1458, 1463 n.5 (9th Cir. 1983).  Specifically, the Investment

21  Agreement's arbitration clause encompasses not only, as Openwave misleadingly suggests (Opp.

22  at 11:8-12), claims that "arise from" the Investment Agreement, but also claims that "concern"

23  either the Investment Agreement or Lehman Brothers' business:

24              all claims and controversies . . . concerning or arising from the
             construction, performance, or breach . . . of this or *any* other
25              agreement between [Openwave] and Lehman Brothers, or of any
             duty arising from the business of Lehman Brothers.

26

27          _____
             [6] By limiting its scope argument to fraud claims against the D&O Defendants, Openwave
28  concedes that *all* its claims against the Broker Employee Defendants and all its non-fraud claims
    against the D&O Defendants are within the scope of the arbitration agreement.  *See* Opp. at 10.

1   *See* Motion to Compel, Ex. A ("Investment Agr.") at 6; *see also Downer v. Siegel*, 489 F.3d 623,

2   626 (5th Cir. 2007) (dispute where funds from customer's investment account had been used for

3   alleged wrongful investment fell within scope of arbitration clause requiring controversies

4   "concerning any account . . . be determined by arbitration"); *see also Medtronic AVE Inc. v.*

5   *Cordis Corp.*, 100 Fed. Appx. 865, 868 (3rd Cir. 2004) ("a clause providing for the arbitration of

6   all matters 'arising from' an agreement overwhelmingly suggests that that a given dispute is

7   arbitrable.").   Openwave's protestations that a portion of the Investment Agreement "has a

8   narrow scope" because it conflicts with a "broader forum selection clause" in the Institutional

9   Client Agreement are unavailing.  Opp. at 12.  The Investment Agreement addresses the existence

10   of the Institutional Client Agreement (*i.e.*, "of this or *any other agreement*"), and courts have

11   consistently found similar language to be sufficiently broad to cover all claims.  *See*

12   *Mediterranean Enters., Inc.*, 708 F.2d at 1463 n.5 (holding that "any dispute . . . *arising out of* or

13   *relating to* this contract or the breach thereof" indicates broad arbitration clause) (emphasis

14   added).  Thus, the broad language in the arbitration clause indicates that the parties intended that

15   *all* of Openwave's claims be covered, including those that involved fraud.

16       *Second*, contrary to Openwave's insistence, the source of the D&O Defendants' alleged

17   duties to Openwave is irrelevant to whether fraud claims are covered by the arbitration clause.

18   "The arbitrability of a claim depends 'upon the relationship of the claim to the subject matter of

19   the arbitration clause' and 'not upon the *characterization* of the claim.'"  *Thomassen & Drijver-*

20   *Verblifa N.V. v. Sardee Indus., Inc.*, No. 88C4271 1988 WL 102258, *3 (N.D. Ill. Sept. 28, 1988)

21   (compelling arbitration of claims characterized by party resisting arbitration as torts, rather than

22   breaches of contract) (emphasis added).[7]  Indeed, courts routinely find arbitration clauses cover

23   fraud claims.  *See e.g.*, *McEntee v. Ormes Capital Markets, Inc.*, 95 Civ. 3451(HB) 1995 U.S.

24   Dist. LEXIS 18114 at *4 (S.D.N.Y. Dec. 5, 1995) (finding that an arbitration agreement stating

25   "all controversies which may *arise . . . concerning* any transaction" covered plaintiff's fraud

26   claims) (emphasis added); *see also Rosen v. Waldman*, 93 Civ. 225 (PKL) 1993 U.S. Dist. LEXIS

27   _____

28   [7] While Openwave cites this case for another proposition regarding waiver, it ignores the
    case in the context of scope.  *See* Opp. at 15.

14076 at *5 (S.D.N.Y. Oct. 7, 1993) ("Since all of Waldman's allegedly fraudulent actions concern his management of [the] brokerage accounts, [plaintiff's] claims fall within the scope of the governing arbitration agreements."); *see also Nielsen v. Greenwood*, No. 91C6537 1993 U.S. Dist. LEXIS 12004 (N.D. Ill. Aug. 27, 1993) (compelling arbitration of plaintiffs' securities fraud claims because they arose out of the contract with defendants); *see also Metalclad*, 109 Cal. App. 4th at 1717-18 (reversing denial of motion to compel arbitration in breach of contract and fraud case, stating that "[a] party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract").  Although Openwave alleges fraud claims rather than breach of contract claims, this does not mean that Openwave is not relying on the existence of the agreement for its claims.  *See Third Millennium v. Bentley Systems, Inc.*, 2003 WL 22003097 *5 (D. Kan. 2003); *see also Mantetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988) (forum selection clauses in contracts can be equally applicable to contractual and tort causes of action where the resolution of the claims relates to interpretation of the contract); *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F.Supp. 688, 693 (S.D.N.Y. 1966) (denying plaintiffs' attempt to avoid arbitration by splitting their action into two, one based on contract and the other on negligence, to argue that the arbitration clause did not apply to the negligence claim).[8]  Openwave's attempt to avoid arbitration by simply pleading fraud is inconsistent with the broad language of the arbitration provision and would undermine the strong public policy in favor of arbitration.[9]

    *Finally*, doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.  *See Moses H. Cone Hospital*, 460 U.S. at 24-25 (as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,

---

    [8] Openwave proffers support for its argument in *Doctors' Company v. Superior Court (Valencia)*, 49 Cal.3d 39 (1989).  *Doctors' Company*, however, is wholly inapposite to this motion, as it concerns the scope of conspiracy liability and stands for the proposition that multiple defendants, acting solely as agents of their principal and not as individuals for their own advantage, cannot be held liable for a conspiracy to violate a duty that is peculiar to the principal.  *Id.* at 45.  Moreover, when deciding the scope of an arbitration agreement under the FAA, this court must follow federal law.  *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  As dicta, the text quoted by Openwave in its Opposition does not control here.

    [9] Openwave's argument regarding Defendants' alleged fraudulent conduct on the market as a whole, Opp. at 12, is a red herring and is unrelated to an arbitrability analysis.

1    including when the issue is the construction of the contract language itself).  Where, as here,

2    Openwave has failed to raise any meaningful doubts about the scope of the arbitration clause,

3    arbitration of the fraud claims must be compelled.  Accordingly, Openwave fails to show that the

4    arbitration clause does not "touch matters" involving its fraud claims against the D&O

5    Defendants, and, as a result, *all* of Openwave's claims against *all* the Defendants must be

6    arbitrated.  *See Hoffman v. Citibank (South Dakota), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008)

7    ("An arbitration agreement . . . is presumed to be valid and enforceable . . . [and] the party

8    resisting arbitration bears the burden of proving that the claims at issue are unsuitable for

9    arbitration."); *see* 9 U.S.C. § 4; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473

10   U.S. 614, 625 n.13 (1985); *see also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir.

11   1999).

12          **C.      Defendants Have Not Waived Their Right to Arbitration.**

13          Defendants have not waived their right to arbitration.  To establish waiver under the FAA,

14   Openwave "bears a heavy burden of proof" in showing that Defendants:  (i) knew of the right to

15   compel arbitration, (ii) acted inconsistently with that right, and (iii) caused prejudice to the

16   opposing party in delaying.  *Sovak, M.D. v. Chugai Pharm. Co.,* 280 F.3d 1266, 1270 (9th Cir.

17   2002).  Because Openwave cannot make such a showing, this Court must find that Defendants

18   have not waived their right to compel arbitration.

19          1.      Defendants Did Not Act Inconsistently With Their Right to Arbitrate.

20          Openwave's claim that Defendants acted inconsistently with their right to demand

21   arbitration lacks merit.[10]  Defendants communicated to Openwave (and to this Court) that they

22   were not waiving, but rather expressly intended to *reserve*, the right to arbitrate:

23          •       On April 21, 2009, in an email from Simona Strauss, counsel for the D&O
                    Defendants, to Openwave's counsel, Howard Slavitt, Defendants agreed to
24                  mediation while expressly stating: "[t]he election is without prejudice to the rights

25          [10] At the outset, Openwave's suggestion that the Defendants agreed in a January 14, 2009
     Stipulation that they would not arbitrate this dispute (Opp. at 14) is baseless.  As the Stipulation
26   makes clear, the parties agreed that neither side would seek to remand the action or seek to
     transfer or refer the action from this Court to any state court, any bankruptcy court, or any other
27   federal court. Slavitt Decl. at ¶ 2, Ex. A. Defendants *never* agreed that they would forgo
     arbitration but instead generally reserved their rights in the Stipulation.  And despite its argument,
28   Openwave admits that arbitration was not part of the discussions.  Opp. at 14.

and defenses they otherwise have (i.e., personal jurisdiction, *arbitration*).  *See* Simona Strauss Declaration ("Strauss Decl.") at ¶ 3, Ex. A (e-mail from Simona Strauss to Howard Slavitt, April 21, 2009) (emphasis added).

- On June 17, 2009, Openwave's counsel confirmed via email that "any initial disclosures that are made will be without prejudice to defendants' right . . . to seek to arbitrate this matter."  *See* Strauss Decl. at ¶ 4, Ex. B (e-mail from Howard Slavitt to Simona Strauss, June 17, 2009).

- On July 13, 2009, in the Joint Case Management Conference Statement and Rule 26(f) Report filed with this Court, Openwave admits that one legal dispute between the parties is whether the arbitration agreement should be enforced.  Joint Case Management Conference Statement and Rule 26(f) Report at 8 (Docket No. 83 at 9).

- On July 17, 2009, during the CMC, the parties advised the Court, consistent with the CMC statement, that they anticipated filing a motion to compel arbitration at the same time as a motion to dismiss.  Strauss Decl. at ¶ 4.

- On July 21, 2009, in the D&O Defendants' qualifications to its Rule 26(a) mandated Initial Disclosures, they state that they make the disclosures without "waiver [of] . . . the right to arbitrate this matter."  *See* John K. Ly Declaration ("Ly Decl.") at ¶ 3, Ex. A (Def.'s Rule 26 Initial Disclosures at 2).

- On August 17, 2009, in the Broker Employee Defendants' Response to Openwave's Second Demand for the Production of Documents, they state: "This response to the Requests does not constitute the Broker Employee Defendants' invocation of or reliance upon the discovery process . . . [t]he Broker Employee Defendants do not waive, but rather expressly reserve, their right to seek arbitration of Openwave's claims."  Ly Decl. at ¶ 4, Ex. B (Defendants Ford and Whitney's Responses to Plaintiff's Second Demand for Production of Documents at 2).

- On the August 17, 2009, in the D&O Defendants Response to Openwave's Second Demand for the Production of Documents, they state: "The Director and Officer Defendants respond to the Document Request without waiving their right to arbitrate the matter."  Ly Decl. at ¶ 5, Ex. C (Response and Objections of Director and Officer Defendants to Plaintiff's Second Demand for the Production of Documents at 1).

- On August 25, 2009, in the Stipulation between Parties regarding Scheduling, Defendants state that no conduct undertaken after filing their Motion to Compel Arbitration shall constitute a waiver of the right to arbitrate.  Ly Decl. at ¶ 6 (Stipulation between Parties regarding Scheduling at 1).[11]

Even if Defendants had not consistently and expressly reserved their right to arbitrate, all of Defendants' actions that Openwave cites as "vigorous" litigation are nothing more than

---

[11] In addition to these express reservations of their right to seek arbitration, Defendants repeatedly reserved all of their rights, without limitation, more generally in other court filings, such as in the Stipulation to Enlarge Time to Respond to Openwave's Complaint (Docket No. 14), the Stipulated Request to Continue Case Management Conference (Docket No. 70), and the Stipulated Request to Extend Time to File the FAC (Docket No. 79).

1  required actions for defendants named in a lawsuit pending a determination of motions to dismiss.

2  Defendants' "orderly participation" in litigation cannot constitute grounds sufficient to find

3  waiver.  *General Guaranty Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 929 (5th

4  Cir. 1970); *see also Microstrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) ("Neither

5  delay nor the filing of pleadings by the party seeking a stay [of litigation pending arbitration] will

6  suffice, without more, to establish waiver of arbitration.").  In *General Guaranty Ins.*, the

7  appellate court reversed the district court's finding that arbitration had been waived and held that

8  engaging in litigation procedures that "the court might well have directed it to do in the interest of

9  management of the case" is not inconsistent with the right to arbitrate.  427 F.2d at 929.

10        Here, Defendants have participated in the litigation *only* to the extent necessary (*e.g.*,

11  removal) and have "participated" far less than the party seeking arbitration in *General Guaranty*

12  *Ins.  See id.* at 928-29 (holding that the district court erred in finding a waiver of arbitration where

13  a defendant seeking arbitration allowed the opposing party to proceed with taking depositions;

14  and filed an answer, counterclaim, and motion for summary judgment).  For instance, Defendants

15  have never:  (i) answered Openwave's Complaint or FAC, (ii) instituted a counterclaim, (iii) filed

16  a motion for summary judgment, (iii) served discovery requests, or (iv) engaged in depositions.

17  In fact, Defendants have filed Rule 26(a) *mandatory* initial disclosures but have not received

18  these, or any other, documents from Openwave as part of the litigation.[12]  They thus have not

19  "reaped the benefits" of litigation in any way.  *Cf.* Opp. at 15:1.  Courts consistently hold that the

20  mandated actions taken by Defendants do not constitute waiver of arbitration.  *See Williams v.*

21  *Cigna Fin. Advisors, Inc.*, 56 F.3d 656 (5th Cir. 1995) (movant did not waive its right to

22  arbitration despite removing action to federal court, filing a motion to dismiss, filing a motion to

23  stay proceedings, answering complaint, asserting a counterclaim, and exchanging Rule 26

24  discovery); *see also Rush v. Oppenheimer & Co.,* 779 F.2d 885, 888 (2d Cir.1985) (motion to

25  dismiss does not waive the right to arbitrate; noting that where "a plaintiff files an intricate

26  complaint . . . he should not be altogether surprised that a defendant takes the protective step of

27  _____

[12] Defendants requested a voluntary production of documents from Openwave to
28  determine if the copies of the agreements in Defendants' possession, which contained arbitration clauses, were the controlling agreements.  They were.

1  filing a motion to dismiss") (internal quotation marks and citations omitted); *see also In re*

2  *Mercury Constr. Corp.*, 656 F.2d 933 (4th Cir. 1981) (removal of a state action is not to be

3  deemed a waiver of arbitration rights).

4       Openwave also claims that Defendants waited too long to file a motion to compel

5  arbitration.  Opp. at 14.  This claim misses the mark.  Numerous courts have found that there is no

6  waiver of a right to arbitrate despite the parties having moved to compel arbitration eight months

7  to one year after the initial complaints were filed.  *See, e.g., Tenneco Resins, Inc. v. Davy Int'l*,

8  770 F.2d 416, 421 (5th Cir. 1985) (finding no waiver when party participated in discovery and

9  waited almost eight months before moving for arbitration)[13]; *See Lake Communications, Inc. v.*

10 *ICC Corp.,* 738 F.2d 1473, 1477 (9th Cir. 1984) (no waiver where the defendant failed to seek

11 arbitration until more than a year after the complaint was filed), *overruled on other grounds*,

12 *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 632-35 (1985).

13 Defendants filed their Motion to Compel Arbitration within nine months of the filing of the

14 original complaint, after filing their initial Joint Case Management Conference Statement and

15 Rule 26(f) Report informing the Court of their right to compel arbitration one month before.  This

16 mere lapse of time is insufficient to constitute waiver, especially here where the only litigation

17 activity has been motions to dismiss.  In addition, Openwave agreed every time the parties

18 stipulated to a time extension, no matter who requested it, that the passage of the additional time

19 would not be used by Openwave in an argument against arbitration.  *See* Ly Decl. at ¶ 6.

20      Finally, Openwave's remaining arguments are unavailing.  Openwave's assertion that

21 Defendants have "reaped the benefits" of litigation through their submission of motions to

22 dismiss is contrary to controlling precedent.  The Ninth Circuit has held that filing a motion to

23 dismiss does not waive a party's right to arbitration. *See Lake Communications,* 738 F.2d at 1477

24

25      [13] In *Tenneco Resins, Inc. v. Davy Int'l*, the appellate court refused to find a waiver of arbitration where "the record [did] not fairly support a conclusion that [the party seeking

26 arbitration] has substantially utilized the legal process before moving for a stay of judicial proceedings so that the dispute could be settled by arbitration.  While it is true that [the party

27 seeking arbitration] waited almost eight months before moving [for arbitration] . . . and, in the meantime, participated in discovery, this and other courts have allowed such actions as well as

28 considerably more activity without finding that a party has waived a contractual right to arbitrate."  *See Tenneco Resins, Inc.*, 770 F.2d at 421.

1   (no waiver where the defendant filed a motion to dismiss); *see also Williams*, 56 F.3d 656 (no

2   waiver where movant filed a motion to dismiss, along with engaging in other litigation activity).

3   Insofar as Openwave claims that Defendants have engaged in "blatant forum shopping," (Opp. at

4   15), Defendants note that it was Openwave—and, not Defendants—that decided to file this case

5   in court rather than pursue relief in arbitration.

6                              2.       Openwave Has Not Suffered Prejudice.

7           Regardless of whether Defendants acted inconsistently with their right to arbitrate (and

8   they did not), Openwave has not suffered any prejudice.  "When only a minimal amount of

9   discovery has been conducted, which may also be useful for the purpose of arbitration, the court

10  should not ordinarily infer waiver based upon prejudice to the party opposing the motion to stay

11  litigation." *Microstrategy*, 268 F.3d at 254.  Openwave "bears a 'heavy burden of proof' in

12  showing" it was prejudiced by the delay.  *Sovak*, 280 F.3d at 1270.  Openwave's conclusory

13  statements that it has invested significant time and resources in the litigation, without providing

14  any factual support, fail to meet this heavy burden.  *See id.* ("[the party seeking to avoid

15  arbitration] has made no attempt . . . to articulate how he was prejudiced"); *see also Britton v. Co-*

16  *op Banking Group*, 916 F.2d 1405, 1413 (9th Cir. 1990) (refusing to find waiver where showing

17  of prejudice was limited to opposing party's claim that it "spent time and resources in discovery

18  activity and motions practice over a period of *two years* 'that would be rendered nugatory by a

19  direction that arbitration now be had'" and finding these "assertions of prejudice unpersuasively

20  conclusory") (emphasis added).  Defendants have neither propounded any discovery nor received

21  any documents from Openwave as part of the litigation.  In short, Openwave cannot show that it

22  was prejudiced, as litigation remains in its infancy.[14]

---

[14] The cases cited by Openwave for support of its position that Defendants have waived
their right to arbitration are legally and factually distinct.  In the only Ninth Circuit case cited by
Openwave, *Van Ness Townhouses v. Mar Indus. Corp.*, the court found the party seeking
arbitration had waived its right after "actively" participating in litigation, including pleadings,
motions, and approving a pre-trial conference order, and then moving to compel arbitration two
years after the action had been brought. *Van Ness*, 862 F.2d 754, 759 (9th Cir. 1988); *cf.*
*Grumhaus v. Comerica Secs., Inc.*, 223 F.3d 648 (7th Cir. 2000) (finding arbitration waived
where *plaintiffs*, who had filed action in court, moved to compel arbitration only after court
dismissed their complaint).  Furthermore, the Seventh Circuit case cited by Openwave uses a
different legal standard than that adopted by the Ninth Circuit—one that does not require
prejudice to the party opposing arbitration as part of the waiver inquiry.  *St. Mary's Medical*
*Center of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585 (7th Cir. 1992).

1

**III.    CONCLUSION**

For each of the foregoing reasons, together with those set forth in their moving papers, Defendants Ford and Whitney ask the Court to compel arbitration of all of Openwave's claims against all the Defendants, and grant their motion in its entirety.  If any claims remain, Defendants request the Court to stay or dismiss the court proceedings pending arbitration.

Dated: October 2, 2009                                        Respectfully submitted,

                                                              JONES DAY


                                                              By:  _____/s/_____
                                                                    Philip E. Cook

                                                              Attorneys for Defendants
                                                              TIM FORD AND MELISSA CONROY
                                                              WHITNEY