1   JAMES G. KREISSMAN, 206740
    jkreissman@stblaw.com
2   SIMONA G. STRAUSS, 203062
    sstrauss@stblaw.com
3   SIMPSON THACHER & BARTLETT LLP
    2550 Hanover Street
4   Palo Alto, California  94304
    Telephone: (650) 251-5000
5   Facsimile:  (650) 251-5002

6   Attorneys for Defendants Richard S. Fuld,
    Jr., Michael L. Ainslie, Roland A.
7   Hernandez, David Goldfarb, John F. Akers,
    Roger S. Berlind, Joseph M. Gregory,
8   Thomas H. Cruikshank, Marsha Johnson
    Evans, Henry Kaufman, John D. Macomber,
9   Thomas A. Russo, and Christopher M.
    O'Meara

10
    *Additional counsel listed on signature page*
11

12                  UNITED STATES DISTRICT COURT

13          FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                     SAN FRANCISCO DIVISION

15  **OPENWAVE SYSTEMS INC.,**              Case No. C 08-05683-SI

16                        **Plaintiff,**     **REPLY MEMORANDUM OF
                                             POINTS AND AUTHORITIES IN
17              v.                           FURTHER SUPPORT OF
                                             DIRECTOR AND OFFICER
18  **RICHARD S. FULD, JR. et al.,**         DEFENDANTS' MOTION TO
                                             DISMISS OPENWAVE'S FIRST
19                      **Defendants.**      AMENDED COMPLAINT
                                             PURSUANT TO FRCP 12(b)(2) AND
20                                           FRCP 12(b)(6)

21                                           Date:       October 30, 2009
                                             Time:       9:00 a.m.
22                                           Judge:      Honorable Susan Illston
                                             Courtroom:  10, 19th Floor
23

24

25

26

27

28

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 1

I.   OPENWAVE FAILS TO PLEAD ANY MISREPRESENTATIONS WITH
     PARTICULARITY (Counts 1, 2, 3, and 4) ............................................................. 1

II.  OPENWAVE FAILS TO PLEAD THE PARTICIPATION AND ROLE OF
     EACH DIRECTOR AND OFFICER DEFENDANT IN A FRAUDULENT
     SCHEME (Counts 2, 4 and 5) ................................................................................. 1

     A.   Openwave Fails To Adequately Allege Facts To Suggest The Existence
          Of Any Fraudulent Scheme ........................................................................... 1

     B.   Openwave Fails To Adequately Allege Facts Detailing The
          Participation Of Each Of The Director And Officer Defendants
          In A Fraudulent Scheme ................................................................................ 2

     C.   Openwave Cannot Use Information And Belief To Save Its Scheme
          Allegations ..................................................................................................... 5

III. OPENWAVE FAILS TO STATE A CLAIM UNDER § 25504 (Counts 1
     and 3) ....................................................................................................................... 7

     A.   Both Of These Statutory Claims Are Governed By Rule 9(b) ...................... 7

     B.   Openwave Fails To Plead An Underlying Violation Of § 25501 ................. 7

     C.   Openwave Fails To Adequately Plead The Requisite Status Or Control
          Required By § 25504 For Nearly All Of The Director And Officer
          Defendants ...................................................................................................... 8

          1.   Defendants Ainslie, Akers, Berlind, Evans, Hernandez,
               Kaufman, and Macomber Were Not Directors of LBI, the
               Alleged Primary Violator ................................................................... 8

          2.   Defendants Goldfarb, Gregory, O'Meara, and Russo Were Not
               LBI's "Principal Executive Officer" .................................................. 9

          3.   Openwave Has Failed to Plead That These Defendants Were
               "Controlling Persons" within the Meaning of § 25504 ................... 10

IV.  OPENWAVE FAILS TO STATE A CLAIM FOR CONCEALMENT
     (Count 5) ............................................................................................................... 11

     A.   Openwave Has Not Established That The Director and Officer
          Defendants' Duty Arose From Defendant Whitney's Alleged
          Misstatements ............................................................................................... 12

B.   Openwave Has Not Established That The Director and Officer Defendants Actively Concealed Information By Virtue Of An Alleged Scheme ..................................................................................... 12

C.   Openwave Has Not Established That The Director and Officer Defendants' Duty Arose By Virtue Of Possession Of Material Information ............................................................................................... 13

V.   THE NON-CALIFORNIA DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION ............................................................ 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Federal Cases**

3

*321 Studios v. Metro Goldwyn Mayer Studios*,

4

307 F. Supp. 2d 1085 (N.D. Cal. 2004) ..................................................... 6

5

*Apollo Capital Fund v. Roth Capital Partners*,

6

158 Cal. App. 4th 226 (2007)....................................................................... 8

7

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) .................... 14

*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984) ......................................... 4

8

*Evans v. Walter Indus.*, 579 F. Supp. 2d 1349 (N.D. Ala. 2008)................ 6

9

*Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044 (E.D. Cal. 2008) ................ 3

10

*Forsyth v. Humana, Inc.*, 114 F.3d 1467 (9th Cir. 1997)................................ 7

11

*Hokama v. E.F. Hutton & Co.*, 566 F. Supp. 636 (C.D. Cal. 1983)................. 3

12

*Howard v. Everex Sys.*, 228 F.3d 1057 (9th Cir. 2000) ............................. 10

13

*In re Amgen Inc.*, 544 F. Supp. 2d 1009 (C.D. Cal. 2008)......................... 11

14

*In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534 (N.D. Cal. 2009) ................. 11

15

*In re Citigroup Auction Rate Sec. Litig.*,

16

No. 08-3095, 2009 WL 2914370, at *5 (S.D.N.Y. Sept. 11, 2009)................. 1-2, 14-15

17

*In re Downey Sec. Litig.*,

18

No. 08-3261, 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009)......................... 11

19

*In re First Alliance Mortgage*,

20

No. 1-971, 2003 WL 21530096 (C.D. Cal. June 16, 2003) ......................... 13

21

*In re Gap Stores Sec. Litig.*, 457 F. Supp. 1135 (N.D. Cal. 1978)................. 9

22

*In re Glenfed, Inc.*, 60 F.3d 591 (9th Cir. 1995) ............................. 10

23

*In re Gupta Corp.*, 900 F. Supp. 1217 (N.D. Cal. 1994)......................... 11

24

*In re McKesson Sec. Litig.*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000) ................. 10, 11

25

*In re Ross Sys.*, No. 94-0017, 1994 WL 583114 (N.D. Cal. July 21, 1994) ................. 7

26

*In re Valence Tech. Sec. Litig.*,

27

No. 95-20459, 1996 WL 225010 (N.D. Cal. Apr. 30, 1996) ................. 10-11

28

*In re Washington Mut., Inc. Sec., Deriv. & ERISA Litig.*,
No. 08-387, 2009 WL 1393679 (W.D. Wash. May 15, 2009) ....................................... 7

*In re Worlds of Wonder Sec. Litig.*, 694 F. Supp. 1427 (N.D. Cal. 1988) ..................................... 6

*In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407 (9th Cir. 1994) ........................................ 14

*Maganallez v. Hilltop Lending Corp.*,
505 F. Supp. 2d 594 (N.D. Cal. 2007) ........................................................................ 2

*Murphy Tugboat v. Shipowners & Merchs. Towboat*,
467 F. Supp. 841 (N.D. Cal. 1979) .............................................................................. 4

*Occupational-Urgent Care Health Sys. v. Sutro & Co.*,
711 F. Supp. 1016 (E.D. Cal. 1989) ............................................................................ 6

*Parker v. Howmedica Corp.*,
No. 07-02400, 2008 WL 141628 (D.N.J. Jan. 14, 2008) .............................................. 6

*Rubke v. Capitol Bancorp, Ltd.*, 551 F.3d 1156 (9th Cir. 2009) ..................................... 7

*Semgen v. Weidner*, 780 F.2d 727 (9th Cir. 1985) ........................................................ 3

*Setencich v. American Red Cross*,
No. 07-3688, 2007 WL 4259590 (N.D. Cal. Dec. 4, 2007) .......................................... 7

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ...................................................... 2

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
768 F.2d 1001 (9th Cir. 1985) .................................................................................... 4

*Tsirekidze v. Syntax-Brillian Corp.*,
No. 07-02204, 2009 WL 275405 (D. Ariz. Feb. 4, 2009) ........................................... 11

*Wool v. Tandem Computers*, 818 F.2d 1433 (9th Cir. 1987) ........................................ 6

**California Cases**

*Allen v. Sundean*, 137 Cal. App. 3d 216 (1982) ........................................................... 5

*Chavez v. Citizens for Farm Labor Law*, 84 Cal. App. 3d 77 (1978) ............................ 5

*Courtney v. Waring*, 191 Cal. App. 3d 1434 (1987) ..................................................... 9

*Crayton v. Super. Ct.*, 165 Cal. App. 3d 443 (1985) ................................................... 12

*Doctors' Co. v. Super. Ct.*, 49 Cal. 3d 39 (1989) ....................................................... 12

*LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997) ..................................................... 12

*Marketing West, Inc. v. Sanyo Fisher Corp.*,
6 Cal. App. 4th 603 (1992) ........................................................................................ 12

*PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368 (2000) ................................................ 4, 5

*Spahn v. Guild Indus.*, 94 Cal. App. 3d 143 (1979) ....................................................... 4

*Vega v. Jones Day*, 121 Cal. App. 4th 282 (2004) .............................................. 5, 13, 15

*Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773 (1979) ............................................ 4, 12

**Statutes**

Cal. Corp. Code § 25501 ........................................................................................... 7, 8

Cal. Corp. Code § 25504 ............................................................................ 1, 6, 7, 8, 9, 10

Uniform Securities Act § 410 (1956) ............................................................................. 9

**Other Authorities**

Judicial Council of Cal. Civ. Jury Instruction (2008) No. 1901 .................................. 13

**PRELIMINARY STATEMENT**

Openwave fails to address the principal arguments in the Director and Officer Defendants' Motion to Dismiss the First Amended Complaint ("FAC"). When confronted with its failure to allege either a coherent fraudulent scheme or the specific actions taken by each of the Director and Officer Defendants in furtherance of that alleged scheme, Openwave merely repeats its vague, unparticularized allegations about a massive scheme to defraud all ARS investors and insists that its minor additions to the FAC—officers' titles, committee memberships and alleged approval of a regulatory settlement—somehow meet its pleading burden. In fact, as with its initial complaint, Openwave falls far short of the requisite pleading specifics. Similarly, with respect to its § 25504 claim, Openwave insists that it has pled privity with LBI, despite the explicit statement to the contrary in the FAC, and contends that it may exercise status-based liability over persons other than LBI's directors and principal executive officer, ignoring the statute's clear language. Finally, with respect to its concealment claim, Openwave ignores well-established precedent by attempting to argue that the Director and Officer Defendants owed it a duty to disclose, despite the fact that they made no statements to Openwave, are not alleged to have actively concealed information from Openwave, and otherwise do not fall into any category giving rise to such a duty.

**ARGUMENT**

**I.     OPENWAVE FAILS TO PLEAD ANY MISREPRESENTATIONS WITH PARTICULARITY (Counts 1, 2, 3, and 4)**

Counts 1-4 must be dismissed because Openwave fails to allege any misrepresentation with the particularity required by Rule 9(b). *See* Broker Defs.' MTD at 5-9 & Reply at 2-6.

**II.    OPENWAVE FAILS TO PLEAD THE PARTICIPATION AND ROLE OF EACH DIRECTOR AND OFFICER DEFENDANT IN A FRAUDULENT SCHEME (Counts 2, 4 and 5)**

**A.     Openwave Fails To Adequately Allege Facts To Suggest The Existence Of Any Fraudulent Scheme**

In their opening papers, the Director and Officer Defendants established that Openwave has failed to plead its alleged fraudulent scheme with the particularity required by Rule 9(b). *See* MTD at 7:9-8:5. Openwave ignores both Defendants' cases on this issue and that the FAC relies on vague and conclusory allegations rather than facts. *See, e.g.*, FAC ¶¶ 39, 41. However, as a

1   district court recently held in considering allegations about a virtually identical ARS-related

2   "scheme," "general allegations not tied to the defendants or resting upon speculation" are

3   insufficient to state a claim.  *In re Citigroup Auction Rate Sec. Litig.*, No. 08-3095, 2009 WL

4   2914370, at *5 (S.D.N.Y. Sept. 11, 2009).  Just like the plaintiffs in *Citigroup*, Openwave has not

5   provided the requisite details.[1]

6   **B.      Openwave Fails To Adequately Allege Facts Detailing The Participation Of
          Each Of The Director And Officer Defendants In A Fraudulent Scheme**

7

8          The Court held that Openwave's original complaint failed to plead the "the role of each

9   defendant in the alleged fraudulent scheme" and explained that allegations as to "each defendant's

10  position within Lehman and the committees and/or job responsibilities of that defendant" were

11  insufficient because identifying each defendant's role at Lehman did not identify his or her role in

12  any scheme.  Order at 6–7.  In their opening papers, the Director and Officer Defendants showed

13  that Openwave failed to correct this defect, warranting dismissal again.  MTD at 9:8-13:2.

14         In response, Openwave suggests that the additional "facts" it added to the FAC—

15  (i) information regarding Fuld, Gregory and Russo's positions at Lehman, (ii) the Officer

16  Defendants' participation in weekly meetings on certain corporate committees, and (iii) the

17  Director and Officer Defendants' supposed approval of the SEC settlement—are sufficient to

18  plead the defendants' roles in the alleged scheme.  However, because Openwave's new allegations

19  fail to tie the Director and Officer Defendants to *any* wrongful activity, they cannot satisfy

20  Openwave's pleading burden.  Precedent, recognized by this Court and ignored by Openwave,

21  uniformly holds that a plaintiff cannot plead a fraudulent scheme claim against individuals just by

22  providing neutral facts about participation in the company's business.[2]  Openwave must plead

---

[1] Openwave's scheme allegations are also implausible because they ignore the 23 years in which
ARS traded in a liquid market and the sudden global credit crisis that precipitated the seizure of
the ARS market.  *See* MTD at 8:8-9:5.  Openwave's only explanation for the 23 years of stability
and liquidity was that it *must* have been due to the "scheme's sophistication."  Speculation aside,
Openwave fails to plead a single fact that supports the existence of its scheme or the Director and
Officer Defendants' awareness of or participation in it.

[2] *See* Order at 6 (averments based on "their senior positions at Lehman" and "similar allegations
about what 'defendants and Lehman' knew or did are insufficient") (citing *Swartz v. KPMG LLP*,
476 F.3d 756, 756 (9th Cir. 2007) (complaint making "general allegations" without "attribut[ing]
specific misconduct" to individual defendants "insufficient as a matter of law")); *Maganallez v.
Hilltop Lending Corp.*, 505 F. Supp. 2d 594, 606 (N.D. Cal. 2007) (Illston, J.) ("it is not enough to

1   facts showing what each defendant did as part of and in furtherance of the alleged scheme.  It has

2   failed to satisfy this basic requirement.

3           <u>Lehman's Structure</u>.  In their opening brief, the Director and Officer Defendants showed

4   that Openwave's additional allegations about Lehman's reporting structure and Defendants Fuld,

5   Gregory, and Russo's job responsibilities[3] at Lehman were more of the same neutral facts that the

6   Court already found insufficient.  MTD at 10:21-11:7.  In opposition, Openwave merely repeats its

7   allegations and does not explain how the Amended Complaint meets the pleading standard.  Opp.

8   at 18:8-21.  Moreover, Openwave's statement that "Lehman's corporate structure was used to

9   perpetuate the [fraud]," FAC ¶ 41, with no explanation of *how* it was used, illustrates the absence

10  of particularity in its fraud allegations.  The FAC merely—and inadequately—alleges an

11  amorphous plan purportedly carried out by a disembodied structure.  Nowhere does Openwave

12  plead, with concrete facts, the individuals' alleged participation in it.

13          <u>The Risk Committee</u>.  In their opening papers, the Director and Officer Defendants

14  established that Openwave failed to allege that the Risk Committee, or any member thereof, had

15  any knowledge of, let alone was involved in, any wrongful scheme involving ARS.  MTD at 11:8-

16  19.  In opposition, Openwave significantly misrepresents its own allegations in arguing that the

17  FAC alleges the Officer Defendants' "knowledge obtained from those committees and the roles

18  such played in the fraud" and that defendants "knew" facts by virtue of their participation.  Opp. at

19  13:22-23, 17:17-23.[4]  Openwave pleads no such facts, but instead merely provides generalized

20  ─────────────────────────────────────

21  allege that [officer] was responsible for all the acts of [primary violator] and [company] . . .
    Plaintiffs must identify the specific role [officer] played in the fraudulent scheme"); *Semgen v.
    Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (requiring "particularity with respect to the alleged

22  fraudulent involvement of [individual defendants] in the [scheme];" "conclusory allegations of
    fraud . . . punctuated by a handful of neutral facts" insufficient); *Hokama v. E.F. Hutton & Co.*,

23  566 F. Supp. 636, 646 (C.D. Cal. 1983) ("although the complaint specifies the general
    relationships among the defendant with respect to the overall [enterprise], it contains no specific

24  allegations regarding the roles of the various defendants in the [fraud]").

25  [3] Openwave alleges *no* additional facts about the job responsibilities of Officer Defendants
    O'Meara and Goldfarb, or of any of the outside Director Defendants.

26  [4] Openwave also states that the Director and Officers Defendants "knew of and approved
    expenditures required for their plan, apprised its risk, and others participated in and approved the

27  fraudulent plan."  Opp. at 17:11-13.  Conspicuously missing from this argument is a citation to the
    FAC, owing to the fact that Openwave never made these allegations.  Openwave cannot amend its

28  pleading through its brief.  *See Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1050 (E.D.
    Cal. 2008) ("statements in [an] opposition brief cannot amend the Complaint under Rule 15")

─────────────────────────────────────

1    descriptions of two of Lehman's committees (the Risk and Executive Committees), without any

2    details about the activities of these committees.  It then adds its own conclusory allegations about

3    what the Officer Defendants "knew or should have known" by virtue of their participation on

4    these committees.  *See, e.g.*, FAC ¶¶ 25, 71, 72(b)-(c).[5]  Openwave does not allege what these

5    committees discussed, whether they ever discussed ARS, whether they engaged in or even

6    contemplated wrongful activity, or what knowledge the Officer Defendants obtained through their

7    committee membership.  As with allegations based on an officer's position, allegations based on

8    committee membership cannot substitute for knowledge of, or participation in, fraud, particularly

9    in the absence of factual allegations showing the entire committee was committing fraud.[6]

10         The SEC Settlement.  Openwave's final new allegation, made without any factual basis,

11   that the Director Defendants and, on information and belief, the Officer Defendants, approved

12   LBI's 2006 settlement with the SEC does not support participation in a scheme.  FAC ¶¶ 44-45.

13   (Alleged approval of the SEC Settlement is the *only* additional fact Openwave pleads about the

14   Director Defendants.)  Openwave argues, without explanation, that by approving the settlement,

15   "each D&O defendant knew, or unless reckless, should have known that the disclosures being

16   (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")).

17

18   [5] Openwave's new Risk Committee allegations are nearly identical to its prior Executive Committee allegations that the Court already found insufficient.  *Compare* Compl. ¶ 20 *with* FAC ¶ 25; *see also* Opp. at 17:6-18:7 (addressing Risk Committee and Executive Committee together). In effect, Openwave's amendment does nothing but allege the existence of another committee on which the Officer Defendant purportedly participated, that may or may not have discussed ARS.

19

20   [6] In arguing that it has met its pleading burden, Openwave places considerable reliance on *Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773 (1979), on which it also relied in its initial complaint. However, *Wyatt* does not support Openwave's contention that allegations of status and committee membership are sufficient to identity each defendant's role in the fraud.  Opp. at 12:16-18.  The *Wyatt* court held that a "jury could [have] reasonably conclude[d] that the breaches of fiduciary duties owed to [plaintiffs] were undertaken pursuant to established company policies agreed to by each of the [officer and director defendants]."  *Id.* at 785–86.  Such a conclusion was reasonable because, unlike LBHI and LBI, the corporation in that case was a "tightly-knit, family oriented business operation" closely controlled by the "principal shareholder."  *Id.*  Moreover, because *Wyatt* followed a jury trial, the decision says nothing about the pleading standard for scheme allegations.  Openwave's other "scheme" liability cases were also not decided on the pleadings and are factually distinct.  *See PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1372 (2000) (appeal from summary judgment regarding misappropriation of trade secrets); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1009 (9th Cir. 1985) (appeal from judgment and permanent injunction for trademark infringement); *Spahn v. Guild Indus.*, 94 Cal. App. 3d 143, 146–47 (1979) (appeal from jury verdict in Franchise Act case); *Murphy Tugboat v. Shipowners & Merchs. Towboat*, 467 F. Supp. 841, 846 (N.D. Cal. 1979) (appeal from JNOV in antitrust case).

1   made to institutional investors like Openwave were untruthful and incomplete."[7]  Opp. at 15:25-

2   27.  Openwave has not and cannot provide a basis for this assertion.  Indeed, allegedly approving a

3   modest settlement regarding disclosure practices cannot demonstrate awareness of (much less

4   participation in) a fraudulent scheme, particularly a scheme that was not uncovered, pursued or

5   even mentioned by the SEC.  Openwave itself has argued that the SEC issues were "far different

6   from the D&Os secret and systematic manipulation of the entire auction process."  *See* MTD at

7   12:5-22.  Moreover, Openwave has merely pleaded that, by the time they approved the settlement

8   (assuming that a $1.5 million settlement required LBI board approval), these defendants were

9   aware of that settlement.  It has not established that they had any knowledge of Lehman's ARS

10  practices *before* the settlement, or that they were ever informed of Lehman's allegedly improper

11  disclosures or ARS practices *after* the settlement.  (Indeed, Openwave has not explained why a

12  director or officer would have any reason to believe that the settlement did not resolve any pre-

13  existing issues related to ARS disclosures.)  Accordingly, allegations about the Director and

14  Officer Defendants' supposed approval of the SEC Settlement is not a substitute for facts that

15  these individuals knew of or participated in a fraudulent scheme.  Order at 6.[8]

16        **C.    Openwave Cannot Use Information And Belief To Save Its Scheme Allegations**

17        In their opening papers, the Director and Officer Defendants established that Openwave

18  could not use information and belief to salvage its conclusory allegations because it failed to

---

19  [7] Openwave's distinction between its conclusory allegation that defendants "knew or should have
20  known" certain facts in approving the settlement, FAC ¶¶ 50, 63, and its conclusory allegation that
    the defendants "knew, *or unless reckless*, should have known" these facts, FAC ¶ 46, is
21  meaningless.  Opp. at 15:24-16:1, 16:22-17:2.  However phrased, Openwave's implication of
    knowledge to these defendants is a conclusory allegation based on pure speculation.  Openwave
22  fails to connect the settlement with the alleged scheme or explain how approval of the settlement
    somehow gave the defendants knowledge of the scheme.  Ignoring its failure, Openwave tries to
23  relax its pleading burden by blurring the scienter standard for affirmative misrepresentations
    (willful *or reckless* actions) with the standard for secondary conspiracy liability (*knowing*
24  participation, consent or authorization of a scheme).  Opp. at 16:22-17:2.  Openwave's own cases
    require a showing of "*knowing* consent to or approval of unlawful acts" to state a conspiracy
25  claim.  *See, e.g.*, *PMC*, 78 Cal. App. 4th at 1380.  Its misleading citation to cases where a
    defendant directly engaged in (as opposed to approved of another's) fraudulent activity cannot
26  change this standard.  *See Vega v. Jones Day*, 121 Cal. App. 4th 282, 292 (2004) (direct acts of
    concealment); *Allen v. Sundean*, 137 Cal. App. 3d 216, 225–26 (1982) (same); *Chavez v. Citizens
27  for Farm Labor Law*, 84 Cal. App. 3d 77, 80 n.4 (1978) (false representation directly made).

28  [8] Similarly, Defendant Russo's alleged involvement in the settlement as Lehman's General
    Counsel cannot show he knew of or was part of an alleged scheme.  FAC ¶ 66; Opp. at 18:16-21.

---

1   identify "the sources of the information and belief . . . so as to allow each defendant and the Court

2   to review the sources and determine, at the pleading stage, whether an inference of fraud may be

3   fairly drawn from the information contained therein."  MTD at 13:5-14:12 (citing *Occupational-*

4   *Urgent Care Health Sys. v. Sutro & Co.*, 711 F. Supp. 1016, 1020 (E.D. Cal. 1989)).  Openwave

5   concedes its obligation to provide such information, but argues that it uses information and belief

6   sparingly and with sufficient factual support.  Opp. at 18:24-27, 19:14-22.

7          Openwave understates the role information and belief plays in its pleading, suggesting it

8   "only alleges on information and belief . . . certain details of defendants' fraudulent plan and their

9   particular roles in it."  *Id.* at 18:24-27.  In fact, Openwave's information and belief allegations

10  form the *entire* basis for its claims against the Director and Officer Defendants: the scheme, its

11  details, and these defendants' participation, authorization or consent to the scheme. FAC ¶¶ 39, 41.

12         Moreover, when one looks for the "information" underlying Openwave's beliefs, there is

13  none.[9]  Openwave alleges only two "facts" to justify its conclusory assertion that the Director and

14  Officer Defendants participated in the scheme: (i) the Director Defendants allegedly approved the

15  2006 SEC Settlement,[10] and (ii) the Officer Defendants participated in Lehman's management.

16  No inference of fraud may be fairly drawn from either of these facts.  *See* § II.C, *supra*.[11]

17

18  [9] Openwave's additional "information" (*e.g.,* the Director Defendants "knew or should have
    known of the nature of Lehman's ARS business" and of the alleged scheme), FAC ¶¶ 63-64, is not

19  information at all, but mere legal conclusions based on speculation.  *See 321 Studios v. Metro
    Goldwyn Mayer Studios*, 307 F. Supp. 2d 1085, 1105–06 (N.D. Cal. 2004) (Illston, J.) (rejecting

20  factual averments that defendants conspired and/or controlled as "legal conclusions plead as if
    they were facts"); *Evans v. Walter Indus. Corp.*, 579 F. Supp. 2d 1349, 1371 (N.D. Ala. 2008)

21  (rejecting "knew or should have known" allegations because court is "not bound to accept as true a
    legal conclusion couched as a factual allegation"); *Parker v. Howmedica Corp.*, No. 07-02400,

22  2008 WL 141628, at *3 (D.N.J. Jan. 14, 2008) (same).

23  [10] Openwave's claim that the Officer Defendants knew of and approved the SEC Settlement is
    itself pleaded on information and belief, without factual support.  *Compare* FAC ¶ 45 *with* ¶ 44.

24  [11] The information and belief allegations in *Wool v. Tandem Computers*, 818 F.2d 1433, 1439–40
    (9th Cir. 1987), relied on by Openwave, were far different from those pleaded here.  The *Wool*

25  allegations were satisfactory because, unlike Openwave's FAC, they were "very precise" in
    identifying all the factual specifics upon which the misrepresentations allegations were based.  *Id.*

26  By contrast, loosely pleaded allegations such as Openwave's do not withstand scrutiny.  *See, e.g.,*
    *In re Worlds of Wonder Sec. Litig.*, 694 F. Supp. 1427, 1433 (N.D. Cal. 1988) (allegations that

27  defendants "conspired and knowingly or recklessly" caused the fraud were insufficient, as were
    plaintiffs' allegations "on information and belief, that a defendant knew that another's action was

28  fraudulent . . . [absent] sufficient detail to demonstrate the claim is grounded in some facts").

---

1    **III.    OPENWAVE FAILS TO STATE A CLAIM UNDER § 25504 (Counts 1 and 3)**

2        **A.    Both Of These Statutory Claims Are Governed By Rule 9(b)**

3        In their opening papers, the Director and Officer Defendants explained that Rule 9(b)

4    should apply to all claims, including Count 1, because Openwave's entire complaint "alleges a

5    'unified course of fraudulent conduct.'"[12]  *See* MTD at 6-7 n.4, 14:21-15:4.  In opposition,

6    Openwave claims that the FAC sufficiently alleges negligent conduct independent of fraud

7    allegations.  However, Openwave does not point to a single different fact supporting its negligence

8    claim.  Instead, it relies on exactly the same allegations to support Counts 1 and 3, and merely

9    disclaims the fraud allegations.  *See* FAC ¶¶ 55, 80.[13]

10       **B.    Openwave Fails To Plead An Underlying Violation Of § 25501**

11       As explained by the Broker Defendants, Openwave has failed to plead any false statement

12   with the requisite particularity.  Broker Defs.' MTD at 5-9 & Reply at 2-6.  Openwave thus has

13   failed to plead a primary violation of § 25501, a predicate to establishing a § 25504 claim.

14       In addition, the Director and Officer Defendants established that, rather than complying

15   with the Court's Order to "more specifically allege privity," Openwave has done the opposite,

16   conceding that Openwave *does not know* whether it was in privity with LBI.  *See* MTD at 15:7-

17   16:7.  In opposition, Openwave argues that its bare allegations based on "information and belief"

18   are sufficient under Count 1 (under a Rule 8 standard) and that the Director and Officer

19   ───────────────

[12] Plaintiff incorrectly suggests that the Director and Officer Defendants have engaged in improper
20   re-argument as to whether the FAC sounds in fraud.  *See* Opp. at 7:8-18.  It is well established that
an amended pleading extinguishes the original complaint.  *See, e.g., Forsyth v. Humana, Inc.*, 114
21   F.3d 1467, 1474 (9th Cir. 1997) ("amended complaint supercedes the original, the latter being
treated thereafter as non-existent"); *Setencich v. Am. Red Cross*, No. 07-3688, 2007 WL 4259590,
at *2 (N.D. Cal. Dec. 4, 2007) (same).  The Court had considered only whether Openwave's
22   *original* complaint sounded in fraud.  Thus, the Director and Officer Defendants are completely
within their rights to ask the Court to determine whether the *amended* complaint sounds in fraud.
23   Moreover, it would have been nonsensical for the defendants to have sought reconsideration of an
order that resulted in the dismissal and repleading of Openwave's complaint.

24   [13] Recent decisions confirm that such token attempts to disclaim a unified course of fraudulent
conduct are insufficient.  *See, e.g., Rubke v. Capitol Bancorp, Ltd.*, 551 F.3d 1156, 1161 (9th Cir.
25   2009) (applying Rule 9(b) to negligence-based claim that relied on same factual allegations as
fraud claims where complaint "allege[s] a unified course of fraudulent conduct and relies entirely
26   on that course of conduct as the basis of a claim"); *In re Washington Mut., Inc. Sec., Deriv. &
ERISA Litig.*, No. 08-387, 2009 WL 1393679, at *13 (W.D. Wash. May 15, 2009) (applying Rule
27   9(b) because, although plaintiffs pleaded claims under negligence theory and attempted to exclude
all fraud-based facts, they alleged "misrepresentations regarding much of the same conduct . . .
28   forming the basis of [their] fraud claims").  Thus, Rule 9(b) should apply to the entire complaint.

───────────────

1   Defendants' attack on its Count 3 pleading (under the Rule 9(b) standard) merely creates "a

2   factual dispute, nothing more." Opp. at 8:1-9:17. Openwave is incorrect. First, Rule 9(b) applies

3   to both counts. *See* § III.A, *supra*. Second, Openwave cites no authority to support its contention

4   that privity allegations pleaded on information and belief are sufficient under either Rule 8 or Rule

5   9(b). Finally, there is no factual dispute. Openwave need not *prove* privity at this time, but it

6   must *allege* privity. Neither speculation about LBI's role as Initial Purchaser,[14] nor unfounded

7   guesses that LBI "indiscriminately offered to sell ARS to all purchasers" in the same auctions[15]

8   are equivalent to an actual sale from LBI to Openwave. Openwave has thus not alleged strict

9   privity with LBI, required to state a primary violation under § 25501.

10        **C.    Openwave Fails To Adequately Plead The Requisite Status Or Control
                  Required By § 25504 For Nearly All Of The Director And Officer Defendants**
11
                  **1.    Defendants Ainslie, Akers, Berlind, Evans, Hernandez, Kaufman, and
12                        Macomber Were Not Directors of LBI, the Alleged Primary Violator**

13        The Director and Officer Defendants established that Defendants Ainslie, Akers, Berlind,

14   Evans, Hernandez, Kaufman, and Macomber[16] could not be subject to status-based liability under

15   § 25504 because, even if there had been a primary violation by alleged primary violator LBI, they

16   were not directors of LBI. *See* MTD at 16:11-17:2. In opposition, Openwave now argues that

17   *both* LBI and LBHI were primary violators because "LBHI may have purchased the ARS, held

18   them in *its* inventory, and then resold them to Openwave." Opp. at 11:12-13. Openwave has no

19   support for this speculation, which is not even alleged in the FAC. Openwave is well aware—and

20   alleged—that *LBI*, not LBHI, was the broker for each of these ARS, purchased and sold the ARS,

21   and employed Defendants Ford and Whitney. FAC ¶¶ 16-17, Ex. B at 2, Ex. C at 1.

22        Openwave also seeks to impose primary liability on LBHI because it was "the owner of,

---

23   [14] The fact that LBI may have been an initial purchaser does not mean that LBI sold directly to
24   Openwave. In any event, as pleaded, Openwave purchased only 2 of its 11 ARS holdings, the
     Ballantyne Re and Double Oak ARS, before the first reset dates. FAC ¶ 55; Opp. at 8:25-28 n.4.
25   If Openwave's "initial purchaser" inference is sufficient to plead privity, the Court should find
     privity pleaded only with respect to these two ARS and strike the others from the FAC.

26   [15] Privity means strict privity, requiring a sale, not merely an *offer* to sell. *See Apollo Capital
     Fund v. Roth Capital Partners*, 158 Cal. App. 4th 226, 254 (2007) ("liability under Section 25501
27   attaches only to the actual seller of the securities").

     [16] Openwave incorrectly states that Defendant Macomber did not dispute his supposed status-
28   based liability. Opp. at 10:2-3. *See* MTD at 16:9-10, 16:24-26.

---

and also conducted business as, LBI." Opp. at 11:11-21. Openwave fails to cite a single case

supporting the argument that the parent is a "primary violator" based on business conducted by its

subsidiary.[17] The statutory language clearly imposes status-based liability on some individuals,

and requires a showing of "control" for others. The *LBHI* directors do not possess the requisite

status. Therefore, Openwave must plead "control," which it fails to do. *See* § III.C.3, *infra*.

### 2. Defendants Goldfarb, Gregory, O'Meara, and Russo Were Not LBI's "Principal Executive Officer"

In their opening papers, the Director and Officer Defendants established that § 25504

imposes status-based liability on only the principal executive officer (*i.e.,* the CEO), and not all

officers. *See* MTD at 17:11-18:21. Openwave argues that had the Legislature intended this result,

it would not have included the phrase "occupying a similar status or performing similar functions"

in the statute. Opp. at 11:28-12:2.[18] This additional clause does not alter the definition of

"principal executive officer," however, but merely indicates that § 25504 considers function over

form when identifying the "principal executive officer." For example, a company may have a

power-sharing arrangement (*i.e.*, co-CEOs), or the titular CEO may be a mere figurehead, with, for

example, the company's President and COO functioning as the principal executive officer.[19]

Thus, the clause does not alter the statute's plain language or the clear legislative intent that status-

based liability apply to a significantly narrower subset than all "officers."

Openwave also *argues* that these defendants may be liable because they "occupied a

---

[17] Openwave has not alleged that LBI and LBHI failed to properly maintain their corporate structure and formalities. It thus cannot now argue that LBHI and LBI are playing "corporate shell games" in order to impose liability on directors of an affiliate company. LBI is an independently incorporated company, with its own Board of Directors. *See* RJN ISO MTD (Docket # 96) Ex. A.

[18] Openwave also asks the Court to ignore the Legislature's deliberate addition of the words "principal" and "executive" to the language of the Uniform Securities Act, upon which § 25504 was based, because of "substantial differences" between the statutes. In fact, these statutes are nearly identical. *Compare* Uniform Securities Act § 410 (1956) *with* Cal. Corp. Code § 25504. The only "difference" that Openwave identifies, the presence of the "similar status … similar function" language in § 25504, is no difference at all— the exact same language appears in § 410.

[19] *Courtney v. Waring*, 191 Cal. App. 3d 1434, 1440–41 (1987), cited by Openwave, did not consider the definition of the phrase "principal executive officer." And *In re Gap Stores Sec. Litig.*, 457 F. Supp. 1135, 1146 (N.D. Cal. 1978), held that Gap's "Vice-President," a "corporate officer" who had participated in Gap's "*Executive* Committee," was *not* the "principal executive officer" falling "within the coverage of [§ 25504]."

---

1    similar status or performed similar functions" as the CEO.  However, the FAC fails to allege such

2    similarity.[20]  Therefore, to establish liability, Openwave must plead "control."  *See* § III.C.3, *infra*.

3            **3.       Openwave Has Failed to Plead That These Defendants Were**
4                      **"Controlling Persons" within the Meaning of § 25504**

5            To plead "control," Openwave must allege that each defendant both (i) had and (ii)

6    exercised "a significant degree of day-to-day operational control, amounting to the power to

7    dictate another party's [*i.e.,* LBI's] conduct or operations."  *In re McKesson Sec. Litig.*, 126 F.

8    Supp. 2d 1248, 1277 (N.D. Cal. 2000); *see also Howard v. Everex Sys.*, 228 F.3d 1057, 1065 (9th

9    Cir. 2000) (defendant must "exercise[] actual power or control over the primary violator").

10           Openwave's control person claims fail.  Openwave relies entirely on the Director and

11   Officer Defendants' positions as officers or directors of "Lehman," and on its conclusory

12   allegation that they "were controlling persons and possessed the power and authority to control

13   Lehman[]."  Opp. at 10:9-17; *see also* FAC ¶¶ 3-15, 23, 41, 55.[21]  First, as to the outside directors,

14   it is well established that conclusory allegations of title and committee memberships are

15   insufficient.  *See, e.g., In re Glenfed, Inc.*, 60 F.3d 591, 593 (9th Cir. 1995) ("identifi[cation of]

16   the nonemployee directors . . . their dates of service, every committee assignment, [and] a general

17   description of the various committees" insufficient to establish control person liability); *In re*

18   *Valence Tech. Sec. Litig.*, No. 95-20459, 1996 WL 225010, at *3 (N.D. Cal. Apr. 30, 1996) ("[I]t

19

20   [20] Openwave argues that Defendant Gregory performed a similar function to Defendant Fuld.  Yet, Openwave itself alleges that Gregory was subordinate to Fuld.  FAC ¶ 65.  Likewise, Openwave

21   argues that Defendant O'Meara performed a similar function, but does not suggest how this could be the case and has not alleged how CFO O'Meara had any degree of operational control over

22   Lehman, let alone how he functioned as the CEO.  Finally, Openwave does not even try to argue that Defendants Goldfarb or Russo could have performed a similar function to the CEO.  Instead,

23   Openwave weakly suggests that there is a "factual dispute."  There is no such dispute.  Openwave has pleaded *no facts* to suggest that these defendants occupied a "similar status" or performed

24   "similar functions" to a CEO.  Therefore, it cannot impose status-based liability against them.

25   [21] Openwave's suggestion that the Director and Officer Defendants' approval of the 2006 SEC Settlement somehow evidences control is entirely without merit.  Opp. at 10:14-16.  As an initial matter, Openwave mischaracterizes its own allegations in arguing that "[e]ach D&O defendant

26   personally participated . . . [in] Lehman's ongoing failures to correct the material omissions following the SEC Settlement."  *Id.*  Openwave alleges nothing of the sort, but rather speculates

27   that the Director and Officer Defendant were aware of certain facts following the settlement.  Moreover, approval of a settlement is not equivalent to day-to-day involvement in the operation of

28   LBI, or of LBI's ARS business.  Openwave cites no authority to suggest otherwise.

1   is not reasonable to presume in every case . . . that a 'corporate scheme to defraud was collectively

2   devised by the [outside] director defendants.'").[22]  This is particularly true for outside directors

3   who were only directors of *LBHI*, and thus even further from LBI's day-to-day operations.

4           Status-based allegations are also insufficient to plead control by corporate officers.  *See,*

5   *e.g.*, *In re Amgen Inc.*, 544 F. Supp. 2d 1009, 1037 (C.D. Cal. 2008) ("an individual's status as an

6   officer or director is insufficient, standing alone, to demonstrate the exercise of control"); *In re*

7   *McKesson Sec. Litig.*, 126 F. Supp. 2d at 1277 (dismissing control person claims against officers

8   not alleged to have day-to-day control over alleged violators).  A recent decision, *In re Downey*

9   *Sec. Litig.*, No. 08-3261, 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009), held that allegations

10  similar to those in the FAC were insufficient to support control personal liability.  There, the

11  plaintiffs had alleged that "the [corporate officer and directors], by reason of their position at

12  [company], their participation in setting [policies], and their ownership of [company] stock, had

13  the power to cause [company] to engage[ ] in the alleged conduct."  *Id.* at 15.  The *Downey* court

14  held that "such boilerplate allegations are insufficient to state a claim for control person liability"

15  because the plaintiffs "failed to make particularized allegations that the Individual Defendants

16  exercised control over [company]." *Id.*  Openwave alleges no more here.[23]

17  **IV.      OPENWAVE FAILS TO STATE A CLAIM FOR CONCEALMENT (Count 5)**

18          In their opening papers, the Director and Officer Defendants established that Openwave

19  again failed to state a claim for concealment because it neither (i) "allege[d] any facts showing

20  what [defendants] did as part of the alleged scheme," nor (ii) demonstrated that the Director and

21

22  [22] *See also In re Gupta Corp.*, 900 F. Supp. 1217, 1243 (N.D. Cal. 1994) (status of defendants as
    outside directors insufficient to make them control persons); *In re Ross Sys.*, No. 94-0017, 1994
23  WL 583114, at *5 (N.D. Cal. July 21, 1994) (same).

    [23] *Tsirekidze v. Syntax-Brillian Corp.*, No. 07-02204, 2009 WL 275405 (D. Ariz. Feb. 4, 2009),
24  and *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534 (N.D. Cal. 2009), are distinguishable.
    Neither deals with control person claims against *outside* directors, where the relationship between
25  status and day-to-day operational control is more attenuated.  More importantly, both cases deal
    with substantially different allegations from those in this case, namely misrepresentations and
26  omissions that occurred in the company's public filings and statements, which management and
    directors review and approve.  While some cases suggest that senior management may exercise
27  control over statements relating to a company's business as a whole that are made in mandatory
    SEC filings approved by such management, the same is not true for alleged misstatements made to
28  a single customer concerning only one facet of a large multinational corporation's business.

1    Officer Defendants owed a duty directly to Openwave.  *See* MTD at 18:22-24:5.  Openwave's

2    response seeks to blur the line between direct duties and scheme liability, arguing that by virtue of

3    the Director and Officer Defendants' *inadequately* alleged involvement in the *inadequately*

4    pleaded scheme and/or other unspecified "individual conduct," they owed duties directly to

5    Openwave.  *See* Opp. at 19:25-22:1.  Openwave cites no authority to support such a "transference"

6    of duties.  California imposes a duty to disclose in only four circumstances, *LiMandri v. Judkins*,

7    52 Cal. App. 4th 326, 333 (1997), and Openwave fails to plead facts to support any of them.

8    **A.    Openwave Has Not Established That The Director and Officer Defendants'
          Duty Arose From Someone Else's Alleged Misstatements**

9

10   Openwave attempts to impose a duty on directors and officers based on affirmative

     statements allegedly made by a single LBI employee, one among many thousands worldwide.

11

12   Opp. at 21:3-9.  Openwave cites no authority for the novel proposition of a duty to disclose based

13   on statements made by another.  The only case it cites is *Crayton v. Super. Ct.*, 165 Cal. App. 3d

     443, 451 (1985), which involved a duty to disclose by a speaker, not based on the speech of

14

15   another.[24]  Because Openwave admits that the Director and Officer Defendants made no

     representations to it, it has failed to allege a duty to disclose based on misleading statements.

16

17   **B.    Openwave Has Not Established That The Director and Officer Defendants
          Actively Concealed Information By Virtue Of An Alleged Scheme**

18   Openwave tries to impose a duty by suggesting that the Director and Officers Defendants'

19   involvement in the scheme and "active lulling" of Openwave constituted active concealment.

20   Opp. at 21:10-14.  Again, Openwave fails to cite a single case stating that participation in a

21   scheme gives rise to a duty based on an alleged active concealment by other scheme participants.

22   Moreover, because Openwave has failed to adequately plead the existence of a scheme,

23   defendants' involvement in any scheme, "active lulling," or any acts of active concealment

24   undertaken as part of the scheme, it has not alleged duty based on active concealment.[25]

25   [24] Neither *Wyatt*, 24 Cal. 3d at 785, nor *Doctors' Co. v. Super. Ct.*, 49 Cal. 3d 39, 47, 48 (1989),
     address a duty to disclose.  To the extent that Openwave relies on these cases to suggest that the
26   Director and Officer Defendants may be *indirectly liable* for alleged failure to disclose by LBI or
     Defendant Whitney, Openwave has failed to plead a single fact suggesting these defendants were
27   aware of representations made to Openwave, or were involved in any fraudulent scheme.

28   [25] *Marketing West, Inc. v. Sanyo Fisher Corp.*, 6 Cal. App. 4th 603, 613 (1992), is inapposite, as it
     does not discuss a duty to disclose based on active concealment, let alone at the pleading stage.

1

2

**C.   Openwave Has Not Established That The Director and Officer Defendants'
Duty Arose By Virtue Of Possession Of Material Information**

3       Openwave argues that the Director and Officers Defendants' purported "knowledge of

4   concealed material facts" gave rise to a duty to disclose.  Opp. at 21:16-24:18.  In their opening

5   papers, the Director and Officer Defendants provided three separate reasons that such a duty did

6   not apply: (i) the duty had to arise from some sort of transaction between Openwave and the

7   Director and Officer Defendants, (ii) Openwave failed to establish that these defendants had

8   knowledge of the allegedly concealed facts, and (iii) all of the relevant information was disclosed

9   publicly.  MTD at 20:26-24:5.  Openwave fails to rebut any of these points.

10      First, ignoring the Director and Officers Defendants' cases, Openwave claims there is no

11   transactional requirement.  Opp. at 21:16-22:1.  Openwave is wrong.  Indeed, the CACI

12   Concealment Jury Instructions that Openwave represents to lack "a transactional requirement,"

13   when read in their entirety, actually *support* such the requirement.  The "Directions for Use"

14   clearly explain that "if the defendant asserts that there was no relationship *based on a transaction*

15   giving rise to a duty to disclose, then the jury should also be instructed to determine whether the

16   requisite relationship existed."  CACI No. 1901.[26]  Openwave also argues that the transactional

17   requirement is satisfied by the Director and Officer Defendants' alleged participation in a scheme.

18   However, it cites no authority for this proposition.  Moreover, even if a scheme were sufficient,

19   Openwave fails to adequately plead it or the defendants' involvement in it.  *See* § II, *supra*.[27]

20      Second, Openwave suggests that its conclusory allegation that the Director and Officer

21   Defendants "knew, or *unless reckless, should have known*" of Lehman's material ARS practices

22   following the SEC Settlement satisfies its obligation to plead *knowledge* with particularity.  Opp.

23

24   [26] Openwave's cases also support a transaction requirement for purposes of finding a duty.  *See,
    e.g.*, *Vega*, 121 Cal. App. 4th at 295 ("disclosing material information in a transaction").

25   [27] Openwave also suggests that "control" over a transacting party may serve to satisfy the
    requirement, citing *In re First Alliance Mortgage*, No. 01-971, 2003 WL 21530096, at *5 (C.D.

26   Cal. June 16, 2003).  However, Openwave completely misreads *First Alliance*, where the court
    *first* rejected plaintiffs' argument that Lehman was liable for First Alliance's misrepresentations

27   based on a control theory, and then *separately* addressed whether Lehman *itself* owed a "duty to
    Plaintiffs to disclose its [own] knowledge." *Id.*  The court concluded that Lehman owed no such

28   duty because "plaintiffs cannot establish the requisite relationship between themselves and
    Lehman." *Id.*  Lehman's alleged "control" played no role in the court's duty analysis. *Id.*

1   at 22:2-6.  Openwave again conflates the scienter requirement for affirmative conduct with the

2   actual knowledge standard used for purposes of duty based on concealment.  *See* n.7, *supra*.  The

3   issue is not whether Openwave has alleged that the Director and Officer Defendants were reckless

4   in approving the SEC Settlement or in not knowing certain material facts, but whether Openwave

5   has adequately alleged that these defendants actually *knew* that they had specific information that

6   was not also disclosed to the general public, including Openwave.  *See* MTD at 21:21-22:8.

7   Openwave has not pleaded such knowledge, and therefore cannot establish a duty to disclose.

8   Finally, Openwave argues that the disclosures in the SEC Settlement and LBI's subsequent public

9   disclosures did not disclose all of the allegedly concealed information.  Opp. at 22:7-24:18.[28]

10  While Openwave does not dispute that LBI's public disclosures discussed the potential for auction

11  failures, LBI's bidding in the auctions and similar critical pieces of information, it complains that

12  the disclosures were inadequate because they did not state that (i) LBI was an Initial Purchaser of

13  ARS, (ii) the volume and percentage of its trades, and (iii) the alleged unsuitability of ARS under

14  the Openwave investment policy.[29]  However, it was obvious to any sophisticated investor like

15  Openwave that LBI was underwriting the ARS it was offering for sale.[30]  And there was no

16  obligation to disclose the volume and percentage of LBI's own trades.[31]  Moreover, LBI's

17  disclosures explaining what LBI might do in the future rather than what it had done in the past

18  were entirely adequate given the prospective nature of the disclosure.  The *Citigroup* court

19  [28] Openwave's concealment claim cannot be based on alleged omissions in LBI's website because
    Openwave admits that it did not *rely* on the website disclosures.  Opp. at 24:14-16.

20  [29] Of course, Openwave fails to allege that the Director and Officer Defendants were aware of
21  these facts.  Given that the SEC Settlement and subsequent disclosures are Openwave's only basis
    for claiming that these individuals knew anything, and neither the settlement nor disclosures
22  revealed these facts, Openwave has no basis to claim the Director and Officer Defendants'
    knowledge.  Nor can Openwave plausibly allege that these individuals were aware of what LBI's
23  website did or did not disclose.  This is in and of itself a reason that no duty existed here.

    [30] Both the SEC and LBI disclosed that there were circumstances where LBI's interest may be in
24  conflict with its brokerage clients.  SEC Order § C.1.b ("The issuer of each security selects one or
    more broker dealers to underwrite the offering and/or manage the auction process."); LBI Website
25  (FAC Ex. C) at 2 ("Lehman Brother's interest in serving as broker-dealer in an auction may differ
    from those of existing holders and potential holders due to its relationship with the issuer.").

26  [31] *See, e.g.*, *Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir. 1990) ("Disclosing that
27  [product] was being sold below cost was not misleading by reason of not saying how much below.
    Nor was it misleading not to report the number of sales, or that they were below expectations.");
28  *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1419 (9th Cir. 1994) (where defendant disclosed
    risk, it had no "duty to disclose the precise extent of [risk]").

1   held that *virtually identical* disclosures about ARS practices sufficiently explained that

2   "Defendants could engage in the very conduct of which Plaintiff complains . . . and the possibility

3   that auctions would fail if Defendants did not intervene in them."  2009 WL 2914370, at *7.  LBI

4   was required to do no more.[32]

5   **V.   THE NON-CALIFORNIA DEFENDANTS SHOULD BE DISMISSED FOR LACK
       OF PERSONAL JURISDICTION**

6
        The Court held that Openwave could plead personal jurisdiction if it "amend[s] the

7   complaint to more specifically allege the role that each defendant played in the alleged fraudulent

8   scheme."  Order at 16:23-26.  Ignoring the Court's instruction, Openwave still fails to plead facts

9   showing each defendant's role in the alleged scheme.  Nevertheless, Openwave asserts that the

10  matter of personal jurisdiction is closed.  Opp. at 24:27-25:8.  In fact, Openwave's failure to allege

11  each defendant's role in a scheme with particularity demonstrates the absence of personal

12  jurisdiction over the Non-California Defendants.  *See* § II, *supra*; MTD at 7:1-14:12, 24:8-25:11.

13                                    **CONCLUSION**

14       The Non-California Defendants respectfully request that they be dismissed from this action

15  for lack of personal jurisdiction, and the Director and Officer Defendants respectfully request that

16  the FAC be dismissed with prejudice for failure to state a claim.

17
    Dated:  October 2, 2009                SIMPSON THACHER & BARTLETT LLP

18

19                                         By _____/s/_____
                                               James G. Kreissman, 206740
20
                                           Attorneys for the Director and Officer Defendants
21
                                           Patricia M. Hynes (*pro hac vice*)
22                                         Todd S. Fishman (*pro hac vice*)
                                           Allen & Overy LLP
23                                         1221 Avenue of the Americas
                                           New York, New York 10020
24
                                           Attorneys for Defendant Richard S. Fuld, Jr.
25
    _____
26  [32] Openwave wrongly relies on *Vega*, 121 Cal. App. 4th at 295, to support its suggestion that the
    Director and Officer Defendants had a duty to disclose information that may have been publicly
27  available.  Opp. at 24:16-18.  Unlike Openwave's claims against the Director and Officer
    Defendants, *Vega* involved a defendant's affirmative misrepresentations and active concealment
28  of material information (two of the other bases for imposition of a duty to disclose) and does not
    concern a duty to disclose based on knowledge of information that the plaintiff cannot obtain.

---